**FILED**

APR 12 2024

Mark C. McCartt, Clerk
U.S. DISTRICT COURT

OKND 2254 Mod 07/2019

### PETITION UNDER 28 U.S.C. § 2254 FOR WRIT OF HABEAS CORPUS BY A PERSON IN STATE CUSTODY

| United States District Court | Northern District of Oklahoma |
|---|---|

| Name (under which you were convicted): Richard W. Long | Docket or Case No.: 24 CV - 165 JDR - SH |
|---|---|

| Place of Confinement : Clara Waters Correctional Center 9901 N I-35 Serv Rd OKC, OK 73131 | Prisoner No.: 547526 |
|---|---|

| Petitioner (include the name under which you were convicted) Sheryl D. Dorman C/O Richard W. Long | v. | Respondent (authorized person having custody of petitioner) Scott Wallace, Warden Clara Waters Corrections Center Oklahoma DOC |
|---|---|---|

| The Attorney General of the State of: | Oklahoma |
|---|---|

### PETITION

1. (a) Name and location of court that entered the judgment of conviction you are challenging:

   Mayes County    1 Court Plaza # 200
   Pryor, OK County of Mayes
   74361

   (b) Criminal docket or case number (if you know): CF-2021-00212

2. (a) Date of the judgment of conviction (if you know): ~~04-21-2023~~ 04-18-2023

   (b) Date of sentencing: 04-21-2023

3. Length of sentence: 5yrs revocation CF-2016-00251, 5 Grand Larceny CC

4. In this case, were you convicted on more than one count or of more than one ☒ Yes ☐ No

5. Identify all crimes of which you were convicted and sentenced in this case: I had a revocation hearing 04-17-2023, for the CF-2021-00212 Charges. My trial was supposed to be 04-24-2023. I had a problem with my Defense Attorney and had no choice due to missing exculpatory evidence and never being able to speak for myself.

6. (a) What was your plea? (Check one)

   ☐ (1) Not guilty          ☒ (3) Nolo contendere (no contest) w/explanation on Plea
   ☐ (2) Guilty              ☐ (4) Insanity plea

fees paid, Ø summons

OKND 2254 Mod 07/2019

(b) If you entered a guilty plea to one count or charge and a not guilty plea to another count or charge, what did you plead guilty to and what did you plead not guilty to? *I wasnt and remain Insisting I am not Guilty. I was forced to plead with coercion. My Defense Attorney Sent me texts Friday afternoon 04-14-2023 stating he was unhappy with his money Ive paid so he will only go to the hearing to please the Judge (see*

(c) If you went to trial, what kind of trial did you have? (Check one) *Then he withdrew 4-17-23 and took me 4-18-23 to plead Guilty I refused I knew I had to plea I plead no-contest*

☐ Jury   ☐ Judge only

7. Did you testify at a pretrial hearing, trial, or a post-trial hearing?

☐ Yes   ☒ No   *I was never allowed to speak In any hearing)*

8. Did you appeal from the judgment of conviction?

☐ Yes   ☒ No

9. If you did appeal, answer the following:

(a) Name of court: _____

(b) Docket or case number (if you know): _____

(c) Result: _____

(d) Date of result (if you know): _____

(e) Citation to the case (if you know): _____

(f) Grounds raised: _____

_____

_____

_____

_____

_____

_____

(g) Did you seek further review by a higher state court?   ☐ Yes   ☐ No

If yes, answer the following:

(1) Name of court: _____

(2) Docket or case number (if you know): _____

(3) Result: _____

_____

OKND 2254 Mod 07/2019

      (4) Date of result (if you know): _____

      (5) Citation to the case (if you know): _____

      (6) Grounds raised:

_____

_____

_____

    (h) Did you file a petition for certiorari in the United States Supreme Court? ☐ Yes ☐ No

      If yes, answer the following:

      (1) Docket or case number (if you know): _____

      (2) Result: _____

_____

      (3) Date of result (if you know): _____

      (4) Citation to the case (if you know): _____

10. Other than the direct appeals listed above, have you previously filed any other petitions, applications, or motions concerning this judgment of conviction in any state court? ☐ Y ☐ No

11. If your answer to Question 10 was "Yes," give the following information:

    (a) (1) Name of court: _____

      (2) Docket or case number (if you know): _____

      (3) Date of filing (if you know): _____

      (4) Nature of the proceeding: _____

      (5) Grounds raised:

_____

_____

_____

_____

_____

_____

_____

_____

_____

      (6) Did you receive a hearing where evidence was given on your petition, application, or motion? ☐ Yes ☐ No

      (7) Result: _____

Page 4 of 16

OKND 2254 Mod 07/2019

   (8) Date of result (if you know): _____

  (b) If you filed any second petition, application, or motion, give the same information:

   (1) Name of court: _____

   (2) Docket or case number (if you know): _____

   (3) Date of filing (if you know): _____

   (4) Nature of the proceeding: _____

   (5) Grounds raised: _____

   _____

   _____

   _____

   _____

   _____

   _____

   _____

   (6) Did you receive a hearing where evidence was given on your petition, application, or motion?

   ☐ Yes ☐ No

   (7) Result: _____

   (8) Date of result (if you know): _____

  (c) If you filed any third petition, application, or motion, give the same information:

   (1) Name of court: _____

   (2) Docket or case number (if you know): _____

   (3) Date of filing (if you know): _____

   (4) Nature of the proceeding: _____

   (5) Grounds raised: _____

   _____

   _____

   _____

   _____

   _____

   _____

   _____

   _____

OKND 2254 Mod 07/2019

(6) Did you receive a hearing where evidence was given on your petition, application, or motion?

☐ Yes    ☐ No

(7) Result: _____

(8) Date of result (if you know): _____

(d) Did you appeal to the highest state court having jurisdiction over the action taken on your petition, application, or motion?

(1) First petition:    ☐ Yes    ☐ No

(2) Second petition:    ☐ Yes    ☐ No

(3) Third petition:    ☐ Yes    ☐ No

(e) If you did not appeal to the highest state court having jurisdiction, explain why you did not:

I was revocated 4-17-23 my wife Shery Dorman contacted news, news contacted mayes co + District 12 matt ballard See ground one

12.    For this petition, state every ground on which you claim that you are being held in violation of the Constitution, laws, or treaties of the United States. Attach additional pages if you have more than four grounds. State the facts supporting each ground. Any legal arguments must be submitted in a separate memorandum.

**CAUTION:** To proceed in the federal court, you must ordinarily first exhaust (use up) your available state-court remedies on each ground on which you request action by the federal court. Also, if you fail to set forth all the grounds in this petition, you may be barred from presenting additional grounds at a later date.

**GROUND ONE:** missing exculpatory evidence (See Attached Ground One) Investigated by Wayne Stinnett Chief Investagator District 12 matt Ballard

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

This was mistaken from the Start. I was never allowed to speak at the prelim 8-26-23 as I listened to James Surine with Rae Corp lie on the Stand. I said and wrote Down to my Def lawyer Jeff price to please put me on the stand, he refused. I was refused the right + speak for myself or Defend myself. Dates are not Correct. This case has too many mistakes

(b) If you did not exhaust your state remedies on Ground One, explain why:

~~Wayne Stinnett~~

Wayne Stinnett Started investigating this case approximately May 2023. Through this entire year he has said as soon as he proves to Matt Ballard I am innocent I will be released and cleared. He has stated several times he is almost Done and Showed me pictures of the missing Video proving my Story and my Lead man's Story Lester Swearengin who testified 04-17-23 but his testimony was ignored by my Def Prosecutor + Judge. Again I was never allowed to tell my side

OKND 2254 Mod 07/2019

(c)    **Direct Appeal of Ground One:**

(1) If you appealed from the judgment of conviction, did you raise this issue?    ☐ Yes    ☐ No

(2) If you did not raise this issue in your direct appeal, explain why: _____

_____

_____

(d) **Post-Conviction Proceedings:**

(1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?

☐ Yes    ☐ No

(2) If your answer to Question (d)(1) is "Yes," state:

Type of motion or petition: _____

Name and location of the court where the motion or petition was filed: _____

_____

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available): _____

_____

(3) Did you receive a hearing on your motion or petition?    ☐ Yes    ☐ No

(4) Did you appeal from the denial of your motion or petition?    ☐ Yes    ☐ No

(5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the    ☐ Yes    ☐ No

(6) If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal was filed: _____

_____

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available): _____

_____

_____

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue:

I have been waiting for Wayne to prove my
entire charges were Frivolous. He has found all
the proof and has stated so. I was told to call him
for a def answer mid march. He has ignored my calls
Since he told me to call him 03-25-24. With the help
of my wife Sheryl Dorman I've been able to put
this case together to prove to you I'm innocent The
Case has Huge holes and Demand my release

OKND 2254 Mod 07/2019

**(e) Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you have

used to exhaust your state remedies on Ground One: _____

_____

---

**GROUND TWO:** Ineffective Assistance of Counsel by defense Attorney Jeffrey Price

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

Jeff Price was contracted to defend Richard W. Long Rooghly in Dec/Jan 2021. 2022 Jeff accepted a payment plan on $10,000 for trial. We kept asking him why trial? The evidnce from oct 7 + 10 2021 should end + dismiss the entire issue. He was already given what little evidnce he would accept from me or my wife. Jeff didnt seem to feel the same way stating "Save it for trial mayes co does what mayes county wants todo "see attached oscn report" there is was

(b) If you did not exhaust your state remedies on Ground Two, explain why: too many discrepancies Wayne Stinnett claimed he would be able to prove this stuff and I would be released I had to file before my time runs out. He is ignoring me

(c)    **Direct Appeal of Ground Two:**

(1) If you appealed from the judgment of conviction, did you raise this issue?  ☐  Yes  ☐ No

(2) If you did <u>not</u> raise this issue in your direct appeal, explain why: _____

_____

_____

(d)    **Post-Conviction Proceedings:**

(1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?

☐  Yes  ☐  No

(2) If your answer to Question (d)(1) is "Yes," state:

Type of motion or petition: _____

Name and location of the court where the motion or petition was filed: _____

_____

_____

Docket or case number (if you know): _____

# GROUND 2 EXPLAINED

## Ineffective assistance of counsel

You will see in the OSCN case search provided, Jeff Price never once corrected any wrong information given by the prosecutor or prosecution witness. (see EXOSCN) Jeff claimed in a motion to withdrawal he sent out subpoenas to specific people (see EXmotionJP) Jeff made several false statements in that motion including but not limited to not being paid. Jeff was paid cash a few times by me, and I know once by my wife Sheryl Dorman. She withdrew 800.00 cash from her personal account at RCB in Pryor, Okla the morning of April 17, 2023, and I handed it directly to jeff Price with a promise to mail me a receipt. He never gave me any receipts for anything. Mr. Price has refused to give me or my wife an itemized list of monies deposited into my account, work accomplished in defending me, and any other costs incurred. My wife has emailed for proof a few times over the past year recently this month and was only called a liar, a terrible person and refused to discuss anything. I sent my wife a message in MCJ asking her to help me withdrawal my plea (see EXTEXTMCJ) but we had no idea how in Mayes Co and Jeff refused to speak. Lester Swearengin being one of those witness for Richard, but you will see a text between Lester and Richard (see EXLR41623) the late morning before Court discussing can Lester go to testify in Richards defense if Jeff Price the defense attorney never subpoenaed him or even called him, stating his lawyer never called him again or notified him of anything at all. As of his testimony meant nothing to the defense on a motion to revoke for something Richard did not do. I find it very hard to believe that Mr. Price had any intention of defending Mr. Long for the start. Jeff Price never sought out missing evidence that was told to him by Lester Swearengin on Sept 27, 2022, (see EXLR92722) Lester was the leadman on October 7, 2021, he approved Marks story and assisted in also helping. Both men did nothing more then ParFab security and employees in Inola Okla did September 2020. Lester feared being charged. Lester nor Richard could understand why Randy Marks and his helpers came into Rae twice Oct 7, 2021, and Oct 10, 2021, to impersonate a Cherokee nation minister to gain metal he claimed was donated to his cause. (see EXLR927221). Jeff Was offered emails from Richard to the owner of RAE Jerry Salcher explaining everything, again you will see Lester was fired directly after the email he received the same day 10/26/2021. (see E1Sulcher, E2Sulcher, EXRL102621)

You will see that at none of the hearings Richard never spoke in his own defense. Mr. Price had a chance to allow Richard to tell his story one last chance April 17, 2023, but when he cross examined Richard, he had no intentions of allowing Richard to raise his own defense of missing exculpatory evidence Jeff already knew about and swore he would fix it all in trial, save it for trial. A trial he ensured never took place. We ask the court to please release Richard W. Long, the evidence provided by me today is only partial evidence I've collected .

OKND 2254 Mod 07/2019

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available): _____

_____

_____

(3) Did you receive a hearing on your motion or petition? ☐ Yes ☐ No

(4) Did you appeal from the denial of your motion or petition? ☐ Yes ☐ No

(5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the ☐ Yes ☐ No

(6) If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal was filed: _____

_____

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available): _____

_____

_____

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue:

_____

_____

_____

_____

(e) **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you have used to exhaust your state remedies on Ground Two :

Wayn Stinnett Investigated. Sheryl Dorman has DPOA over me and attempted to communicate with Jeff Price but was only Belittles and called names via Email

**GROUND THREE:**

Prosecutorial mis Conduct By Judge Rebecca Gore Kyle Long DA

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

I have enclosed transcripts with wrong dates. He was sentenced for Oct 12, 2021. It was Oct 2 + Oct 10 2021 Randy marks Entered Rue, Kyle Long and Judge Rebecca Gore Ignored Def witness Lester Sweargin had a private meeting with defense, DA, + Judge called reeess and an officer came in during recess to collect Richard for DOC The hearing hadnt even Concluded yet. Kyle long Started prelim with Oct 12, 2021. James Swine had no Idea the Date they just watched the "video"

OKND 2254 Mod 07/2019

(b) If you did not exhaust your state remedies on Ground Three, explain why:

*Again Wayne Promised a year ago he would find out if I'm innocent and he has yet to Say I am only that he knows I'm telling truth*

(c)     **Direct Appeal of Ground Three:**

(1) If you appealed from the judgment of conviction, did you raise this issue? ☐ Yes ☐ No

(2) If you did not raise this issue in your direct appeal, explain why:

_____

_____

(d)     **Post-Conviction Proceedings:**

(1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?

☐ Yes ☐ No

(2) If your answer to Question (d)(1) is "Yes," state:

Type of motion or petition: _____

Name and location of the court where the motion or petition was filed: _____

_____

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available): _____

_____

(3) Did you receive a hearing on your motion or petition? ☐ Yes ☐ No

(4) Did you appeal from the denial of your motion or petition? ☐ Yes ☐ No

(5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the ☐ Yes ☐ No

(6) If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal was filed: _____

_____

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available): _____

_____

_____

_____

OKND 2254 Mod 07/2019

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue:

_Investigated_

(e)     **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you have used to exhaust your state remedies on Ground Three:

**GROUND FOUR:** _Negligent misrepresentation by RAE Corp + James Surine. Lester + Richards supervisor_

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

08-26-22

_In James Surines testimony you will see not only did he have dates wrong But he swore he did an internal investigation However he never asked the accused or watched all footage and Im aware Jerry Salder passed info to James + Eric Swank because of all the info Lester was fired oct 26, 2021._

(b) If you did not exhaust your state remedies on Ground Four, explain why:

_District Investigated Promised the 12 I'd be released when they saw proof Wayne showed me proof I know he knows Im innocent_

(c)     **Direct Appeal of Ground Four:**

(1) If you appealed from the judgment of conviction, did you raise this issue?   ☐ Yes   ☐ No

(2) If you did not raise this issue in your direct appeal, explain why:

(d)     **Post-Conviction Proceedings:**

(1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?

☐ Yes   ☐ No

(2) If your answer to Question (d)(1) is "Yes," state:

Type of motion or petition:

OKND 2254 Mod 07/2019

Name and location of the court where the motion or petition was filed:

_____

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available): _____

_____

(3) Did you receive a hearing on your motion or petition?          ☐ Yes  ☐ No

(4) Did you appeal from the denial of your motion or petition?     ☐ Yes  ☐ No

(5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the   ☐ Yes  ☐ No

(6) If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal was filed: _____

_____

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available): _____

_____

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue:

Same as grounds all

(e)   **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you have used to exhaust your state remedies on Ground Four:

Told Wayne Stinnett District 12 Investigator for Matt Ballard Im Innocent and was forced to plead

OKND 2254 Mod 07/2019

13. Please answer these additional questions about the petition you are filing:

(a) Have all grounds for relief that you have raised in this petition been presented to the highest state court having jurisdiction? ☐ Yes ☒ No

If your answer is "No," state which grounds have not been so presented and give your reason(s) for not presenting them: *I presented all these grounds to @ Wayne Stinnett. He did a full investigation. I've included a Subponea for Information + the videos from Oct 7, 10, 12*

(b) Is there any ground in this petition that has not been presented in some state or federal court? If so, which ground or grounds have not been presented, and state your reasons for not presenting them:

*After recieving all transcripts and evidence Its obvious no one even had the date I Supposedly Stole something wrong Including*

14. Have you previously filed any type of petition, application, or motion in a federal court regarding the conviction *witness for state* that you challenge in this petition? ☐ Yes ☒ No

If "Yes," state the name and location of the court, the docket or case number, the type of proceeding, the issues raised, the date of the court's decision, and the result for each petition, application, or motion filed. Attach a copy of any court opinion or order, if available. _____

_____

_____

_____

_____

_____

_____

15. Do you have any petition or appeal now pending (filed and not decided yet) in any court, either state or federal, for the judgment you are challenging? ☐ Yes ☒ No

If "Yes," state the name and location of the court, the docket or case number, the type of proceeding, and the issues raised. _____

_____

_____

_____

_____

OKND 2254 Mod 07/2019

16.  Give the name and address, if you know, of each attorney who represented you in the following stages of the judgment you are challenging:

(a) At preliminary hearing:   *Jeffery Price*

(b) At arraignment and plea:   *revocation hearing 04-17-23 Jeffery Price*

(c) At trial: _____

(d) At sentencing:   *Jeffery Price*

(e) On appeal: _____

(f) In any post-conviction proceeding: _____

(g) On appeal from any ruling against you in a post-conviction proceeding: _____

17.  Do you have any future sentence to serve after you complete the sentence for the judgment that you are challenging?   ☐ Yes   ☒ No

(a) If so, give name and location of court that imposed the other sentence you will serve in the future: _____

(b) Give the date the other sentence was imposed: _____

(c) Give the length of the other sentence: _____

(d) Have you filed, or do you plan to file, any petition that challenges the judgment or sentence to be served in the future?   ☐ Yes   ☒ No

18.  TIMELINESS OF PETITION: If your judgment of conviction became final over one year ago, you must explain why the one-year statute of limitations as contained in 28 U.S.C. § 2244(d) does not bar your petition.*

*I think I made it in Just before my 1 year*

*Please See Attachments for..*
*Grounds 2 -*
*Copies of transcripts to see the evidence of testimony*

OKND 2254 Mod 07/2019

I am not Guilty, I felt forced by misrepresentation to plead to avoid Life under a 3 Strikes rule. I have NO theft charges in my entire Life. I never stole anything everything I'm stating and Lester stated in testimony is true but no one would ask where is oct 7, 2021. Please your honor look at my small amount of evidence combined with Wayne Stinnetts findings and Lesters testimony and order my release. I DID NOT STEAL anything

---

\* The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") as contained in 28 U.S.C. § 2244(d) provides in part that:

(1)     A one-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody  pursuant to the judgment of a State court.  The limitation period shall run from the latest of -

    (A)     the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

    (B)     the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such state action;

    (C)     the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

    (D)     the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

OKND 2254 Mod 07/2019

(2)     The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

Therefore, petitioner asks that the Court grant the following relief: _____

_____

_____

or any other relief to which petitioner may be entitled.

_____

Signature of Attorney (if any)

I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct and that this Petition for

Writ of Habeas Corpus was placed in the prison mailing system, with the correct postage attached, on:

_____ (month, date, year).

Executed (signed) on   04-12-24   (date).   _____

Signature of Petitioner

If the person signing is not petitioner, state relationship to petitioner and explain why petitioner is not signing this petition.

My name is Sheryl D Dorman, my husband Richard Long
and I have believed Wayne would find Justice for Richard
but we realized time is running out for post conviction
relief. ~~I asked my~~ I've been collecting evidence
since December 2021. Jeff Price refused ALL my
Evidence before the hearing 4-27-23. I'm asking you
to please allow me to bring this issue before you today
I did not have time to mail everything to Richard
and get it Back. This is truly our last Ditch effort

Page 16 of 16

Mr Long
E mess
Feb 12 2021

**RICHARD LONG**                                      Feb 12
To: SHERYL DORMAN
inspector stinett came and saw me in ...

inspector stinett came and saw me in jail and interviewed
me about the charge I took the plea on he said he as long as
he believed me he would gwet me out, after I pulled chains
I called him and he said he believed me and didn't think I
should be in prison and he'd do everything he could to get
me out, its taken 9 months so far he said he still believes
and thinks he has his boss, da Ballard , on the same page,
because he said I shouldn't have been charged I never
appealed it because I actually believed he'd fix it, it was said
if he could prove I didn't know the guy or talk to him before
Oct 7th that I'd be vindicated , still locked up, Jeff price my
attorney told me to take the plea coz even if I beat the charge
I'd still serve my revocation, I wouldn't havgot a revocation
if they would a charged the person responsible who did the
same exact thing the same way at parfab and was out still
doing it, same story and everything, I feel like the system is
totally fucked up and judges do what they want and protect
who they want,

**IN THE DISTRICT COURT WITHIN AND FOR MAYES COUNTY**
**STATE OF OKLAHOMA**

FILED IN THE DISTRICT COURT
MAYES COUNTY, OKLAHOMA

JUN 0 6 2023

JENIFER CLINTON, COURT CLERK
By_____ DEPUTY

STATE OF OKLAHOMA,            )
                             )
        Plaintiff,            )
                             )
v.                           )    Case No. CF-2021-212
                             )
RICHARD WILLIAM LONG,         )
                             )
        Defendant.            )

**SUBPOENA DUCES TECUM**

TO:   AT&T, Inc. and all its subsidiaries and affiliates
      11760 US HWY, Suite 600
      North Palm Beach, Florida 33408

GREETINGS:

        You are hereby commanded to provide by 5:00 o'clock p.m. on the 20th day of June, 2023 to the Mayes County District Attorney's Office located at 1 Court Place, Ste. 250, Pryor, Oklahoma 74361 all records and/or reports requested and/or referenced below:

        Call detail records for voice calls and text messages for the account corresponding to cellular phone number (918) 734-1108 between the following dates:

        September 1, 2021 through November 30, 2021

                        MATTHEW J. BALLARD,
                        DISTRICT ATTORNEY

                        By: _____
                        Kyle E. Long, Assistant District Attorney
                        Mayes County District Attorney's Office
                        1 Court Place, Ste. 250
                        Pryor, Oklahoma 74361

It is hereby ordered that within named witness shall attend and provide the requested documents as summoned.

                        _____
                        Judge of the District Court

## CERTIFICATE OF MAILING

I hereby certify that I mailed or delivered a true and correct copy of this subpoena to:

> Jeff Price
> 400 S Muskogee Ave
> Claremore, Oklahoma 74017
> **Attorney for Defendant**

Kyle E. Long

IN THE DISTRICT COURT OF MAYES COUNTY
STATE OF OKLAHOMA

```
FILED IN THE DISTRICT COURT
      MAYES CO., OKLAHOMA

         MAR 0 3 2023

JENIFER CLINTON COURT CLERK
BY                      DEPUTY
```

| | | |
|---|---|---|
| STATE OF OKLAHOMA, | ) | |
| | ) | |
| PLAINTIFF, | ) | |
| | ) | |
| vs. | ) | Case No. CF-2021-212 |
| | ) | |
| RICHARD WILLIAM LONG | ) | |
| | ) | |
| DEFENDANT. | ) | |

## NOTICE OF AVAILABLE DISCOVERY AND REQUEST FOR DISCOVERY

COMES NOW the State of Oklahoma, by and through Matthew J. Ballard District Attorney in and for Mayes County, Oklahoma, and gives notice that law enforcement reports and any and all other evidence in the possession of the State of Oklahoma, except for attorney work product, shall be open to the defense for inspection and review.

Such discovery will be provided within the confines of the Mayes County District Attorney's Office during the regular business hours of the district attorney's office.  A request for viewing physical evidence should be made by appointment.

Reproduction or copying of the documentation within the State's possession will generally be permitted, pursuant to *Allen v. District Court of Washington County*, 803 P.2d 1164 (Okl.Cr. 1990); 22 O.S. 1991, §§ 2001, 2002.

If agreement cannot be reached by the attorneys on both sides as to the discoverability of a particular item, then the State will submit the questioned item to the court for a judicial determination of the matter.

Furthermore, the State of Oklahoma respectfully requests, pursuant to the Oklahoma Discovery Code in 22 O.S. Sec. 2002(B), that defense counsel disclose and produce the following

information which is known or becomes known to the defendants and/or counsel for the defendants:

(1) the names and addresses of witnesses, whom the defendant intends to call at trial, together with their relevant oral, written or recorded statement, or summaries of same;

(2) the name and address of any witness, other than the defendant, who will be called to show that the defendant was not present at the time and place specified in the information, together with the witness' statement to that fact;

(3) the names and addresses of any witness the defendant will call, other than the defendant, for testimony relating to any mental disease, mental defect, or other condition bearing upon the defendant's mental state at the time the offense was allegedly committed, together with the witness' statement of that fact, if the statement is redacted by the court to preclude disclosure of privileged communication.

The State further requests access at any reasonable times and in any reasonable manner to inspect, photograph, copy, or have reasonable tests made upon any book, paper, document, photograph, or tangible object which is within the defendant's possession or control and which:

(a) the defendant intends to offer in evidence, except to the extent that it contains any communication of the defendant; or,

(b) is a report or statement as to a physical or mental examination or scientific test or experiment made in connection with the particular case prepared by and relating to the anticipated testimony of a person whom the defendant intends to call as a witness, provided the report or statement is redacted by the court to preclude disclosure of privileged communication.

Notice is hereby given.

Respectfully Submitted,

**MATTHEW J. BALLARD**
**DISTRICT ATTORNEY**

Kyle E. Long, OBA #32053

**ASSISTANT DISTRICT ATTORNEY**
12th Prosecutorial District
Mayes County District Attorney's Office
1 Court Place, Ste. 250
Pryor, Oklahoma 74361

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the above notice of open file and request for reciprocal discovery was faxed and delivered via his courthouse mailbox to the attorney for the defendant on the date of filing.

Jeff Price
400 S Muskogee Ave
Claremore, Oklahoma 74017
Attorney for Defendant

Kyle E. Long
Assistant District Attorney

Form 13.10 Uniform Plea of Guilty - Summary of Facts

IN THE DISTRICT COURT OF _____ Mayes _____ COUNTY
THE STATE OF OKLAHOMA

STATE OF OKLAHOMA,

    Plaintiff,

vs.   William

Richard Long _____,

    Defendant.

SS# ___ 1188 ___ D.O.B. ___ 2/70 ___

127 Quail Dr.

Pryor, OK 74361

(Home Address)

accurate for Questioning

Richard could have been questioned.

Case No. ___ CF-21-212 ___

[NOTE: The trial judge shall ensure the defendant is sworn either prior to completing the Summary of Facts or prior to inquiry by the Court on the Plea. If the defendant is entering a nolo contendere, or other type guilty plea, correct by pen change where term "guilty" used.]

FILED IN THE DISTRICT COURT
MAYES CO., OKLAHOMA

APR 1 8 2023

JENIFER CLINTON, COURT CLERK
BY _____ DEPUTY

PLEA OF GUILTY

SUMMARY OF FACTS

**Part A: Findings of Fact, Acceptance of Plea**

CIRCLE

1.   Is the name just read to you your true name?     (Yes) No

    If no, what is your correct name? _____

    I have also been known by the name(s): _____

    _____

2.   My lawyer's name is: _____ Jeff Price _____

3.   (a) Do you wish to have a record made of these proceedings by a Court Reporter?     (Yes) No

    (b) Do you wish to waive this right?     Yes (No)

4.   Age: 53   Grade completed in school: 12th

5.   Can you read and understand this form? (If the answer above is no, Addendum A is to be completed and attached.)     (Yes) No

6.   Are you currently taking any medications or substances which affect your ability to understand these proceedings?   Yes (No)

7.   Have you been prescribed any medication that you should be taking, but you are not taking?   Yes (No)
        If so, what kind and for what purpose?_____

_____

8.   Have you ever been treated by a doctor or health professional for mental illness or confined in a hospital for mental illness?   Yes (No)

        If yes, list the doctor or health professional, place, and when occurred:

_____

_____

9.   Do you understand the nature and consequences of this proceeding?   (Yes) No

10.   Have you received a copy of the Information and read its allegations?   (Yes) No

11.   Does the State move to dismiss or amend any case(s) or count(s) in the information or on page 2 of the information?  If so, set forth the cases/counts dismissed or amended.   Count 2 Dismissed at Prelim.   (Yes) No

12.   A. Do you understand you are charged with:

| (1) | Crime | Statutory Reference | | |
|-----|-------|---------------------|---|---|
| (1) | Grand Larceny AFC 2 Felonies 21 | 1705 | O.S._____ | (Yes) No |
| (2) | _____ | _____ | O.S._____ | Yes No |
| (3) | _____ | _____ | O.S._____ | Yes No |
| (4) | _____ | _____ | O.S._____ | Yes No |

For additional charges: List any additional charges on a separate sheet and label as PLEA OF GUILTY ADDENDUM B.

    B. Are you charged after former conviction of a felony?   (Yes) No

        If yes, list the felony(ies) charged:   See PAGE 2 oF
Information   DUI x 4, Dom A+B by Strangulation

_____

2

13. Have you previously been convicted of a felony? If so, when, where and for what felony/felonies? _____

*YES . DUI Face times, once for Rum A+B*

*By Strangulation*

14.

____ (Check if applicable) Do you understand you are subject to the Delayed Sentencing Program for Young Adults and what that sentencing program involves?                                                                                    Yes   No

____ (Check if applicable) Do you understand that upon a conviction on a plea of guilty to the offense(s) of _____ you will be required to serve a minimum sentence of:                              Yes   No

____ 85% of the sentence of imprisonment imposed before being eligible for parole consideration and are not eligible for earned or other type of credits which will have the effect of reducing the length of sentence to less than 85% of the sentence imposed?                                                                      Yes   No

____% of the sentence of imprisonment imposed or received prior to becoming eligible for state correctional earned credits toward completion of your sentence or eligibility for parole?                                                              Yes   No

____ (Check if applicable) Do you understand that a conviction on a plea of guilty to the offense(s) of _____ will subject you to mandatory compliance with the Oklahoma Sex Offender Registration Act?                                                                           Yes   No

____ (Check if applicable) Do you understand that any person sentenced to imprisonment for two (2) years or more for the offense(s) of _____ , involving sexual abuse, sexual exploitation, or illegal sexual conduct, shall be required to serve a term of post-imprisonment supervision for at least three (3) years under conditions determined by the Department of Corrections in addition to the actual term of imprisonment. There will be no post-imprisonment supervision for a sentence of life or life without the possibility of parole for offenses involving sexual abuse, sexual exploitation, or illegal sexual conduct.                                           Yes   No

____ (Check if applicable) Do you understand that a conviction on a plea of guilty to the offense(s) of _____ will subject you to mandatory compliance with the Oklahoma Methamphetamine Offender Registry Act?                                                                         Yes   No

____ (Check if applicable) Do you understand that the Court is required to include in the sentence of any person convicted of a felony and sentenced to a term of imprisonment after November 1, 2012, a term of post-imprisonment supervision. The post-imprisonment supervision shall be for a period of not less than nine (9) months nor more than one (1) year following confinement of the person and shall be served under conditions prescribed by the Department of Corrections. There will be no post-imprisonment supervision for a sentence of life without the possibility of parole.                                                         Yes   No

3

15.   What is/are the charge(s) to which the defendant is/are entering a plea today?

GRAND LARCENY  Value $ 1000 to $ 2500 , AFC
2 + Felony Convictions

16.   Do you understand the range of punishment for the crime(s) is/are: (List in same order as in No. 15 above)?   *(C+ charge)*

(1)   Minimum of __4__ to a maximum of __life__ and/or a fine of $__0 - 1000__   Yes   No

(2)   Minimum of _____ to a maximum of _____ and/or a fine of $_____   Yes   No

(3)   Minimum of _____ to a maximum of _____ and/or a fine of $_____   Yes   No

(4)   Minimum of _____ to a maximum of _____ and/or a fine of $_____   Yes   No

17.   Read the following statements: You have the right to a speedy trial before a jury for the determination of whether you are guilty or not guilty and if you request, to determine sentence. (If pleading to capital murder, advise of procedure in 21 O.S. ' 701.10(B)). At the trial:

(1) You have the right to have a lawyer represent you, either one you hire yourself or if you are indigent a court appointed attorney.

(2) You are presumed to be innocent of the charges.

(3) You may remain silent or, if you choose, you may testify on your own behalf.

(4) You have the right to see and hear all witnesses called to testify against you and the right to cross-examine them.

(5) You may have your witnesses ordered to appear in court to testify and present evidence of any defense you have to these charges.

(6) The state is required to prove your guilt beyond a reasonable doubt.

(7) The verdict of guilty or not guilty decided by a jury must be unanimous. However, you can waive a jury trial and, if all parties agree, the case could be tried by a Judge alone who would decide if you were guilty or not guilty and if guilty, the appropriate punishment.

Do you understand each of these rights?   Yes   No

18.   Do you understand by entering a plea of guilty you give up these rights?   Yes   No

19.   Do you understand that a conviction on a plea of guilty could increase punishment in any future case committed after this plea?   Yes   No

20.   Have you talked over the charge(s) with your lawyer, advised him/her regarding any defense you may have to the charges and had his/her advice?   Yes   No

4

GRAND LARCENY Value + 1000+0

2 + Felony Convictus

Do you understand the range of punishment for the crime(s) is/are: (List in same order as in No. 15 above)?

Minimum of 4 to a maximum of life and/or a fine of $ 80 - 1000

Minimum of _____ to a maximum of _____ and/or a fine of $ _____

Minimum of _____ to a maximum of _____ and/or a fine of $ _____

Minimum of _____ to a maximum of _____ and/or a fine of $ _____

Read the following statements: You have the right to a speedy trial before a jury for the determination of whether you are guilty or not guilty and if you request, to determine sentence. (If pleading to capital murder, advise of procedure in 21 O.S. ' 701.10(B)). At the trial:

(1) You have the right to have a lawyer represent you, either one you hire yourself or if you are indigent a court appointed

21. Do you believe your lawyer has effectively assisted you in this case and are you satisfied with his/her advice?　　(Yes) No

*NO contest*

22. Do you wish to change your plea of not guilty to guilty and give up your right to a jury trial and all other previously explained constitutional rights?　　(Yes) No

23. Is there a plea agreement?　　(Yes) No

What is your understanding of the plea agreement? _____

*5 yrs DOC cc w/ CF-16-251,*

*$100 Fine, ct costs, Restitution TBD Within 30 days*

24. Do you understand the Court is not bound by any agreement or recommendation and if the Court does not accept the plea agreement, you have the right to withdraw your plea of guilty?　　(Yes) No

25. Do you understand that if there is no plea agreement the Court can sentence you within the range of punishment stated in question 16?　　(Yes) No

26. Do you understand your plea of guilty to the charge(s) is/are after: (check one)　　Yes No
   ( ) no prior felony convictions
   ( ) one (1) prior felony conviction
   ( ) two (2) or more prior felony convictions
   List prior felony convictions to which pleading: *See Questions*
   *12 & 15 herein*

27. What (is) (are) your plea(s) to the charge(s) (and to each one of them)?

*Nolo Contendere*

28. Did you commit the acts as charged in the Information?　　Yes (No)

State the factual basis for your plea(s) (attach additional page as needed, labeled as ADDENDUM C): *Deft contends he did not secretly a ssault m the knowable of the property there store could be no factor could be reasonable trier of fact to determine he is guilty.*

29. Have you been forced, abused, mistreated, or promised anything by anyone to have you enter your plea(s)?　　Yes (No)

30. Do you plead guilty of your own free will and without any coercion or compulsion of any kind?　　(Yes) No

*Richard Long*
*Felt forced to Plea*
*by His defense lawyer*
*+ Judge with threats*
*of rise when he is*
*Found guilty at trial*

31. If you are entering a plea to a felony offense, you have a right to a Pre-Sentence Investigation and Report which would contain the circumstances of the offense, any criminal record, social history and other background information about you. Do you want to have the Report?    Yes  No

32. (a) Do you have any additional statements to make to the Court?    Yes  No

(b) Is there any legal reason you should not be sentenced now?    Yes  No

HAVING BEEN SWORN, I, the Defendant whose signature appears below, make the following statements under oath:

(1) CHECK ONE:

_____(a) I have read, understood and completed this form.

_____(b) My attorney completed this form and we have gone over the form and I understand its contents and agree with the answers. *See* Addendum "A"

_____(c) The Court completed this form for me and inserted my answers to the questions.

(2) The answers are true and correct.

(3) I understand that I may be prosecuted for perjury if I have made false statements to this Court.

_____
DEFENDANT

I Acknowledge this 18 day of April, 2023

_____
Notary Public/Deputy Court Clerk/Judge

6

33.  I, the undersigned attorney for the Defendant, believe the Defendant understands the nature, purpose and consequence of this proceeding. (S)He is able to assist me in formulating any defense to the charge(s). I am satisfied that the Defendant's waivers and plea(s) of guilty are voluntarily given and he/she has been informed of all legal and constitutional rights.

_____
ATTORNEY FOR DEFENDANT

34.  The sentence recommendation in question 23 is correctly stated. I believe the recommendation is fair to the State of Oklahoma.

35.  Offer of Proof (Nolo contendere plea)_____

_____

36.  On entering a plea to a felony offense, the State has a right to a pre-sentence     Yes   No
investigation and report. The State waives the right to a pre-sentence investigation?

_____
ASSISTANT DISTRICT ATTORNEY

7

THE COURT FINDS AS FOLLOWS:

37.

A. The Defendant was sworn and responded to questions under oath.

B. The Defendant understands the nature, purpose and consequences of this proceeding.

C. The Defendant's plea(s) of _____ *Nolo contendre* is/are knowingly and voluntarily entered and accepted by the Court.

D. The Defendant is competent for the purpose of this hearing.

E. A factual basis exists for the plea(s) (and former conviction(s), if applicable).

F. The Defendant is guilty as charged: (check as appropriate)
( ) after no prior felony convictions.
( ) after one (1) prior felony conviction.
(✓) after two (2) or more prior felony convictions.

G. Sentencing or order deferring sentence shall be: imposed instanter (✗); or continued until the _____ day of _____, 20__, at _____ __.m.

If the Pre-Sentence Investigation and Report is requested, it shall be provided to the Court by the _____ day of _____, 20___.

H. Defendant is committed to:
_____ The RID Program
_____ The FORT Program
_____ The Delayed Sentencing Program for Youthful Offenders

DONE IN OPEN COURT this __18th__ day of __April__, 20__23__

_____
Court Reporter Present

_____
Deputy Court Clerk

_____
JUDGE OF THE DISTRICT COURT

_____
NAME OF JUDGE TYPED OR PRINTED

8

**Part B:** Sentence on Plea

Case No. _CF-21 -212_

State v. _Richard Wm. Long_

Date: _4/18/23_

[NOTE ON USE: Part B to be used with the Summary of Facts if contemporaneous with the entry of plea or may be formatted as a separate sentencing form if sentencing continued to future date.]

### THE COURT SENTENCES THE DEFENDANT AS FOLLOWS:

#### TIME TO SERVE

1. You are sentenced to confinement under the supervision of the Department of Corrections for a term of years as follows: (list in same order as in question No. 15 in Part A)

_5 yrs DOC_

Upon release from such confinement, you shall serve a term of post-imprisonment supervision under conditions prescribed by the Department of Corrections for a period of:

2. The sentence(s) to run:

____X____   (concurrently/consecutively)   _w/ CF-16-251_

(OR)

_____NOT APPLICABLE

3. Defendant shall receive:

____✓____ Credit for time served

_____ No credit for time served

9

## DEFERRED SENTENCE

1. The sentencing date is deferred until _____ _____, 20___ at _____ ___.m.

2. You (will/will not) be supervised. The terms set forth in the Rules and Conditions of Probation found in Addendum D shall be the rules you must follow during the period of deferment. _____ days in the Mayes County Jail to commence _____, 20__, unless the defendant has completed _____ hours of Community Service in conformance with Community Service Rules before that date.

## SUSPENDED SENTENCE or SUSPENDED AS TO PART

1. You are sentenced to confinement under the supervision of the Department of Corrections for a term of years as follows:

_____

_____

_____

_____

To be suspended as follows:

      (a) ALL SUSPENDED YES _____ NO _____

(b) suspended *except* as to the first _____ (months)(years) of the term(s) during which time you are to be held in the custody of the Department of Corrections, the remainder of the sentence(s) to be suspended under the terms set forth in the Rules and Conditions of Probation found in Addendum D. _____ days to commence _____, 20__, unless the defendant has completed _____ hours of Community Service in conformance with Community Service Rules before that date.

      _____ Said period of incarceration shall be in the custody of the Department of Corrections, to be served in the County Jail, in lieu of the Department of Corrections, pursuant to the Community Service Sentencing Program, 22 O.S. Section 991a – 4.1.

      _____ Defendant's term of incarceration shall be calculated as:

            _____ Calendar days with credit for good behavior only (57 O.S Section 65)

            _____ As calculated by the Sheriff with all implemented and allowable credits allowed by law

2. The sentence(s) to run:

      _____(concurrently/consecutively)

          (OR)

      _____NOT APPLICABLE

10

FINES AND COSTS

You are to pay a fine(s), costs, fees and/or restitution to the ___*Mays*___ County District Court Clerk as set out in Addendum E which is attached and made a part of this Order.

[NOTE ON USE: District Courts may develop and utilize schedules for payment of fines and costs as appropriate for each district and attach as Addendum E.]

## COURT CLERK'S DUTY
### [TRIAL JUDGE TO COMPLETE THIS SECTION]

IT IS FURTHER ORDERED that the Clerk of this Court shall register or report the following circumstances in accordance with the applicable statutory authority:

(X) As to Count(s) _____, the defendant is ineligible to register to vote pursuant to Section 4-101 of Title 26.

( ) Pursuant to Section 985.1 of Title 22, the Court departed from the mandatory minimum sentence of imprisonment as to Count(s) _____.

( ) As to Count(s) _____, the defendant is subject to the Methamphetamine Offender Registry requirements as set forth in Section 2-701 of Title 63.

( ) Defendant is a lawyer and certified copies of this document shall be transmitted to the Chief Justice of the Supreme Court and the General Counsel of the Bar Association within five (5) days as set forth in Rule 7.2 of the Oklahoma Rules of Professional Conduct, 5 O.S.Supp.2014, ch. 1, app. 1-A.

## "NOTICE OF RIGHT TO APPEAL"

Sentence to Incarceration, Suspended or Deferred:

To appeal from this conviction, or order deferring sentence, on your plea of guilty, you must file in the District Court Clerk's Office a written Application to Withdraw your Plea of Guilty within ten (10) days from today's date. You must set forth in detail why you are requesting to withdraw your plea. The trial court must hold a hearing and rule upon your Application within thirty (30) days from the date it is filed. If the trial court denies your Application, you have the right to ask the Court of Criminal Appeals to review the District Court's denial by filing a Petition for Writ of Certiorari within ninety (90) days from the date of the denial. Within ten (10) days from the date the application to withdraw plea of guilty is denied, notice of intent to appeal and designation of record must be filed pursuant to Oklahoma Court of Criminal Appeals Rule 4.2(D). If you are indigent, you have the right to be represented on appeal by a court appointed attorney.

Do you understand each of these rights to appeal?                                               (Yes)  No

Do you want to remain in the county jail ten (10) days before being taken to the place of confinement?   Yes  (No)

Have you fully understood the questions that have been asked?                                    (Yes)  No

Have your answers been freely and voluntarily given?                                            (Yes)  No

I ACKNOWLEDGE UNDERSTANDING OF RIGHTS AND SENTENCE IMPOSED.

_____
DEFENDANT

I, the undersigned attorney, have advised the Defendant of his appellate rights.

_____
ATTORNEY FOR DEFENDANT

11

Done in open court, with all parties present, this ___ day of ___ April ___ 20 23

_____
Court Reporter Present

_____
Deputy Court Clerk

_____
JUDGE OF THE DISTRICT COURT

_____
NAME OF JUDGE TYPED OR PRINTED

ADDENDUM "A"

### CERTIFICATE OF DEFENSE COUNSEL

As the attorney for the defendant, ___Richard Wm. Long___, I certify that:

1. The Defendant has stated to me that he/she is (able/unable) to read and understand the attached form, and I have: (check appropriate option)

_____ Determined the Defendant is able to understand the English language.

_____ Determined the Defendant is unable to understand the English language and obtained to interpret.

2. I have read and fully explained to the Defendant the allegations contained in the Information in this case.

3. I have read and fully explained to the Defendant all of the questions in the Plea of Guilty/Summary of Facts and the answers to the questions set out in the Summary of Facts are the Defendant's answers.

4. To the best of my knowledge and belief the statements and declaration made by the Defendant are accurate and true and have been freely and voluntarily made.

Dated this ___ day of ___ April ___, 20 23

_____
ATTORNEY FOR DEFENDANT

12

PLEA OF GUILTY
ADDENDUM B

Crime Statutory Reference:

(5)  _____  _____O.S. _____    YES  NO

(6)  _____  _____O.S. _____    YES  NO

(7)  _____  _____O.S. _____    YES  NO

(8)  _____  _____O.S. _____    YES  NO

(9)  _____  _____O.S. _____    YES  NO

(10) _____  _____O.S. _____    YES  NO


Range of Punishment:

(5)   Minimum of _____ to a maximum of _____ and/or a fine of $_____  YES  NO

(6)   Minimum of _____ to a maximum of _____ and/or a fine of $_____  YES  NO

(7)   Minimum of _____ to a maximum of _____ and/or a fine of $_____  YES  NO

(8)   Minimum of _____ to a maximum of _____ and/or a fine of $_____  YES  NO

(9)   Minimum of _____ to a maximum of _____ and/or a fine of $_____  YES  NO

(10)  Minimum of _____ to a maximum of _____ and/or a fine of $_____  YES  NO

IN THE DISTRICT COURT OF ___MAYES___ COUNTY
STATE OF OKLAHOMA

| STATE OF OKLAHOMA | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | Case No. _____ |
| | ) | |
| _____, | ) | |
| Defendant. | ) | |
| | ) | |

## METHAMPHETAMINE OFFENDER REGISTRATION

### Defendant Information

| Last Name: | First Name: | Middle Name: |
|---|---|---|
| Address: | | |
| City: | State: | Zip: |
| Address ☐ Home ☐ Work ☐ Other | Phone (Home): | Phone (Cell): |
| | Email: | Date of Birth: |
| D.L. #: | D.L. State: | Gender: ☐ Male ☐ Female |

### Conviction / Plea

| Offense(s) | Adjudication Date | Length of Sentence | Judge |
|---|---|---|---|
| | | | |
| | | | |
| | | | |

#### Notice to Defendant

- This conviction of, or plea to, a methamphetamine-related offense makes you subject to the Oklahoma Methamphetamine Offender Registry Act (See 63 O.S. §2-701).

- While subject to the Oklahoma Methamphetamine Offender Registry Act, you are prohibited from purchasing, possessing, or having control of any substance containing any amount of pseudoephedrine. A prescription for pseudoephedrine shall not provide an exemption for any person to this law. This is in addition to any other terms, rules or conditions of your sentence, probation, or parole. For more information, consult 63 O.S. §2-701.

- By signing this form, the Defendant attests that the Defendant has read or the information contained herein was read to the Defendant. Further, the Defendant attests that the above information is true and accurate.

- Defendant acknowledges that any change pertaining to information that is provided above must be provided to the Oklahoma Bureau of Narcotics Methamphetamine Registry in writing within thirty (30) days thereof.

_____
Defendant

_____
Attorney for Defendant

_____
Assistant District Attorney

_____
Pardon/Parole Officer & Phone Number

**Oklahoma Bureau of Narcotics and Dangerous Drugs**
Fax or Mail form to: Methamphetamine Registration, 440 NE 39th Street, Oklahoma City, OK 73105
Phone: 877-627-2674          Fax: 405-524-7619

ADDENDUM E

Name _Richard King_____ Date _4/18/22_

Case: _CF-21-212_

FINE: _100_

VCA: _50_

COSTS : _X_ ASSESSED _____ WAIVED

Case: _____

FINE: _____

VCA: _____

COSTS : ____ ASSESSED _____ WAIVED

Case: _____

FINE: _____

VCA: _____

COSTS : ____ ASSESSED _____ WAIVED

Case: _____

FINE: _____

VCA: _____

COSTS : ____ ASSESSED _____ WAIVED

**IMPORTANT: READ BEFORE LEAVING THE COURTHOUSE.** Court ordered fines and costs are due at the time of sentencing.  If you cannot pay your fines and costs today, you need to report to the Court Clerk's office on the 2nd floor of the court house to set up a payment plan.

If you were jailed, you may incur additional court costs at a later date for Costs of Incarceration. Any transcripts of your hearings filed at a later time that the court assesses costs to you will also be your responsibility.

**FAILURE TO MAKE AND FOLLOW PAYMENT ARRANGEMENTS WILL RESULT IN A BENCH WARRANT BEING ISSUED FOR YOUR ARREST AND ASSIGNMENT OF YOUR CASE TO AN OUTSIDE COST ADMINISTRATION COMPANY, INCURRING ADDITIONAL COURT COSTS YOU WILL BE RESPONSIBLE FOR.**

Form Amended 02/23/2011

I, Jenifer Clinton, Court Clerk For Mayes County, Oklahoma, hereby certify that the foregoing is a true, correct and full copy of the instrument herewith set out as appears of record in the Court Clerk's Office of Mayes County, Oklahoma.

This _19_ day of _April_, 20_23_

By _____ Jenifer Clinton
Deputy                    Court Clerk



Richard was revoked for a crime he did not commit on oct 12, 2021 as you see these men already came Lester testified to Aug 26, 2021

← Lester

L  I GUESS BEEN FEELING LIKE CRAP SINCE TUESDAY

9/7/2021, 3:00 PM

L  I CALLED IN

Ok,, hope you get to feeling better

10/12/2021, 5:28 PM

Did anyone say anything?

L  No

Good

10/23/2021, 11:27 AM

L  Hey how are you doing

Doing ok,, bored as hell

L  That sucks you looking for another

this textvwas sent the 12....the man first cam

to rae corp oct 7th....it was days afyer Richard left the message



← Side note



10/23/2021, 11:27 AM

**L** Hey how are you doing

Doing ok,, bored as hell

**L** That sucks you looking for another job or have you talked to Eric yet

Looking a little,, haven't talked to nobody, nobody answers

**L** Wonder why

I even emailed Jr and he ain't said anything either

**L** What would happen if you just went out there and talked to him

I don't know,, I guess I could try that

Send message 



I don't know,, I guess I could try that

**L** Ok good luck

10/25/2021, 5:37 PM

I guess the word is I loaded the bin in his truck is why I got fired and I heard I'm getting charges filed,, damn I should have listened to my gut feeling,, nobody answers me back so I guess I'm fkd,, I don't know the guy,, never seen him before,, he told both of us he had permission by Erik and Jerry ,,

That's the story I hear

**L** Tell them that and the gate was left open

I would if anyone would talk to me

**L** Come in and talk to them or talk to a lawyer and tell him what happened

📎   Send message   



Lest 🖤

They should

2/2/2022, 7:34 AM

L    Hope so

Yep,, I hope so,,
2/2/22, 7:35AM ✓✓

8/25/2022, 3:15 PM

Hey there, sorry to bother you or ask but could you come to court at 2 tomorrow so I have someone to say something about this crap, Matt and James were both subpoenaed by the da, company people that are both crooked lieing ass mfs

9/7/2022, 6:32 PM

We need to talk

L    What's going on I'm sorry I haven't talked to you but I've been feeling bad for a few weeks now

📎    Send message    



← Lester

📞  ⋮

**L** What's going on I'm sorry I haven't talked to you but I've been feeling bad for a few weeks now

I need to come talk to you

Rae is lying and is withholding evidence

Only you can prove that, I'm going to my lawyers office in 2 weeks to watch "the only video of me and marks working together"

They are saying I was working with marks and knew marks they swear the second time marks showed up was actually the first time he showed and I let him in intending to steel copper

**L** You want me to go to your lawyer office with you

I need someone to tell the truth, I f I can prove they are withholding evidence I can sue Rae after it's over, you were there when he showed

📎   Send message





Lest

I need someone to tell the truth, I f I can prove they are withholding evidence I can sue Rae after it's over, you were there when he showed up and you and I discussed if he was for real Rae is saying that never happened

James lied on the stand

Only you can prove it

This is why I need to talk to u in person, can Sheryl and I come by and talk to you tonight?

We're staying over here at Sapulpa Donna's dad not doing to good let me know when to meet you at your lawyer office and I'll go with you and talk to him about it

Okay

That would be great

Sept 22 at 230 pm

Send message





← Lest

lawyer office and I'll go with you and talk to him about it

Okay

That would be great

Sept 22 at 230 pm

L Let me know when and where he's located

400 S Muskogee Ave, Claremore, OK 74017

L Ok thanks

Thank you

9/17/2022, 11:35 AM

My lawyer changed the day, it's the 27th at 10:30am

Send message





Lester

My lawyer changed the day, it's the 27th at 10:30am

Ok thanks

9/26/2022, 4:08 PM

You going to be able and meet at my lawyers office tomorrow morning? I hope you will

Planning on it where's that Muskogee street located

The 2nd one after the police station going west turn south,  I think.



Send message

EXLR 41623



The 2nd road west of the railroad tracks I think

Ok thanks

9/27/2022, 10:18 AM

Hey I'm here I think

I'm bout there

Ok

5 days ago, 11:48 AM

How you doing? Not good here,, will you come to court with me, I need some help, they are trying to bury me

Sat 11:48AM

I thought I had to be subpoena to

Send message



33% 9:19

**L** I thought I had to be subpoena to testify but what day is it what time and what courthouse

> No you don't have to be, you've done talked to my lawyer your listed as a witness
> Sat 1:10PM ✓✓

**L** So what about the rest of the text

> Monday the 17th at 930 , Mayes county courthouse, my attorney was supposed to call you, he's not doing a very good job for me

**L** Ok I'll be there

> Ok, thank you

3 days ago, 2:03 PM

> I want James's last name
> Mon 2:03PM ✓

Send message



EX TEXMUS

2:58

5G

← Richie Jail 📹 📞 🔍 ⋮

> I'll find happiness someday but never with you

(R) we get locked down so i cant answer right back

(R) i love you, they do visitation on here now, so yes you are approved

(R) i need to know how to withdraw my plea and do what your talking about

(R) if you answer me back i ont see ituntil tmmorrow night, i love you i want yu

and you can record me like you did the otherday and i can ask them to make my check out to you so you can cash it

(R) i love you sheryl long

Friday ↓ 26 PM

⊕ 🖼 Text message ☺ 🎤

◀ ⬤ ▦

*My wife was very upset I allowed Jeff to push me into Pleading. I felt I had no choice if my own lawyer was going to stand by and watch me go down for a crime or crimes I did not commit*

EX LR 927221

‹ Lester 📞 ⋮

that though

L Ok I'll let you get some sleep

12/11/2021, 5:17 PM

They're pressing charges against me they put a warrant out for me the 9th December
12/11/21, 5:17PM ✓✓

L Damn I'm sorry guess I'll be next wonder if they filled against them other guys

I'm telling them his fkn name
12/11/21, 5:23PM ✓✓

L How did you find out they filed charges against you

Jason said he heard they put a warrant out for me so I looked it up and sure enough they did Friday or Thursday Thursday they put it out
12/11/21, 5:28PM ✓✓

🖇 Send message





Leste

Jason said he heard they put a
warrant out for me so I looked it up
and sure enough they did Friday or
Thursday Thursday they put it out

12/11/21, 5:28PM ✓✓

Guess I'll go find me a lawyer
Monday and see what I can do
we should be able to sue them
for slander since we didn't have
anything to do with them coming out
there

I am pissed,, they wouldn't even talk
to me about this crap,, I'm a felon so
they're really after me

12/11/21, 5:44PM ✓✓

R u talking about rae or the police?

Rae

12/11/21, 5:50PM ✓✓

This is bullshit. Do u have a lawyer
yet?

Send message





34% 9:16

**L**  Go for it

2/1/2022, 7:46 PM

**L**  Hey  I'm not going to be able to go to rae with you I'm still trying to get over this covid give that information to your lawyer

That's fine,, I told my wife I was going to talk to you about it,, guess she did it,,lol,, I think I will talk to my lawyer before I talk to Eric or Jr . Neither one of them ever answered me back and I told Eric the same exact thing that other guy said that he was told

2/1/22, 7:49PM ✓✓

**L**  Your lawyer might get them to drop charge

They should

2/2/2022, 7:34 AM

*Jeff Pace could have got this dismissed from the start than never asking cuyasee where this missing 10/7/21 day is ?*

Send message

← **Reason**

 **Me**
to JERRYJR@rae-corp.com   
10/14/2021, 2:09 PM

Sir, I was fired by James for being on my phone, not wearing seatbelt on the forklift, and workmanship is the reasons he said,, I was never wrote up for anything, I've heard there was more to it than that. I never stole anything , I've gotten scrap lumber a few times but nothing else, and I've told Matt when I see lumber laying around that I take. I never intentionally took anything that nobody knew about.

E | Salcher

Thank you, Richard

Sent from Yahoo Mail on Android

To James Sulcher
Owner RAE Corp

Delete   Archive   Move   Reply   More

← **Wasn't intentional**



**Me**
to jerrys@rae-corp.com & 2 more
10/26/2021, 12:56 AM

E 2 Salcher Email

E 2 Salcher

I didn't intentionally steal anything,, yes I helped a guy from Indian services I believe is who he said he was with,, he told me and Lester he had talked to Erik and Jerry about getting the scrap,, he came on the day of Mr.Swanks memorial but didn't bother anyone, he came in the east door and started telling me what he did and what he was getting,, Lester stopped and listened and talked to him also, he said he remembers seeing him out there getting scrap before,, so yes I helped him,, he told me this is how the guy on dayshift does it so I assumed it was legit, I told Lester I felt bad after it was over and I was thinking about how to tell you , I had never seen the guy before,, he gave us some knives and copper bracelets that he said he makes out of the scrap,, but I didn't intentionally steal anything, I feel like a fool for being helpful. I'm sorry I did it and I wish I would've said I can't and tell him he'd have to come back in the daytime,,
Thank you, Richard Long

Sent from Yahoo Mail on Android

Lester Swearegin was Fired right before 5pm on 10/26/21 Stating in his testimony 04/17/23 he was Fired for taking copper

      
Delete    Archive    Move    Reply all    More



1

IN THE DISTRICT COURT OF MAYES COUNTY,
STATE OF OKLAHOMA

2

3  STATE OF OKLAHOMA,                )
                                    )
4              PLAINTIFF,            )
   V.                               )  CASE NO. CF-2021-212
5                                   )           CF-2016-251
   RICHARD WILLIAM LONG,            )
6                                   )
               DEFENDANT.           )
7
                         * * * * *
8
                 TRANSCRIPT OF PROCEEDINGS
9
                   AUGUST 26, 2022,
10
        BEFORE THE HONORABLE JACQUELINE STOUT
11
                   PRYOR, OKLAHOMA
                     * * * * *
12

13              A P P E A R A N C E S

14  FOR THE STATE:

15          Mr. Kyle Long
            Assistant District Attorney
16          1 Court Place
            Suite 250
17          Pryor, Oklahoma   74361

18  FOR THE DEFENDANT:

19          Mr. Jeffrey A.  Price
            Attorney at law
20          400 South Muskogee Avenue
            Claremore, Oklahoma   74017

21

22
                      Reported By:
23             Desaray D. Martin, CSR
               Official Court Reporter
24             Mayes County Courthouse
               1 Court Place, Suite 240
25              Pryor, Oklahoma   74361

                STATE OF OKLAHOMA -- OFFICIAL TRANSCRIPT

**INDEX**

**WITNESS:**                                                    **PAGE:**

**JAMES SURINE**
    DIRECT EXAMINATION BY MR. KYLE LONG          7
    CROSS-EXAMINATION BY MR. PRICE               24
    REDIRECT EXAMINATION BY MR. KYLE LONG        33

* * * * *

**E X H I B I T S**

| **NO.** | **DESCRIPTION** | **ADMITTED** |
|---|---|---|
| STATE'S EX. 1 | DVD | 15 |
| STATE'S EX. 2 | JUDGMENT AND SENTENCE | 37 |
| STATE'S EX. 3 | JUDGMENT AND SENTENCE | 37 |
| STATE'S EX. 4 | JUDGMENT AND SENTENCE | 37 |
| STATE'S EX. 5 | JUDGMENT AND SENTENCE | 37 |
| STATE'S EX. 6 | JUDGMENT AND SENTENCE | 37 |

STATE OF OKLAHOMA -- OFFICIAL TRANSCRIPT

# P R O C E E D I N G S

1       (The following proceedings were had in open court on

2  August 26, 2022, parties present with and/or through

3  counsel:)

4       THE COURT:  All right.  We'll be on the record.

5  State of Oklahoma versus Richard William Long, CF-21-212

6  as well as CF-16-251.  Mr. Long is present out of custody

7  with his attorney Jeffrey Price.  State of Oklahoma is

8  represented by Kyle Long.  This case, CF-21-212, comes on

9  today for preliminary hearing.  And the CF-16-251 case

10 comes on today for a motion to revoke hearing.

11      Mr. Long, is the State ready?

12      MR. KYLE LONG:  It is.  I do have a couple

13 preliminary matters, but other than that --

14      THE COURT:  All right.  Yes, sir.

15      MR. KYLE LONG:  All right.  So the first one is

16 on the CF-2021 case, as to Count 2, the State would move

17 to dismiss that costs to State after reviewing the

18 discovery and meeting with the witnesses.

19      THE COURT:  All right.  Upon motion of the State,

20 Count 2 is dismissed costs to State at this time.

21      MR. KYLE LONG:  And in regards to the 2016 case,

22 I think it's just to trail.  I don't think it's actually

23 set for hearing.

24      MR. PRICE:  I have no objection to that.

1          MR. KYLE LONG:  At least upon reviewing the court

2     minute.  I'm ready to go either way.  It was just my

3     understanding from the court minute that it was -- I think

4     just asked to trail.

5          THE COURT:  All right.  So you're just wanting it

6     to trail?

7          MR. KYLE LONG:  I would prefer it go today, but

8     I -- I just wanted to be candor to the Court.  I think --

9     or at least ODCR just shows it to trail today.

10          THE COURT:  All right.  So, Mr. Price, are you

11     ready to go on the CF-16 case today?

12          MR. PRICE:  Well, I'll tell you, Judge, I

13     should've acquired the video footage, and so actually I

14     would prefer not to have that today.

15          THE COURT:  Okay.  All right.  And then -- but

16     you are ready to proceed on the CF-21-212?

17          MR. PRICE:  The preliminary hearing, Your Honor.

18          THE COURT:  Okay.  All right.  Then we'll show

19     the CF-16-251 will trail if the Defendant is bound over as

20     to the remaining Count 1.

21          Now, counsel, as to another preliminary matter,

22     it looks like in looking at the previous court minutes

23     that I previously represented, when I was a public

24     defender in an old felony case, CF-12-13, that I

25     represented Mr. Long.  It does not appear that Mr. Long

1  has previously waived any potential conflict on my part to

2  allow me to be his judge here today.

3       Mr. Price, would you like an opportunity to talk

4  to your client to see if he wishes to waive that potential

5  conflict or not?

6       MR. PRICE:  Judge, I have visited him about that

7  matter and you did let us know that at a previous court

8  setting, and we are going to go ahead and waive that.

9       THE COURT:  All right.  Mr. Long, sir, if you

10 would please stand for me real quickly and raise your

11 right hand.  Do you promise to tell the truth, the whole

12 truth, and nothing but the truth, so help you God?

13       THE DEFENDANT:  I do.

14       THE COURT:  All right.  Thank you, sir.  You may

15 put your hand down.  Are you under the influence of any

16 kinds of drugs, alcohol, prescribed medication, anything

17 that would affect your thinking here today?

18       THE DEFENDANT:  No, ma'am.

19       THE COURT:  Is there any medication that you

20 should be taking, but are not?

21       THE DEFENDANT:  No, ma'am.

22       THE COURT:  And have you ever been diagnosed with

23 any mental disease or disorder?

24       THE DEFENDANT:  No, ma'am.

25       THE COURT:  And, sir, you understand that because

1   I've previously represented you in an old felony case,

2   that you would have the right to have a different judge

3   handle the preliminary hearing today in your new case.   Do

4   you understand that?

5           THE DEFENDANT:  Yes, ma'am.

6           THE COURT:  All right.   Your attorney announces

7   that you would like to waive any conflict on my part and

8   allow me to be your judge today.   Is that what you would

9   like to do today?

10           THE DEFENDANT:  Yes, ma'am.

11           THE COURT:  Has anyone forced, coerced,

12   mistreated you, or promised you anything of benefit to get

13   you to waive that conflict?

14           THE DEFENDANT:  No, ma'am.

15           THE COURT:  Then I find that you're a competent

16   person.  That you have knowingly and voluntarily waived

17   any conflict on my part.

18           State waive as well?

19           MR. KYLE LONG:  It does.

20           THE COURT:  All right.   Thank you, sir.   You may

21   be seated.

22           All right.  Any other preliminary matters we need

23   to address at this time, Mr. Long?

24           MR. KYLE LONG:  No, Your Honor.

25           THE COURT:  Mr. Price?

STATE OF OKLAHOMA -- OFFICIAL TRANSCRIPT

1      MR. PRICE:  No, Your Honor.

2      THE COURT:  All right.  You may call your first

3  witness.

4      MR. KYLE LONG:  Your Honor, the State would call

5  James Surine.

6      THE COURT:  Sir, if you would please raise your

7  right hand for me.  Do you swear to tell the truth, the

8  whole truth, and nothing but the truth, so help you God?

9      THE WITNESS:  Yes, I do.

10                      **JAMES SURINE,**

11  having first been duly sworn, was examined and testified

12  as follows:

13      THE COURT:  All right.  Thank you, sir.  Would

14  you please state your full name for the record?

15      THE WITNESS:  James Michael Surine.

16      THE COURT:  All right.  And, sir, would you

17  please spell your last name for me?

18      THE WITNESS:  S-U-R-I-N-E.

19      THE COURT:  All right.  Thank you, sir.

20      You may proceed whenever you're ready.

21      MR. KYLE LONG:  Thank you, Your Honor.

22                   **DIRECT EXAMINATION**

23  **BY MR. KYLE LONG:**

24      Q.  Mr. Surine, how are you employed?

25      A.  With RAE Corporation.

1      Q.    And what exactly is RAE Corporation?

2      A.    It's a -- we build refrigeration and

3  air-conditioning equipment for industrial use.

4      Q.    All right.  And does RAE Corporation have a

5  facility here in Mayes County?

6      A.    Yes.

7      Q.    And where is that located at?

8      A.    4492 Hunt Street, Industrial Park.

9      Q.    And what city is that located in?

10     A.    Pryor.

11     Q.    And is your office at that facility?

12     A.    Yes.

13     Q.    And what are your day-to-day job duties in your

14  capacity with RAE Corporation?

15     A.    I'm currently the plant manager over all of the

16  production.

17     Q.    And what -- what do you do in your capacity as a

18  plant manager?  And I understand it varies from

19  day-to-day, but typically what are your job duties?

20     A.    Responsible for several people that build our

21  product in different departments.

22     Q.    And is one of your job duties overseeing

23  employees of RAE Corp?

24     A.    Yes.

25     Q.    And approximately how many employees do you

1   oversee?

2        A.   200 plus.

3        Q.   And, sir, is also one of your job duties

4   overseeing inventory?

5        A.   Yes.

6        Q.   And what do you do in that regard as far as

7   overseeing inventory?

8        A.   Well, all of those 200 people are responsible for

9   all of the product that comes in that we purchase, that we

10  make, just in general.  Every department is a little

11  different, but that's kind of the gist of it.

12       Q.   And does RAE Corporation have some type of

13  surveillance system that would observe or catch all of the

14  happenings that took place inside and outside that

15  facility?

16       A.   Correct.  Yes.

17       Q.   And do you know how many cameras RAE Corp has

18  equipped in its building?

19       A.   Oh my gosh, I'd say it could be a hundred.

20       Q.   Okay.  And have you ever had an occasion to have

21  to review surveillance footage from RAE Corporation?

22       A.   Yes.

23       Q.   And so is there a system that sits there and

24  records this and then you could play it back and review

25  it?

1    A.   Yes, there is.

2    Q.   And do you have control over that system?

3    A.   Yes.

4    Q.   And I would like to direct your attention to

5    October 12th, 2021.  Do you have that date in mind?

6    A.   Yes.

7    Q.   And on that date, to your knowledge, was that

8    system working in accordance with how it should?  Was it

9    functioning properly?

10   A.   Yes.

11   Q.   And would you please explain to the Court whether

12   or not that system has a way of tracking the date and time

13   of what it records?

14   A.   Yes, it does.

15   Q.   And what does it -- how does it do that, or what

16   does it do to reflect the date and time?

17   A.   It's got a date stamp of the time just on -- just

18   on the whole system.

19   Q.   And on the 12th day of October 2021, to your

20   knowledge, was that date stamp and that time stamp

21   accurate?

22   A.   Yes.

23   Q.   Sir, during that same time frame, did you have an

24   employee by the name of Richard Long?

25   A.   Yes.

STATE OF OKLAHOMA -- OFFICIAL TRANSCRIPT

1    Q.   And do you see Richard Long in the courtroom here

2    today?

3    A.   Yes.

4    Q.   Would you please describe where Mr. Long is

5    seated at and describe what he's wearing?

6    A.   He's sitting at this table and has a champs black

7    shirt on.

8         MR. KYLE LONG:   Your Honor, the State would ask

9    for the identification of the Defendant by this witness.

10        THE COURT:   Any objection?

11        MR. PRICE:   No, Your Honor.

12        THE COURT:   Let the record reflect that the

13   Defendant has been identified.

14   Q.   (By Mr. Kyle Long) And sticking with that same

15   time frame, on that 12th day of October, 2021, on that

16   date or near that date, did you become aware of a

17   situation involving some property being removed from RAE

18   Corp?

19   A.   Yes.

20   Q.   Who made you aware of that incident or that

21   situation?

22   A.   Well, this -- this computer system -- actually we

23   get a report every day that lists any activity after

24   hours, and we're sent that information for us to review

25   just to see what that activity is.   Cara Davenport is the

1    one that actually gets that e-mail notification.

2         Q.    And is Ms. Davenport an employee at RAE Corp?

3         A.    Yes.

4         Q.    And is Ms. Davenport, in fact, the one who

5    notified you of some property that was removed from the

6    facility?

7         A.    Yes, that's correct.

8         Q.    And after being made aware of that by

9    Ms. Davenport, did you have an occasion to review the

10   surveillance?

11        A.    Yes.

12        Q.    And when did you do that?

13        A.    Just immediately when she saw it and figured it

14   out.

15        Q.    And what did you observe on that footage?

16             MR. PRICE:  Objection, Your Honor.  The best

17   evidence would be the video footage.

18             THE COURT:  Sustained.

19             MR. KYLE LONG:  I've got it right --

20             THE COURT:  All right.

21             MR. KYLE LONG:  May I approach the witness?

22             THE COURT:  Yes, sir.

23        Q.    (By Mr. Kyle Long) Sir, I'm about to hand you

24   what's been marked as State's Exhibit No. 1, would you

25   take an opportunity to look at the exhibit and tell me if

1     you recognize what that exhibit is?

2         A.    Yes.

3         Q.    And what is that exhibit?

4         A.    That is the downloaded file of the incidents on

5     the dates that you said on 10 -- what was it that you

6     said?  10/21?

7         Q.    October 12th?

8         A.    Yes.

9         Q.    And would that video capture the event that we're

10    here for today that the Court addressed?

11        A.    Correct.  Multiple -- multiple cameras, multiple

12    shots of this situation.

13        Q.    And did you have an occasion to review that video

14    with myself this afternoon?

15        A.    Yes.

16        Q.    And did you -- after reviewing that video, did

17    you do anything to indicate that you did, in fact, review

18    that video?

19        A.    Say that again.  I'm sorry.

20        Q.    I apologize.  After having an opportunity to

21    review the video, did you do anything to document that you

22    reviewed that video?

23        A.    I initialed and dated it today.  Is that what

24    you're asking?

25        Q.    Yes, sir.

```
1         A.    Yes.

2         Q.    Okay.  And so that was after viewing the video?

3         A.    That's correct.

4         Q.    And the footage that you viewed today, is that

5    the same footage that you viewed on or about the 12th day

6    of October, 2021?

7         A.    Yes.

8         Q.    And everything that you reviewed today would've

9    been similar or the same that you reviewed on that same

10   day?

11        A.    Same thing we reviewed, yes.

12        Q.    Okay.

13              MR. KYLE LONG:  Your Honor, the State would move

14   for the introduction of State's Exhibit No. 1.

15              THE COURT:  Any objection?

16              MR. PRICE:  No, Judge.

17              And you're not going to play it during the actual

18   hearing though?

19              THE COURT:  No.  I usually take it in afterwards.

20              MR. KYLE LONG:  Yeah.  I mean, it's four or five

21   different videos.  Some of them are over 50 minutes long

22   and so --

23              THE COURT:  Okay.  So --

24              MR. PRICE:  Well, I think it's admissible, Your

25   Honor.  I wouldn't objection to the admissibility.
```

STATE OF OKLAHOMA -- OFFICIAL TRANSCRIPT

```
 1              THE COURT:  All right.  Then we'll show State's

 2   Exhibit No. 1 will be admitted as evidence.

 3        Q.   (By Mr. Kyle Long) And, again, sir, you have had

 4   the opportunity on at least two occasions to view the

 5   surveillance footage; is that a fair statement?

 6        A.   That is fair, yes.

 7        Q.   Okay.  And what did you observe after reviewing

 8   that footage?

 9        A.   You want the details of what I viewed?

10        Q.   Yes, sir.

11        A.   Well, obviously --

12              MR. PRICE:  I renew my best evidence objection,

13   Your Honor.

14              THE COURT:  I'll overrule at this time.  State's

15   Exhibit No. 1 has been admitted into evidence.

16              MR. KYLE LONG:  Please continue.

17              THE COURT:  You may answer the question.

18              THE WITNESS:  Okay.  Well, obviously, we got an

19   e-mail saying that there was activity.  We reviewed it.

20   We went and researched all of the videos.  And basically,

21   to summarize what we saw, in that was Richard in the

22   lunchroom making a phone call.

23        Q.   (By Mr. Kyle Long) And I'm going to stop you

24   right there.  You said Richard, are you referring to

25   Mr. Long that you previously identified?
```

1    A.   Yes, Richard Long.

2    Q.   All right.  And you indicated that you observed

3 him in the lunchroom making a phone call.

4    A.   When reviewing all of these videos to do our own

5 personal in-house investigation, we went back and just

6 searched every camera to piece the whole process together

7 to identify that Richard Long -- what -- what he had done

8 in the process.  So --

9    Q.   And when do you first observe Mr. Long on video

10 as it relates to the events on October 12th, 2021?

11        MR. PRICE:  Judge, I understand your ruling.

12 Could you allow me to have a running objection to his

13 interpretation of what he saw from the evidence on the

14 grounds --

15        THE COURT:  Yes, sir.  So noted.

16        THE WITNESS:  So ask me that again.  I'm sorry.

17    Q.   (By Mr. Kyle Long) At what point -- when you were

18 watching the footage, when do you first observe Mr. Long?

19    A.   The exact time?

20    Q.   No.  Like, where is he at in the facility?

21    A.   He was in the department that he works in, the

22 sheet metal shop.  And when -- so on these videos that's

23 sent to us in the backyard, it -- it takes a screenshot of

24 activity going on.  So in order to investigate why -- what

25 was happening out there, we had to go play back the videos

STATE OF OKLAHOMA -- OFFICIAL TRANSCRIPT

1   to figure out who it was, what they was doing, the whole

2   details of the whole process.

3      Q.   And as far as letting the -- I guess my line of

4   questioning would be:  From when the incident first takes

5   place, where do you first observe Mr. Long on that video?

6      A.   Well, we went back to the beginning of the

7   process of where it started, which is Richard Long in the

8   lunchroom on his cell phone calling somebody.  The

9   assumption is --

10      Q.   I'm not asking you to assume.  You observed him

11   on a cell phone; is that --

12      A.   Yes.

13      Q.   Okay.  And is he -- does ever hang up the cell

14   phone while he's in the lunchroom?

15      A.   No.

16      Q.   Okay.  Does he go to a different room?

17      A.   He went to the shop.  He went to the forklift.

18   He got the gate --

19      Q.   Okay.  And I'm going to stop you right there.

20   The shop, where is it at in relationship to the lunchroom?

21      A.   It's right outside the door.

22      Q.   Okay.  So right next door?

23      A.   The lunchroom is in the sheet metal shop.

24      Q.   And as he's in the shop, is Mr. Long still on the

25   telephone?

STATE OF OKLAHOMA -- OFFICIAL TRANSCRIPT

1    A.   Yes.

2    Q.   Again, I'm not asking you to spectate what he's

3 doing or who he's speaking with, what is he doing as he's

4 in the shop?

5    A.   He's on that cell phone.

6    Q.   Okay.  Is he doing anything else while he's on

7 the cell phone?

8    A.   He's just initially on the cell phone.  He's

9 headed to a forklift.

10    Q.   Okay.  And does he arrive at a forklift?

11    A.   Yes.

12    Q.   Is that forklift in that shop building?

13    A.   Yes.

14    Q.   Does he hang up the phone before he gets on the

15 forklift?

16    A.   No.

17    Q.   And so at some point does he get on the forklift?

18    A.   No.

19    Q.   What's he do after he approaches the forklift?

20    A.   He takes the gate opener off the forklift.  He's

21 still on the cell phone.

22    Q.   Okay.  And does he do anything with the gate

23 opener?

24    A.   He's walking towards the -- the east end of the

25 shop on the cell phone.

1      Q.   So this gate opener, is it a potable gate opener

2  or a hand-held gate opener?

3      A.   It's like a remote control that opens your garage

4  door at home for example.

5      Q.   And I apologize.  You may have already answered

6  this.  After Mr. Long grabs the gate opener, what does he

7  do next or where does he head next?

8      A.   He's headed to the east end of the building.

9  He's on his cell phone.  He ends up walking out the main

10 door and going out the backyard.

11     Q.   Do you see him on the outside of the facility or

12 on the outside of the building?

13     A.   Yes.

14     Q.   Is he still on his cell phone?

15     A.   Yes.

16     Q.   What's he do as he walks outside of the building?

17     A.   At some point he -- the gate opens and the truck

18 and trailer pulls up in the backyard.

19     Q.   And approximately how much time lapsed from the

20 time Mr. Long leaves the break room and this truck

21 arrives?

22     A.   Ten to fifteen minutes.

23     Q.   So there's a period of time in between?

24     A.   Yes.  I mean, I don't know exactly, but it's --

25     Q.   Okay.  And when the truck arrives, can you tell

STATE OF OKLAHOMA -- OFFICIAL TRANSCRIPT

1   where Mr. Long is at?

2        A.   Yes.

3        Q.   Where is he at?

4        A.   He's -- he's in the backyard as they were coming

5   in the gate.

6        Q.   Okay.  And can you see if Mr. Long is on a cell

7   phone or any other type of cellular device?

8        A.   You can see him out in the backyard on the cell

9   phone until the gate comes open and they start in.

10       Q.   Okay.  And at some point do you see Mr. Long put

11  up the cell phone or hang up the phone?

12       A.   It's not up to his ear, so...

13       Q.   And you said that the gate opens and the vehicle

14  begins entering the premises.  Do you ever observe what

15  that vehicle does?

16       A.   Yes.  It pulls into the backyard.

17       Q.   Okay.  And does it ever come to park at any place

18  in the back yard?

19       A.   Yes.

20       Q.   Where at?

21       A.   It parks in front of the scrap Yaffe dumpsters.

22       Q.   And what -- what are the scrap Yaffe dumpsters?

23       A.   Yaffe is our scrap vendor.  They provide a --

24  it's a metal bucket that has lids on it.  It's probably

25  four feet wide, six feet long, and probably four foot tall

STATE OF OKLAHOMA -- OFFICIAL TRANSCRIPT

1   roughly -- four and a half foot tall.

2      Q.   And is anything stored in these Yaffe scrap bins?

3      A.   Yeah.  We create a lot of copper scrap, a lot of

4   aluminum scrap, stainless steel scrap, and most of these

5   buckets are copper and aluminum scrap.

6      Q.   Okay.  And how many Yaffe bins were next to the

7   vehicle?

8      A.   We have approximately 16 roughly -- of these

9   buckets.

10     Q.   Okay.  And as you see the vehicle pull up to

11  these Yaffe scrap bins, what happens next?

12     A.   Well, the trailer actually has a Yaffe bucket on

13  it.  And the next thing you see is Richard getting the

14  forklift and unloading the Yaffe bucket that's on the

15  trailer and then loads a new Yaffe bucket on the trailer.

16     Q.   And the new Yaffe bucket that is loaded on the

17  trailer, are you aware of what the contents of that bucket

18  is?

19     A.   Copper.

20     Q.   Okay.  And do you know how much copper is in that

21  bucket?

22     A.   Weight-wise I don't know exactly the weight, but

23  on average it's 7 to 10 thousand dollars per bucket -- the

24  scrap value.

25     Q.   And so on this date, in that bucket, would it

1  have been approximately 7 to 10 thousand dollars worth of

2  copper in that bucket?

3      A.   Yes.  Every scrap bucket that we fill, typically,

4  is in that range.

5      Q.   And would that bucket been near full on that

6  date?

7      A.   Yes.

8      Q.   You indicated that Mr. Long got in the forklift,

9  placed the Yaffe bucket on top of the trailer.  What

10  happens next?

11      A.   There was a couple of guys in the truck.  They

12  was out.  They was going through the other Yaffe buckets

13  throwing all of the loose copper they could possibly get

14  in the back of the truck, on the trailer, just rummaging

15  through everything in the back yard to load up what they

16  could get loaded.

17      Q.   And at some point does the trailer leave?

18      A.   Yes.

19      Q.   And what does Mr. Long do after the trailer

20  leaves?

21      A.   He shuts the gate behind them.

22      Q.   And approximately how long is that truck and

23  trailer there?

24      A.   Quite some time.  I don't know exactly.

25      Q.   And is Mr. Long outside near that truck and

1  trailer the entire time it's there?

2      A.   He's outside with them the whole entire time.

3      Q.   Sir, do you recall, after reviewing the

4  surveillance video, approximately what time of day this

5  took place?

6      A.   It was 10:00 in the evening.

7      Q.   And do you know what day of the week this took

8  place?

9      A.   It was a Sunday.

10     Q.   And you indicated you oversee inventory, and you

11 also sound like you're knowledgeable with removal of stuff

12 like that.  Typically, when are pickups for those types of

13 materials?

14     A.   Typically, when we got ten buckets, we call them

15 and schedule pickup.  Our shipping and receiving hours are

16 between 7:00 and 4:30.  So, typically, we do three loads a

17 month of this scrap.  I mean, we generate quite a bit of

18 scrap material.

19     Q.   Okay.  And you say, typically, pickup is between

20 7:00 and 4:30.  Is that 7:00 a.m.?

21     A.   7:00 a.m. to 430 p.m. That's our shipping

22 receiving hours.

23     Q.   And do you have shipping receiving hours every

24 day of the week?

25     A.   Monday through Friday.

```
 1       Q.   And at any point, that you're aware of, was

 2  this -- the individuals of this truck and trailer allowed

 3  permission to take that property?

 4       MR. PRICE:  Objection.  I think it calls for

 5  hearsay.

 6       THE WITNESS:  No.

 7       THE COURT:  Hold on.  Just give me one second.

 8       THE WITNESS:  Oh, I'm sorry.

 9       THE COURT:  No, you're okay.  All right.  Your

10  response, Mr. Long?

11       MR. KYLE LONG:  I'll withdraw it.

12       THE COURT:  Okay.  You may rephrase.

13       Q.   (By Mr. Kyle Long) Was Mr. Long ever given

14  permission to place that property onto that pickup truck?

15       A.   No.

16       Q.   Thank you, sir.

17       MR. KYLE LONG:  I don't have any further

18  questions.  I'd pass this witness.

19       THE COURT:  All right.  Thank you.  You may

20  proceed whenever you're ready, Mr. Price.

21                    CROSS-EXAMINATION

22  BY MR. PRICE:

23       Q.   Sir, you can only speak, can't you, to what

24  permission that you might have given to my client; isn't

25  that correct?
```

STATE OF OKLAHOMA -- OFFICIAL TRANSCRIPT

1      A.   I would say, yes.

2      Q.   So in your last statement, that he wasn't given

3  permission, as far as what that really means is that you

4  did not give him permission; is that correct?

5      A.   I guess.  You could say that.  I personally

6  didn't give him permission.

7      Q.   Did you ever attempt to identify the other

8  individuals?  The ones who drove the truck into the gated

9  area?

10     A.   Yes.

11     Q.   Were you successful?

12     A.   Yes.

13     Q.   And who did you determine that to be?

14     A.   I don't have that information with me.

15     Q.   Okay.  Were those other people, people that

16  worked there?

17     A.   No.

18     Q.   Okay.  And did you see my client depress the

19  button on that gate opener?

20     A.   Did I see him press the button?

21     Q.   Yes.

22     A.   He had the gate opener with him.

23     Q.   Was there -- did you see him press the button?

24     A.   Well, I guess I didn't see him press the button.

25     Q.   Is there a manual opening method that can be

1   employed to open the gate?  Is there a button somewhere on

2   the wall or something like that?

3        A.   No.

4        Q.   Does it require a hand-held gate opener?

5        A.   There is -- inside the building, there is a

6   wired -- a hardwired control that can open it.

7        Q.   Okay.  So the gate opened and you had seen him --

8   let me ask you a different question.  You said that he got

9   the gate opener from the forklift.  Did you see the gate

10  opener in his hand?

11       A.   Yes.

12       Q.   Okay.  And then, as I understand it, some time

13  passed before the people came in with the truck and

14  trailer, and do you know how long that was?

15       A.   Like I said before, 10 to 15 minutes.  As he was

16  on the phone walking out there --

17       Q.   Okay.  Did you see where Mr. Long was when the

18  gate opened?

19       A.   Yes.

20       Q.   And where was he?

21       A.   Just out in the backyard just outside the gate.

22       Q.   Okay.  And did he ever operate the truck -- the

23  truck that was there to load up things?

24       A.   No.

25       Q.   Okay.  Now, is it true that the bins of metals

STATE OF OKLAHOMA -- OFFICIAL TRANSCRIPT

1  would be mixed metals?  They wouldn't just -- it

2  depends -- none of them would only have copper, for

3  instance?

4      A.   The copper buckets would only have copper.

5      Q.   Okay.  And what -- do you have any documentation

6  that could identify what item -- what bucket was taken,

7  and the weight, and contents thereof?  Is there any paper

8  trail that might help prove that?

9      A.   That particular bucket -- I mean, in the video

10  you may see the bucket number on it, but that bucket

11  wasn't scheduled to be loaded to ship out.  At that

12  point -- once they're ready to go -- once we actually

13  weigh them, log them, you know, when we're officially

14  shipping them to Yaffe, but at that point that stuff

15  wasn't ready to go.

16      Q.   And so is there some way that you can really

17  prove what was in that bucket that was taken?

18      A.   Just what the average copper bucket weight is.

19      Q.   Can you prove that it was only copper in the

20  bucket?

21      A.   Well, just history is -- because of the cost of

22  copper -- I mean, copper is the only thing that we put

23  buckets.  Aluminum, we only put in aluminum.  It's a lot

24  less value.  And basically everything else that was being

25  thrown in the truck was copper.

28

1    Q.    Okay.  And how can you know that?  That -- that

2    items being thrown in the --

3    A.    You can see it in the video.

4    Q.    Okay.  Is the video in color?

5    A.    The video is black and white, but you -- it's

6    copper based on what the product is.  I mean, copper is

7    copper tubing.  Aluminum is flat sheet.  Like, a roll of

8    aluminum foil, you can visually see what the different

9    product is in the video.

10   Q.    Okay.  And could you see the contents of the

11   entire bucket that was loaded and taken?

12   A.    Well, it's copper.  Can I see it?  I mean, I know

13   what the buckets are, and what's in them.

14   Q.    Well, when's the last time that you inspected

15   that bucket that was taken?

16   A.    Me personally?  I didn't inspect the bucket.

17   Q.    Okay.  So you have general familiarity with the

18   operation concerning what goes in the buckets?

19   A.    Yes.

20   Q.    But you don't, yourself, ever go and confirm

21   whether that general operation is actually carried out?

22   A.    That's not true.  I mean, I'm familiar with the

23   buckets.  I'm familiar with the process.  I'm familiar

24   with the costs.  You set the trucks up.  You know, you

25   deal with it every week.  So I'm very familiar with it.

1    Q.   Okay.  So do you arrange for the company to come

2    pick up these buckets?

3    A.   Yes.

4    Q.   And what did you see Mr. Long do, as far as

5    loading the materials?

6    A.   He got out of the forklift.  He unloaded the

7    empty one that they brought back, which means they've took

8    it before.  He loaded up a new one, and him and these two

9    guys just loaded as much stuff up in the truck as they

10   could get within the time frame that they thought they had

11   to get it done and to get out of there.  That's what I

12   saw.

13   Q.   Now, he didn't get out of there as I understand

14   it.  He stayed --

15   A.   No, he stayed to work.

16   Q.   So was he on his lunch break?  Do you happen to

17   know that?

18   A.   No.

19   Q.   Did you all question Mr. Long about any of this?

20   A.   No.

21   Q.   To your knowledge, did the police question

22   Mr. Long about any of this?

23   A.   I assume.  I don't know.  We reported the

24   incident to the police and filed a report.

25   Q.   Now, what did you do after -- I asked you earlier

1    about identifying the other individuals -- the ones that

2    arrived in the truck that did not work there.  What did

3    you do to identify them?

4        A.   Well, RAE Corporation and people at RAE

5    Corporation and the management position -- actually one of

6    our VPs saw an additional vehicle that had come in on a

7    Thursday with the same guys in it, saw the truck going

8    down the highway and followed them down to their residence

9    or business, is how we know who else was involved in it.

10        Q.   And I take it that, that residence or business is

11   not something that tracked to Richard Long?

12        A.   No.

13        Q.   Can you disprove this contention?  That Richard

14   Long was confronted by these gentlemen, who claimed they

15   had permission to remove these items, and he believed

16   them?

17        A.   Can I disclaim that?

18        Q.   Yes.  Can you disprove that claim?

19        A.   Can I disprove that?  Well, I do not believe

20   that's the case.  But, I guess, I don't understand what

21   you're asking me to disclaim.

22        Q.   Well, if a man is working at a place like this --

23        A.   Yes.

24        Q.   -- and somebody comes up and convinces him that

25   they had permission to remove things and would you give me

1  a hand.  I mean, isn't that a possibility here?

2      A.   Is it a possibility?

3      Q.   Yes.

4      A.   If -- I'm not saying that somebody couldn't say

5  that, but it's not something that you should do.

6      Q.   Are you familiar with somebody named Randy Marks?

7      A.   Randy Marks?

8      Q.   Yes.

9      A.   Not that I know of.

10     Q.   Okay.

11         MR. PRICE:  Well, I think that's all the

12  cross-examine I have.  Well, let me make sure since this

13  is the only chance I get.

14     Q.   (By Mr. Price) Oh.  What was the weather that

15  evening or night time?

16     A.   Well, it started off it was clear.  At the end of

17  the video, it was pouring down rain.

18     Q.   Did it affect the visibility any of the security

19  footage?

20     A.   No.  You could just see the rain coming down.

21     Q.   Now, you said that he shut the gate down behind

22  them when they were leaving.  How did you see him do --

23  what did he do to do that?

24     A.   Just saw the gate shutting?

25     Q.   Just -- I'm sorry.

1    A.    You just could see the gate shutting behind him,

2    which he had the remote control.   That's the only way it

3    could shut the gate, is he had the remote control.

4    Q.    Okay.

5    A.    And the other -- that I spoke earlier, the only

6    other electrical way to open those gates is in our

7    stockroom, which is locked up at night.   It's not

8    accessible.

9    Q.    If -- if -- did you testify that this bucket was

10   full that was removed?

11   A.    This bucket was full of copper.

12   Q.    And then how long would it be expected to stay

13   there before it was hauled off?

14   A.    Typically, like I was saying, we -- we send ten

15   buckets every week, week and a half.

16   Q.    Okay.   How long had that one been there?

17   A.    Well, like I said, there's 16 of them.   It's a

18   rotation.   It's no structure rotation.   When the

19   department needs and empty bucket, they go get one.   All

20   right.

21   Q.    All right, sir.   Thank you.

22        THE COURT:   All right.   Any redirect?

23        MR. KYLE LONG:   Yes, please.

24        THE COURT:   You may proceed whenever you're

25   ready.

### REDIRECT EXAMINATION

**BY MR. KYLE LONG:**

Q.   In regards to Yaffe picking up these buckets,
does RAE Corp receive any compensation or monies for the
materials in it?

A.   Yes.

Q.   And, typically, for a full bucket, what does RAE
Corporation receive for compensation?

A.   It's on an average between 7 and 10 thousand
dollars.

Q.   And that's where you got that dollar amount?

A.   Yes.

Q.   And that's --

A.   Just an average.  Each bucket weighs different.
You can get different amounts of weight in it.

Q.   And it's your testimony here today that the
bucket loaded onto the trailer was full?

A.   Yes.

Q.   Sir, counsel had asked you about whether you
thought it was plausible whether you could disprove
Mr. Long's version that he was assisting someone who
requested his help or that he was helping load out a
customer.  Do you remember that line of questioning?

A.   Yes.

Q.   And do you believe that was the case in this

STATE OF OKLAHOMA -- OFFICIAL TRANSCRIPT

1    scenario?

2        A.   No.

3        Q.   Why not?

4        A.   Well, why -- we've never loaded anything out at

5    10:00 at night.

6        Q.   And so that's not a common time for load outs to

7    take place?

8        A.   No.

9        Q.   And you may have already answered this on

10   cross-examination, but was load out scheduled for that

11   specific bin?

12       A.   Was there a load out scheduled for --

13       Q.   On that day, was there --

14       A.   No.

15       Q.   Okay.  In the future, was it -- had there already

16   been a scheduled future date for that bin to be picked up

17   and taken to Yaffe?

18       A.   Was there a future scheduled date for that

19   particular bucket?

20       Q.   Yes, on that date.

21       A.   No.

22       Q.   Are the employees --

23       A.   I don't know if I can say what I want to say,

24   but --

25       Q.   It's all right.  Are employees typically advised

1    ahead of time when somebody is going to come pick up a

2    bin?

3         A.   Yes, and there's designated people who do that.

4         Q.   All right.  And is Mr. Long one of those

5    designated people?

6         A.   No.

7         Q.   Thank you, sir.

8              THE COURT:  Any recross-examination based on

9    that?

10             MR. PRICE:  No recross.  No, Your Honor.

11             THE COURT:  All right.  Thank you, sir.  You may

12   step down.  You're excused.

13             THE WITNESS:  Okay.

14             THE COURT:  You may call your next witness.

15             MR. KYLE LONG:  Your Honor, I have no further

16   witnesses.  I do have the exhibit you've already taken as

17   evidence, as well as five other judgments and sentences

18   that would reflect previous convictions of Mr. Long, and

19   they are certified copies.

20             THE COURT:  All right.  So State's Exhibits Nos.

21   2 through --

22             MR. KYLE LONG:  2 through 6.

23             THE COURT:  All right.

24             MR. KYLE LONG:  And I've presented them to

25   counsel for review.

1          MR. PRICE:  Judge, looking at No. 2, it indicates

2   a conviction on August 30th of 2004, which he was

3   sentenced to 30 days in the county jail.  I don't believe

4   this is within the time frame that can be utilized for

5   purposes of enhancement.  There is a ten-year -- it has to

6   be a sentence --

7          THE COURT:  I understand.

8          MR. LONG:  I believe there is other sentences

9   that will bootstrap that in.  And it's -- counsel is

10  right.  It's for three years in the Department of

11  Corrections, all time suspended except for 30 days.  So if

12  that was, in of itself, the only judgment and sentence I

13  would agree with counsel's argument that it wouldn't be

14  able to be included.  However, there are numerous more

15  that I think are outlined on the supplemental page.

16         MR. PRICE:  And I find no statutory support for

17  the bootstrapping concept.  I've looked into this before.

18         THE COURT:  All right.  But do you object to the

19  State's Exhibits being admitted as evidence?  I understand

20  your argument that it could not be used for enhancement

21  purposes, but are you objecting to any --

22         MR. PRICE:  I would object if they can't be used

23  for enhancement purposes, then they are -- they bear no

24  relevance to the court --

25         THE COURT:  All right.  So I understand your

1  objection as to State's Exhibit No. 2.  What about 3, 4,

2  5, and 6?

3          MR. PRICE:  Okay.  State's Exhibit No. 3 is a

4  conviction from 2007.  I can't tell how long the sentence

5  was for, but I would assume that it expired for -- more

6  than ten years for the October 2021 time frame.  And we

7  would make that objection, that it's irrelevant.

8          THE COURT:  All right.  State's Exhibit No. 4?

9          MR. PRICE:  And that's when his -- December --

10  Exhibit 4 was a conviction on December 7th of 2009, and it

11  was a sentence of five years, and it was in the Department

12  of Corrections.  And so I don't have information on when

13  he discharged that.  It would be his release date, I

14  suppose, to the extent it actually isn't within the ten

15  years, and we would object to this as well.

16          THE COURT:  All right.  State's Exhibit No. 5?

17          MR. PRICE:  Exhibit No. 5 is from 2012.  That one

18  is going -- I can't make that objection on that.  Exhibit

19  No. 6 is from 2017, I wouldn't be able to make that

20  objection on that one either.

21          THE COURT:  All right.  So show State's Exhibit

22  Nos. 2, 3, and 4 will be admitted as evidence over

23  Defendant's objection.  And State's Exhibit Nos. 5 and 6

24  will be admitted with no objection by the Defendant.

25          Counsel, understanding regarding your argument

1   and you can continue to make your argument as part of your

2   demurrer for enhancement purposes as to 2, 3, and 4, if

3   you would like to do so.

4          With that, Mr. Long, anything further on behalf

5   of the State?

6          MR. KYLE LONG:  No, Your Honor.  May I approach?

7          THE COURT:  Yes, sir.

8          MR. KYLE LONG:  And State would rest.  Here are

9   the exhibits.

10          THE COURT:  Thank you, sir.

11          MR. KYLE LONG:  You're welcome.

12          THE COURT:  Then, Mr. Price, any evidence or

13   witnesses that you would like to call on behalf of the

14   Defendant?

15          MR. PRICE:  No, Your Honor.

16          THE COURT:  All right.  Any argument that you

17   would like to present to the Court at this time?

18          MR. PRICE:  Your Honor, it's just a question on

19   whether you think the evidence is sufficient.  I believe

20   there is suspicion based upon this.  Whether it meets the

21   probable cause standard is pretty debatable, I think.  We

22   don't have any law enforcement investigation, apparently,

23   and we have assumptions that a phone call meant something

24   when, in fact, it could've been a number of things.  He

25   could've been talking to anyone.  We know that.

STATE OF OKLAHOMA -- OFFICIAL TRANSCRIPT

1          THE COURT:  All right.  So do you just do a

2  general demurrer --

3          MR. PRICE:  Based on the evidence, generally

4  speaking, you've heard the evidence, but we think the

5  evidence was not sufficient for bindover.

6          THE COURT:  So do you enter a general demurrer at

7  this time?

8          MR. PRICE:  Yes, Your Honor.

9          THE COURT:  All right.  State's response?

10          MR. KYLE LONG:  Your Honor, just taking evidence

11  in light most favorable to the State for the purposes of

12  preliminary hearing, I believe there is enough based upon

13  the testimony that he was on a cell phone.  As he is

14  continuing on the cell phone, he opens the door, the truck

15  pulls in.  Also based upon the witness's testimony that,

16  that's not a typical time to pick up those types of

17  materials.  It would've been in the bin placed on the

18  trailer, and also based upon Mr. Long not -- typically not

19  being the person who would load those materials up.

20          THE COURT:  All right.  And then, Mr. Long, if I

21  remember correctly, you stated that there is multiple

22  videos.  One being at least 50 minutes long; is that

23  correct?

24          MR. KYLE LONG:  Yes.  And I think that's probably

25  the one that's the most relevant that would -- should

1  depict the vehicle coming in, and then the forklift, and

2  the other individuals loading stuff on there.  So, yes,

3  ma'am, I think that's probably the longest.  There are

4  other videos that may be 2, 3 to 4 minutes in length.

5          THE COURT:  All right.  Then looking at the time

6  then today, regarding what I'm going to do is allow me an

7  opportunity to review State's Exhibit No. 1, is to

8  continue this for the Court's ruling as all evidence and

9  argument has been presented to the Court.  So for the

10  Court's decision is, I believe, September 30th at 2:00 --

11          THE BAILIFF:  Or the 29th at 2:00.

12          THE COURT:  -- or the 29th at 2:00 are available

13  for the Court's ruling.  Counsel, does either date work

14  better for you, Mr. Price?

15          MR. PRICE:  You said the 29th or the 30th?

16          THE COURT:  Yes, sir.  The 29th or the 30th both

17  at 2:00.

18          MR. PRICE:  I think either day would be okay.

19          THE COURT:  Mr. Long, do you have a preference?

20          MR. KYLE LONG:  I'll be here, so whatever works

21  for the Court's calendar.

22          THE COURT:  Then I'm going to continue this for

23  the Court's ruling for September 30th, 2022 at 2:00 in the

24  afternoon.

25          Mr. Long, sir, you're ordered to reappear on

1  September 30th at 2:00 and that will be for my ruling from

2  today's hearing.  All right.  And so we will see you then.

3       Anything further on behalf of your client,

4  Mr. Price?

5       MR. PRICE:  No.  Thank you, Your Honor.

6       THE COURT:  Anything further on behalf of the

7  State?

8       MR. KYLE LONG:  No, Your Honor.

9       THE COURT:  We'll be in recess in this case then.

10      (Proceedings concluded at 3:59 p.m.)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

STATE OF OKLAHOMA -- OFFICIAL TRANSCRIPT

1                   C E R T I F I C A T E

2   **STATE OF OKLAHOMA**          )
                                   ) SS:
3   **COUNTY OF MAYES**            )

4           I, Desaray D. Martin, Official Court Reporter in

5   and for the State of Oklahoma, do hereby certify that on

6   the 26th day of August, 2022, before the Honorable

7   Jacqueline Stout, Special District Judge, in the District

8   Court of Mayes County, Oklahoma, I reported in machine

9   shorthand the proceedings had and the evidence given and

10  that the above is a full, true, correct and complete

11  transcript of the proceedings taken at said time and

12  place.

13          WITNESS MY HAND THIS 13th day of April, 2023.

14

15                              _____
                                Desaray D. Martin, CSR
16                              Certificate No. 02026

17

18

19

20

21

22

23

24

25

STATE OF OKLAHOMA -- OFFICIAL TRANSCRIPT

1          IN THE DISTRICT COURT OF MAYES COUNTY,
                    STATE OF OKLAHOMA

2

3   STATE OF OKLAHOMA,              )
                                    )
4               PLAINTIFF,          )
    V.                              )    CASE NO. CF-2021-212
5                                   )             CF-2016-251
    RICHARD WILLIAM LONG,           )
6                                   )
                DEFENDANT.          )
7
                    * * * * *
8            TRANSCRIPT OF PROCEEDINGS

9           SEPTEMBER 30TH, 2022,

10     BEFORE THE HONORABLE JACQUELINE STOUT

11            PRYOR, OKLAHOMA
                    * * * * *
12

13              A P P E A R A N C E S

14  FOR THE STATE:

15          Mr. Kyle Long
            Assistant District Attorney
16          1 Court Place
            Suite 250
17          Pryor, Oklahoma   74361

18  FOR THE DEFENDANT:

19          Mr. Jeffrey A.  Price
            Attorney at law
20          400 South Muskogee Avenue
            Claremore, Oklahoma   74017

21

22                  Reported By:
23          Desaray D. Martin, CSR
            Official Court Reporter
24          Mayes County Courthouse
            1 Court Place, Suite 240
25          Pryor, Oklahoma   74361

*Richard was never allowed to speak at any hearing*

<u>**P R O C E E D I N G S**</u>

1
2      (The following proceedings were had in open court on
3  September 30, 2022, parties present with and/or through
4  counsel:)
5      THE COURT:  We'll be on the record in State of
6  Oklahoma vs. Richard William Long, CF-21-212 as well as
7  CF-16-251.  Mr. Long is present with his attorney Jeffrey
8  Price.  The State is represented by Kyle Long.  This case
9  comes on today for the Court's ruling from the preliminary
10 hearing that was held back on August 26th, 2022.
11      After having an opportunity to look at all of the
12 evidence that was presented at trial, I find that this
13 incident occurred on October 12th, 2021.  That it occurred
14 within the jurisdiction of Mayes County.  That -- out at
15 RAE Corporation.  That the RAE Corporation employee James
16 Surine testified as to the fact that Mr. Long was a
17 previous employee at RAE Corporation.  That during that
18 time, he took a gate opener off of a forklift.  And he
19 opened -- he used the gate opener to open a gate allowing
20 access to individuals in a truck hauling a trailer that
21 allowed them to load.  And, in fact, Mr. Long, upon
22 reviewing the video, assisted in operating the forklift
23 to, in fact, load the items onto the back of the trailer.
24      And then, furthermore, went in and loaded
25 individual items onto the trailer as well as the truck

1   bed, and that Mr. Surine testified that those items that

2   were stolen from RAE Corp, as Mr. Long nor the individuals

3   that were loading it into the truck and trailer, that they

4   did not have permission in order to do so.  Costs and

5   value in the amount of 7 to 10 thousand dollars in value

6   for the property that was stolen.

7          And pursuant to State's Exhibit Nos. 2, 3, 4, 5,

8   and 6, that Mr. Long has a -- judgments and sentences that

9   ranges in length.  After looking at those, those all --

10  none -- well, for each of the sentences, for the ones

11  presented for habitual purposes, that they all piggyback

12  off of each other because at no point did ten years expire

13  after the probation period or the imprisonment period of

14  Mr. Long.  So all prior felonies that the State presented

15  for purposes of enhancement are allowed and -- excuse me.

16  As such, I find that the State has met its burden for

17  purposes of preliminary hearing.

18          And, Mr. Long, as for Count 1 for Grand Larceny,

19  I am binding you over on that count, as Count 2 was

20  previously dismissed by the State, costs to state.  And

21  that bind over is after five prior felony convictions.

22  So, sir, you're ordered to reappear for district court

23  arraignment.

24          Which, Mr. Price, I have November 2nd, if your

25  client would like to waive 30 days for DCA.

STATE OF OKLAHOMA -- OFFICIAL TRANSCRIPT

1       MR. PRICE:  Would that be in the morning or

2  afternoon?

3       THE COURT:  That would be at 10:30 in the

4  morning, sir.

5       MR. PRICE:  Yes.  That will work, Your Honor.

6       THE COURT:  All right.  Sir, if you would come

7  forward and raise your right hand for me please.  Do you

8  swear to tell the truth, the whole truth, and nothing but

9  the truth, so help you God?

10      THE DEFENDANT:  Yes, ma'am.

11              **RICHARD WILLIAM LONG,**

12  having first been duly sworn, was examined and testified

13  as follows:

14      THE COURT:  All right.  Thank you, sir.  Put your

15  hand down.  Are you under the influence of any kind of

16  drugs, alcohol, or prescribed medication, anything that

17  would affect your ability to understand what we are doing

18  here today?

19      THE DEFENDANT:  No, ma'am.

20      THE COURT:  Is there any medication that you

21  should be taking, but are not?

22      THE DEFENDANT:  No, ma'am.

23      THE COURT:  And have you ever been diagnosed with

24  any mental disease or disorder?

25      THE DEFENDANT:  No, ma'am.

1          THE COURT:  Any reason to question your client's

2    competency?

3          MR. PRICE:  No, Your Honor.

4          THE COURT:  Anything on behalf of the State's

5    knowledge?

6          MR. KYLE LONG:  No, Your Honor.

7          THE COURT:  Sir, you understand you have a --

8    because you were bound over at your prelim here today,

9    that you have the right to your next court date, which is

10   called your district court arraignment, within 30 days

11   from today.  Do you understand that?

12         THE DEFENDANT:  Yes, ma'am.

13         THE COURT:  All right.  Your attorney announces

14   that you would like to push it a little bit further down

15   the road.  So do you waive your right to have DCA within

16   30 days?

17         THE DEFENDANT:  Yes, ma'am.

18         THE COURT:  All right.  Has anyone forced,

19   coerced, mistreated you, or promised you anything of

20   benefit to get you to do so?

21         THE DEFENDANT:  No, ma'am.

22         THE COURT:  Then I'll find that you're a

23   competent person.  That you have knowingly and voluntarily

24   waived your right to have district court arraignment

25   within 30 days.  As such, you're ordered to reappear on

STATE OF OKLAHOMA -- OFFICIAL TRANSCRIPT

```
 1   November 2nd, 2022, at 10:30 in the morning.  Okay.  And

 2   since you've already posted bond, you'll be allowed to

 3   remain free on that bond.  And when you return on November

 4   2nd at 10:30, that will be down the hall in Courtroom

 5   No. 4 in front of Judge Gore.  Do you have any questions,

 6   sir?

 7             THE DEFENDANT:  No, ma'am.

 8             THE COURT:  All right.  Anything further on

 9   behalf of your client?

10             MR. PRICE:  No, Your Honor.

11             THE COURT:  Anything further on behalf of the

12   State?

13             MR. KYLE LONG:  No, Your Honor.

14             THE COURT:  We'll be in recess in that case.

15             Good luck to you, sir.

16             Oh, and CF-16-251 will continue to trail.

17             (Proceedings concluded at 2:00 p.m.)

18

19

20

21

22

23

24

25
```

*Handwritten note across lines 18-23:* Richard Feared Speaking out of turn he asked Jeff to allow him to speak on many occasions but was Ignored by Def Jeff Price

STATE OF OKLAHOMA -- OFFICIAL TRANSCRIPT

```
 1                    C E R T I F I C A T E

 2   STATE OF OKLAHOMA          )
                                ) SS:
 3   COUNTY OF MAYES            )

 4          I, Desaray D. Martin, Official Court Reporter in

 5   and for the State of Oklahoma, do hereby certify that on

 6   the 30th day of September, 2022, before the Honorable

 7   Jacqueline Stout, Special District Judge, in the District

 8   Court of Mayes County, Oklahoma, I reported in machine

 9   shorthand the proceedings had and the evidence given and

10   that the above is a full, true, correct and complete

11   transcript of the proceedings taken at said time and

12   place.

13          WITNESS MY HAND THIS 13th day of April, 2023.

14

15                                _____
                                  Desaray D. Martin, CSR
16                                Certificate No. 02026

17

18

19

20

21

22

23

24

25
```

*EX motion To*

IN THE DISTRICT COURT IN AND FOR MAYES COUNTY
STATE OF OKLAHOMA

STATE OF OKLAHOMA,       )
                         )
        Plaintiff,       )
                         )
vs.                      )        Case Nos.    CF-2021-212
                         )
RICHARD LONG,            )
                         )
        Defendant.       )

FILED IN THE DISTRICT COURT
MAYES CO., OKLAHOMA

APR 1 7 2023

JENIFER CLINTON, COURT CLERK
BY_____DEPUTY

## MOTION FOR WITHDRAWAL

Comes Now Jeffrey A. Price and moves to withdraw as attorney of record for Defendant,

Robert Long. In support, the movant states:

1. Defendant provided some payment to the movant, prompting the movant to appear and

represent Defendant through the point of the preliminary hearing. The movant required

substantially more payment from Defendant to appear for trial in this case. Defendant has

another case, as well, wherein a hearing is set to occur April 17th. The movant represents

Defendant in that matter, as well, and is filing a Motion to Withdraw in that case, also.

2. Over the many months leading up to and since the preliminary hearing, the movant has

asked Defendant to secure funds to pay trial fees. To this point, no money has been provided

since August 25, 2022.

3. Attorney appeared in both cases on March 6, 2023. It was the jury sounding docket in

the present case. At that time, the Court informed the movant it would not grant a motion to

withdraw in either case and scheduled the jury trial in the present case to commence April 24th

and the revocation hearing in the other case to occur on April 17th.

4. The movant has spoken with the prosecutor, who made a plea bargain offer in both

cases. Defendant last indicated he was not in agreement.

*See*

5. The movant has now engaged a process server to attempt service of three subpoenas.

The movant has not been provided with payment from Defendant toward the cost of serving

those subpoenas or the cost of paying statutory witness fees.

6. A conflict of interest has arisen due to Defendant's inability to pay reasonable fees. As

a matter of justice, the Court should permit the movant to withdraw and consider Defendant as a

candidate to receive representation through OIDS.

**WHEREFORE,** the movant requests an order discharging or withdrawing him from the

present case.

*I believe statements
all these statements
to be untrue I ask
the court see Billing info from
Subpoena attached.*

Respectfully Submitted,

Price Law, P.C.
**JEFFREY A. PRICE**, OBA# 16431
400 South Muskogee
Claremore OK 74017
Telephone: 918-342-8100
Facsimile: 918-342-8122

## CERTIFICATE OF MAILING

This will certify that a copy of the Motion for Withdrawal was hand-delivered on the
17th day of April, 2023, to:

To:    Richard Long
       495 Spring Cove Ave.
       Salina, OK 74365

       Kyle Long
       Mayes County Asst. D.A.
       One Court Place
       Mayes County, OK 74361

JEFFREY A. PRICE

## ACKNOWLEDGEMENT OF RECEIPT OF DISCOVERY

**Case Number:** _CF-21-212__      **State v.** __Long, Richard____

     Pursuant to my request, the Mayes County District Attorney's Office has provided me with all discovery contained in this packet as of the date of the document. The cost of providing this material is .25 per page up to 20 pages, $5.00 per CD/DVD. If material is provided on a flash drive the cost is $10.00 for 4g, $12 for 8g, $15.00 for 16g, $25.00 for 32g and $40.00 for 64g.

### DISCOVERY CAN BE PICKED UP IN PERSON OR PROVIDE A

### SELF-ADDRESSED STAMPED ENVELOPE.

This discovery packet contains:

_____ **Pages**

__2___ **CD/DVD (s)** (bates 1-26) (bates 27: DVD)

_____ **Flash Drive**

The total cost is **$ 10**

Accepted method of payment: check or money order

> FILED IN THE DISTRICT COURT
> MAYES CO., OKLAHOMA
>
> JAN 0 4 2022
>
> JENIFER CLINTON, COURT CLERK
> BY _____ DEPUTY

_____     _____
Recipient of Discovery (print)           Date

_____
Recipient of Discovery (signature)

_____
District Attorney Representative

Defense Attorney __C. Noah Sears__ was notified Discovery is ready for pick up on __1-4-22__.

Notified by _____ fax __x__ email _____ phone/text

_____Sabina Stanglin_____
District Attorney Representative

IN THE DISTRICT COURT OF MAYES COUNTY
STATE OF OKLAHOMA

STATE OF OKLAHOMA,            )
        Plaintiff,            )
                     )
vs.            )            CF-2021-212
                     )
RICHARD WILLIAM LONG,            )

> FILED IN THE DISTRICT COURT
> MAYES CO., OKLAHOMA
>
> MAR 06 2023
>
> JENIFER CLINTON, COURT CLERK
> BY _____ DEPUTY

---

**DEFENDANT'S WITNESS AND EXHIBIT LIST**

COMES NOW the Defendant, Richard Long, by and through his attorney of record and lists the following witnesses and exhibits he intends to utilize at trial:

A. WITNESSES:
1. RANDY MARKS. Mr. Marks was the driver of the vehicle that loaded the items at issue from the business premises in question. He utilized a common scheme or pattern he had used to convince Defendant and a co-worker that he had the authority of company officials to remove the items he enlisted Defendant and the co-worker to remove.
2. KYLE BAKER. A lieutenant with he Rogers County Sheriff's Office who investigated Randy Marks for crimes charged in Rogers County District Court Case No. CF-2020-550
3. BRETT WILLIAMS. Worked at Parfab in 2020 when Randy Marks unlawfully removed property from Parfab, resulting in charges against Mr. Marks in Rogers County District Court Case No. CF-2020-550.
4. LARRY ZIMMERMAN. The security guard at Parfab who was convinced by Randy Marks that Marks had the authority of Parfab bosses to remove valuable items. This relates to the aforementioned CF-2020-550 (Rogers County).
5. LESTER SWEARENGIN, 918-864-1078; 3246 n. 4435, Salina, OK 74365. The coworker with Defendant who was convinced by Randy Marks that Marks had authority from company officials to remove property from the business premises.
6. DEFENDANT: All issues.
7. All witnesses listed by the State and not objected to by Defendant.

B. EXHIBITS:
1. All materials produced in discovery the prosecution.
2. Judgment and Sentence from Rogers County District Court Case No. CF-2020-550.
3. Judgment and Sentences from convictions of Randy Marks in other jurisdictions, including Kansas.
4. Offender lookup page picture for Randy Marks, Okla. DOC# 2002134

*I've never found these Subpoenas Nor was Lester ever contacted See LRTexts*

5.  All exhibits listed or offered by the prosecution that is not objected to by Defendant.

Respectfully Submitted By:

JEFFREY A. PRICE, OBA#16431

Price Law, P.C.

400 S. Muskogee Ave.

Claremore, OK 74017

P:  918-342-8100

F:  918-342-8122

Attorney for Defendant

## **CERTIFICATE OF DELIVERY**

This will certify that on the 6th day of March, 2023, I caused a true and correct copy of the foregoing pleading to be hand-delivered to the following persons or entities:

Kyle Baker

Office of District Attorney

One Court Place

Pryor, OK 74361

Jeffrey A. Price

IN THE DISTRICT COURT OF MAYES COUNTY,
STATE OF OKLAHOMA

STATE OF OKLAHOMA,                  )
                                    )
            PLAINTIFF,              )
                                    )
V.                                  )
                                    )   CASE NO. CF-2016-251
RICHARD WILLIAM LONG,               )
                                    )
            DEFENDANT                )

*Handwritten: EX Les test 4/17/23*

*Handwritten: Lester Swearegin testimony Richard long was never questioned or allowed to speak see full transcripts at hearing*

* * * * *

TRANSCRIPT OF PROCEEDINGS

APRIL 17, 2023

BEFORE THE HONORABLE JUDGE REBECCA GORE

PRYOR, OKLAHOMA

* * * * *

*Handwritten: Lester testimony Defense witness snored*

Reported by:
Bethany DeGarmo, RSR, CSR
Official Court Reporter
Mayes County Courthouse
1 Court Place
Suite 210
Pryor, Oklahoma 74361

STATE OF OKLAHOMA -- OFFICIAL TRANSCRIPT

```
 1        Q.   Okay.  Can you tell us, on how many different

 2   occasions did you witness the gentlemen come out with a

 3   vehicle to load up materials?

 4        A.   Just the first time I noticed them out...

 5        Q.   Okay.  And so who was involved in the first time

 6   and when was that first time?  What day of the week?

 7        A.   It was a guy -- an older man and two younger

 8   guys.

 9        Q.   Okay.  And was Mr. --

10        A.   It was on a Thursday because we was just working

11   half a shift.

12             THE COURT:  Mr. Swearengin, you're going to

13   have to speak up into that microphone because I cannot

14   hear you because of that glass, there.  I apologize.

15   So if you would repeat that?

16             THE WITNESS:  I said it happened on Thursday

17   night.  The older guy and two younger kids out there.

18             THE COURT:  Thank you very much.  I

19   appreciate that.

20        Q.   (By Mr. Price) An older guy and two young guys.

21   Did they all arrive in the same vehicle?

22        A.   It was a white van.

23        Q.   Okay.  They showed up in a van.  Okay.  What

24   exactly -- and was Mr. Long -- did he do something on that

25   occasion, too?
```

Lester Swearengin Testimony Pg 12 Lines 5-22

STATE OF OKLAHOMA -- OFFICIAL TRANSCRIPT

1    A.   I didn't even know they was there 'til I went to

2    take out my dump -- dump my junk f[illegible]        Page 13

3    shift.   That's when I seen them.                      Lines 1-7

4    building and I noticed the southwest gate was open, then I

5    came back in, the older guy was talking to Richard, and he

6    said he knew all the guys, he was supposed to be out

7    there, so we didn't think nothing about it.

8    Q.   We've been provided with recordings of

9    surveillance footage at RAE Corp. on October the 10th, and

10   you've identified a Thursday.   Would -- if I told you that

11   October 7th was a Thursday, do you think that's consistent

12   with your recollection?

13   A.   It was on Thursday, the first they came out, that

14   I know of.

15   Q.   Okay.   All right.   So on the first time when they

16   came out, did you see how they gained entrance into the

17   yard?

18   A.   I assume they came through that southwest gate

19   because that was the only one that was open, as far as I

20   know.

21   Q.   Okay.   And did you see anyone let them in through

22   that gate?

23   A.   No, it was --

24   Q.   I'm sorry?

25   A.   Like I said, I didn't even know they was there

```
 1   'til I went out and took out my trash.

 2       Q.   Okay.  And then you see that they're in the yard?

 3       A.   Yeah, loading copper in the van

 4       Q.   But you didn't see how they got past --

 5       A.   No, I don't know.  I didn't see them come in or

 6   anything.

 7       Q.   But the gate was open when you observed?

 8       A.   Yeah.

 9       Q.   Okay.  And so who are the -- who were the people

10   there working for RAE Corp. in your area?

11       A.   Just me and Richard, only two that I know of.

12       Q.   Okay.  And what time of the day or night was it

13   on this first occasion?

14       A.   It was around 9:30 or so whenever I noticed them

15   --

16       Q.   And this was --

17       A.   -- at night.

18       Q.   -- at night.  Okay.  So what was your shift on

19   this half day Thursday?  You said --

20       A.   4:30 to 10.

21       Q.   Okay.  And did you speak with any of the people

22   that came there, the people that were there?

23       A.   The older guy talked to me, tell me he knew all

24   they owners and everything.

25       Q.   Did he name any names?
```

Pg 14
Lines 2-8

STATE OF OKLAHOMA -- OFFICIAL TRANSCRIPT

1    A.   Yes --

2    Q.   Which --

3    A.   -- he named James Surine, Jerry Salcher, Junior,

4  Eric Swank, and Mr. Jim Swank.  He knew that Mr. Jim Swank

5  had just passed away.

6    Q.   So he knew some information about the owners, who

7  they were, and even that one of them had just passed away?

8    A.   Yeah.

9    Q.   Okay.  So who are the -- who are the other

10 bosses?  Is Eric Swank one of them?

11   A.   He's the owner, now.

12   Q.   Okay.  How about Jerry Salcher?

13   A.   He's the president, or was.  I don't know if he's

14 -- is he still there, now?  I heard he retired, but I

15 don't know.

16   Q.   Okay.  And James Surine testified --

17   A.   He's plant supervisor.

18   Q.   Okay.  And I think he's the one that may have

19 testified in this case before.  Did he -- but he named

20 which.names, again, to you, this gentleman that came out

21 to load up materials on October 7th?

22   A.   Eric Swank, Jerry Salcher, Junior, and James

23 Surine.

24   Q.   Okay.

25   A.   And Mr. Jim Swank.

1    Q.   Did he give any indication how it was that he had

2    permission to be there and remove anything?

3    A.   No, he just said he had permission and he knew

4    everybody, so we didn't think nothing of it.

5    Q.   Did he -- did he tell you what his use was going

6    to be for the materials?

7    A.   He said they're making bracelets, knives, and

8    stuff to sell for the Cherokee Nation.

9    Q.   Okay.

10   A.   And he gave us some to show us what he was

11   making.

12   Q.   And did it -- and what was your opinion of -- did

13   you believe this man or not?

14   A.   I didn't have no reason not to.

15   Q.   Okay.  And so what did you do, if anything, on

16   this occasion to assist this gentleman?

17   A.   I had some older copper pieces up by my punch, I

18   gave them to him, took them out to him in the van.  These

19   strips had been there about six months, I made carriages

20   out of.

21   THE COURT REPORTER:  I'm sorry, what did you

22   say?  That last bit?

23   MR. PRICE:  Could you repeat that, sir?

24   THE WITNESS:  I said there was some old

25   copper strips up there by my punch, behind my punch,

STATE OF OKLAHOMA -- OFFICIAL TRANSCRIPT

```
 1    that I gave to him, took out and gave to him, because

 2    I hadn't used them in about six months.

 3         Q.   Can you explain what that is?

 4         A.   Copper strips about 4 inches wide by 36 inches

 5    long, about six of them.  I make carriages out of them.

 6         Q.   Were any of these items that were taken on this

 7    first occasion affixed to any property?

 8         A.   No.

 9         Q.   Were they just loose in a bin?

10         A.   Yeah.

11         Q.   Okay.  Did you know whether there were cameras at

12    the workplace that would have captured what all was going

13    on?

14         A.   I assumed all the cameras out there work.  I

15    don't know for sure, I don't know how to get in to look at

16    them and which ones are working, but I know we got cameras

17    all over the place.

18         Q.   As of October 7th, did you know that fact, that

19    there was cameras all over the place out there?

20         A.   Yeah.

21         Q.   Okay.  Did that play into your thinking at all as

22    to whether this gentleman --

23         A.   No.

24         Q.   Okay.

25         A.   We're so used to the cameras, we don't even think
```

STATE OF OKLAHOMA -- OFFICIAL TRANSCRIPT

1    about them being there, really.

2         Q.    Did you have the key or a way to open that gate

3    that was --

*Pg 18*
*Lines 2-17*

4         A.    No.

5         Q.    -- open that night?  Do you -- to your knowledge,

6    did Mr. Richard Long have a key or --

7         A.    No, he don't --

8         Q.    -- a way to --

9         A.    -- have a key to --

10        Q.    -- open that gate?

11        A.    -- that, neither.

12        Q.    And that was which gate, the southwest gate?

13        A.    Southwest.

14        Q.    Okay.  Have you any knowledge of, on previous

15   occasions, be it distant in time or not, that people have

16   been allowed to come and remove --

17        A.    Yeah.

18        Q.    -- bins of metal from there?

19        A.    Not so much bins, but we -- they've come out

20   there and we gave a drop of copper, stainless steel, and

21   aluminum jaw that we had.  That's been several years ago,

22   though.

*Pg 18*
*Lines 23-25*

23        Q.    Do you know whether the contents of the bins

24   and I'm only asking you about the first occasion.  It's my

25   understanding you did not go out there and --

STATE OF OKLAHOMA -- OFFICIAL TRANSCRIPT

1    A.   I didn't go out on the second one.

2    Q.   -- and work in the yard?  The second one you

3 didn't?  Let's wait 'til I finish before you -- okay.  So

4 I'm just asking you about October 7th on all these

5 questions, okay, because it's my understanding you didn't

6 go out there and help do anything on October 10th?

7    A.   No, it was raining.

8    Q.   Okay.  But did you see what bins were taken and

9 do you know that -- what was in the bins, as far as which

10 --

11    A.   I seen --

12    Q.   -- type of metal?

13    A.   -- loading up the copper, and then Richard loaded

14 a bin for them 'cause we got the forklift.  I don't know

15 what was in it, for sure.  Copper, I thought.

16    Q.   And do you have any estimate of the value of

17 those metals?

18    A.   I don't have the slightest idea --

19    Q.   Okay.

20    A.   -- of the prices on that.

21    Q.   Do you happen to remember if you told Mr. Long

22 that you had known that other people had been, in the

23 past, allowed to take things --

24    A.   I told him that I've seen people before getting

25 it, yes.

STATE OF OKLAHOMA -- OFFICIAL TRANSCRIPT

1    Q.   Did the police ever talk to you about this

2  matter?

3    A.   No, I ain't heard nothing about it since they

4  fired me.

*Pg 20*
*Lines 1-8*

5    Q.   Do you have any criminal history?

6    A.   No.

7    Q.   Have you ever been accused of stealing?

8    A.   No.

9    Q.   Did you -- did you become reemployed, or what did

10  you do after you lost that job?

11    A.   I filed for my Social Security.

12    Q.   Retirement?

13    A.   Yeah.

14    Q.   Okay.

15    MR. PRICE:  No further questions.

16    THE COURT:  Thank you.

17    Mr. Long, questions?

18    MR. KYLE LONG:  Yes, Your Honor.

19    THE COURT:  Certainly.  Proceed whenever

20  you're ready.

21    **CROSS-EXAMINATION**

22    **BY MR. KYLE LONG:**

*Mr Long DA didn't seem intrested in new evidence*

23    Q.   Mr. Swearengin, I believe it was your testimony

24  you'd worked for RAE Corp. for 30 years?

*Jeff Price never notified Kyle Long*

25    A.   Forty.

STATE OF OKLAHOMA -- OFFICIAL TRANSCRIPT

1   A.   I never even thought nothing about that.

2   Q.   Okay.  And moving with the October 7th, 2021,

3   date, did the gentleman that was there in the white van,

4   did he ever provide you proof that he was supposed to

5   be --

6   A.   No, he just talked about the owners and said he

7   had permission.

8   Q.   Okay.  And do you know who that that gentleman

9   is?

10  A.   No, I don't remember his name.  I don't even

11  really remember what he looks like, to tell you the truth.

12  I'm not very good on faces.

13  Q.   And you indicated that he was in a white van?

14  A.   Yeah, a white Chevy minivan.

15  Q.   Was there a trailer or anything attached to that

16  van?

17  A.   No.

18  Q.   And where was the items, the copper and metal,

19  being loaded into the van?

20  A.   It was out behind the cool shop.  About middle

21  ways to the east end of the plant.

22  Q.   Okay.  You indicated that was Thursday about 9:30

23  in the evening?

24  A.   Yeah.

25  Q.   Was it common for people to come pick up items

1   that late at night?

2      A.  Well, like I said, I wouldn't even know they was

3   there if I hadn't run out and emptied my trash, so I don't

4   know if there's people walking around out there or not at

5   night.

6      Q.  Had you ever had occasion to help someone, other

7   than that evening, load metal out at 9:30 at night?

8      A.  No, not at night.  Like I said, when people came

9   on days, we did get the metal down for them, or drop

10   racks, and helped them load that.

11      Q.  Prior to being let go from RAE Corp., how long

12   did you work nights?

13      A.  Oh, hell.  We been on nights, back and forth, 15,

14   20 years.

15      Q.  So during that 15 or 20 years, you've never had

16   occasion to help load out metal --

17      A.  No.

18      Q.  -- or -- okay.  Mr. Swearengin, there was some

19   testimony between you and Mr. Price about the gate being

20   open; do you remember that line of questioning?

21      A.  I noticed it open whenever I went around.

22      Q.  And you said you assumed that someone had opened

23   it, but you're not entirely sure how that gate got open?

24      A.  No, I don't know.  I assumed somebody left it

25   unlocked, or -- I don't know.

```
 1        Q.   Okay.   And is that -- where was this gate located
 2   at, in relationship to the building?
 3        A.   Okay, it's on the south -- southwest end.
 4        Q.   Okay.   And during the night shift, is that gate
 5   typically open or closed?
 6        A.   I don't know.
 7        Q.   Okay.
 8        A.   Never pay any attention to it, to tell you the
 9   truth.
10        Q.   Thank you, sir.
11             THE COURT:   Questions, Mr. Price?
12                      REDIRECT EXAMINATION
13                        BY MR. PRICE:
14        Q.   Had you seen this gentleman, the older gentleman
15   -- either one of the gentlemen or all three of the
16   gentlemen that were there that night to load things up,
17   had you seen them before that occasion?
18        A.   Not that I know of, no.
19        Q.   Okay.   When you got fired, did the bosses say
20   anything about Mr. Long?
21        A.   No.   They didn't talk to me about Richard.
22        Q.   Okay.
23             MR. PRICE:   That's all the questions I have.
24             THE COURT:   Any questions, Mr. Long?
25             MR. KYLE LONG:   No, Your Honor.
```

1          THE COURT:  All right.

2     Thank you, sir.  You can step down.

3          MR. PRICE:  Call Richard Long.

4          THE COURT:  Certainly.  Mr. Long, if you'll

5     please come forward?  And, sir, would you please raise

6     your right hand?  Do you promise to tell the truth and

7     nothing but the truth, so help you God?

8          THE WITNESS:  Yes, ma'am.

9                    **RICHARD LONG,**

*[handwritten note: Richard Long was never allowed to defend himself, never Questioned By Kyle Long or Jeff Price Defense]*

10    having first been duly sworn, was examined

11    and testified as follows:

12         THE COURT:  Please have a seat.  And

13    Mr. Long, if you'll speak into that microphone, would

14    you please tell me your full name?

15         THE WITNESS:  Richard William Long.

16         THE COURT:  All right.  Thank you so much,

17    sir.

18    Mr. Price, proceed whenever you're ready,

19    please.

20                 <u>DIRECT EXAMINATION</u>

21                 <u>BY MR. PRICE:</u>

22    Q.   Mr. Long, I understand you've had some criminal

23    convictions; correct?

24    A.   Yes, sir.

25    Q.   Have you ever had a criminal conviction involving

*States Witness*
*+ Exhibit List*

**IN THE DISTRICT COURT OF MAYES COUNTY**
**STATE OF OKLAHOMA**

FILED IN THE DISTRICT COURT
MAYES CO., OKLAHOMA

MAR 0 3 2023

JENIFER CLINTON, COURT CLERK
BY_____ DEPUTY

| | |
|---|---|
| STATE OF OKLAHOMA, | ) |
| | ) |
| PLAINTIFF, | ) |
| | ) |
| vs. | ) Case No. CF-2021-212 |
| | ) |
| RICHARD WILLIAM LONG | ) |
| | ) |
| DEFENDANT. | ) |

<u>**STATE'S WITNESS AND EXHIBIT LIST FOR JURY TRIAL**</u>

COMES NOW on this ____ day of March 2023, the State of Oklahoma, by District

Attorney Matthew J. Ballard, through Assistant District Attorney, Kyle E. Long notifies the

Defendant herewith of its anticipated jury trial witnesses and exhibits pursuant to Okla. Stat. tit.

22 § 2002(A)(1).

Anticipated Witnesses:

1. Steve Brown
   Mayes County Sheriff's Office
   1 Court Place, Ste. 150
   Pryor, Oklahoma 74361

   *— Investigator Never Questions Richard Long or Lester Swearingin*

   This witness will testify to his training and experience as it relates to his knowledge
   and actions in this investigation. This witness will testify as to his training and
   experience as it relates his job duties as a law enforcement officer. This witness will
   testify consistent with the reports contained in the State's Discovery materials
   generated by the witness or mentioning the witness.

2. Michael Lewis
   Mayes County Sheriff's Office
   1 Court Place, Ste. 150
   Pryor, Oklahoma 74361

   *— arresting officer also never spoke t Richard or Lester*

   This witness will testify to his training and experience as it relates to his knowledge
   and actions in this investigation. This witness will testify as to his training and
   experience as it relates his job duties as a law enforcement officer. This witness will

testify consistent with the reports contained in the State's Discovery materials generated by the witness or mentioning the witness.

3. Cara Davenport
   RAE Corporation
   4492 Hunt Street
   Pryor, Oklahoma 74361

   *[handwritten: Video Controll never chated Oct 7 2021]*

   This witness will testify consistent with the reports contained in the State's Discovery materials generated by the witness or mentioning the witness. This witness's testimony will include but not be limited to testimony that while employed by RAE Corporation she was made aware of a possible theft. This witness will further testify to the actions and steps she took after being notified of the potential theft.

4. James Surine
   RAE Corporation
   4492 Hunt Street
   Pryor, Oklahoma 74361

   *[handwritten: Had to of known about oct 7 2021 by then his bosses were notified by Richard + sheryl her email or sergl]*

   This witness will testify consistent with the reports contained in the State's Discovery materials generated by the witness or mentioning the witness. This witness's testimony will include but not be limited to testimony that while employed by RAE Corporation he was made aware of a possible theft. This witness will further testify to the actions and steps he took after being notified of the potential theft.

5. Matt Deselle
   RAE Corporation
   4492 Hunt Street
   Pryor, Oklahoma 74361

   *[handwritten: admitted to Wayne Stinnett that Richard + Lester may have called him on oct 7 2021 Richard claimed and It was never listened to Both men State Bosses were not returning message]*

   This witness will testify consistent with the reports contained in the State's Discovery materials generated by the witness or mentioning the witness. This witness's testimony will include but not be limited to testimony that while employed by RAE Corporation he was made aware of a possible theft. This witness will further testify to the actions and steps he took after being notified of the potential theft.

6. Any/all witnesses listed by the Defendant not otherwise object to by the State.

7. Any/all rebuttal witnesses as necessary.

_____

Anticipated Exhibits:

1. Any/all surveillance video of theft, including in the State's discovery, including, but not limited to surveillance video previously introduced and admitted at preliminary hearing.
2. All exhibits listed by the Defendant not otherwise object to by the State.

MATTHEW J. BALLARD
DISTRICT ATTORNEY

BY: _____
Kyle E. Long, OBA #32053
Assistant District Attorney

**Certificate of Service**

This is to certify that a true and correct copy of the above was submitted to the attorney for the Defendant, Jeff Price, on the date of filing

_____
Kyle E. Long





Sheryl Dorman <sheryldorman72@gmail.com>

---

## Transcripts for April 17th
4 messages

---

**Sheryl Dorman** <sheryldorman72@gmail.com>                              Thu, Apr 4, 2024 at 7:06 PM
To: jeff@priceandsears.com

I have the transcripts from April 17, 2023, they ended record at 130. I remember court going on till at least 2 because I texted Richard's daughter as soon as I walked out to my truck leaving the courthouse and screenshot the texts to show someone before I even started my truck. When I read the transcripts there are certain statements Judge Gore made to Richard that are not in the transcripts. I was hoping since you were there with us you could help shed some light on this for me. The transcripts end with
"the proceedings were concluded at 130" however I specifically remember 4 very intense statements she made at the end before I thought it was over and left the courtroom.
"I know you're a lier"
"I know you knew that man"
"I know your profited from this"
"and i know you will be found guilty in your trial next week"
is it common practice to go off record and conclude your court hearing off record as if court ended?

---

**Sheryl Dorman** <sheryldorman72@gmail.com>                              Thu, Apr 4, 2024 at 7:06 PM
To: Shae Rozzi <srozzi@fox23.com>

[Quoted text hidden]

---

**Jeff** <jeff.price@jeffpricelaw.com>                                    Fri, Apr 5, 2024 at 10:34 AM
To: Sheryl Dorman <sheryldorman72@gmail.com>

Sheryl,

I cannot verify that the judge made any of these comments. I know the way you are wired and you will think I am in on a scam for not agreeing, but I don't agree the judge made those particular remarks. Her take on the evidence might have – reading between the lines – meant that is what she thought, but she did not actually make those remarks. I think your perception is off, probably because it is an emotional issue. -- Jeff

---



**From:** Sheryl Dorman <sheryldorman72@gmail.com>
**Sent:** Thursday, April 4, 2024 7:06 PM
**To:** Jeff <jeff.price@jeffpricelaw.com>
**Subject:** Transcripts for April 17th

I have the transcripts from April 17, 2023, they ended record at 130. I remember court going on till at least 2 because I texted Richard's daughter as soon as I walked out to my truck leaving the courthouse and screenshot the texts to show someone before I even started my truck. When I read the transcripts there are certain statements Judge Gore made to Richard that are not in the transcripts. I was hoping since you were there with us you could help shed some light on this for me. The transcripts end with

[Quoted text hidden]

---

**Sheryl Dorman** <sheryldorman72@gmail.com>                              Fri, Apr 5, 2024 at 4:33 PM

4/10/24, 12:10 PM                                          Gmail - Transcripts for April 17th

To: Jeff <jeff.price@jeffpricelaw.com>

Well Mr Long also remembers the exact same remarks being made sir, we had 2 other people in that courtroom Lester swearinger as well as his son who seem to remember hearing the same 4 statements so i'm sorry if you disagree but even lawyers have been known to make "mistakes". As far as "an emotional issue" I would like you to clarify exactly what you mean by that statement. I am not nor have I been in an overly emotional haze. I am well aware of what took place in that courtroom and I absolutely do have the proof of it,  just as every ounce of information I gave wayne Stinnett was proven to be true. So I'm hoping you can recollect back to that day and try to remember the statements Judge Gore made after your closing statements specifically stating you felt Mr. Long really wasn't being treated fairly in this hearing. Which really contradicted your statements in your text messages to Richard April 14, 2023, stating clearly "If i were you fair or not i would take the deal", you went on to explain why you would not be defending him at that revocation hearing the following Monday morning april 17, 2023. You also explained why you would still show up to the hearing, I believe your words were "because the judge will make me, really for her conveniency". There's a lot of information that comes out of an investigation and I've asked you before for a list of exactly what money you received from both Richard and I as well as exactly what you did to defend him. I am wanting to know when was it that you notified DA Kyle Long that your client Richard Long and his lead man at rae stated there is an entire day of what very well could be exculpatory evidence missing. Exactly when did you begin to investigate and look into this missing video evidence that you were notified of not only by myself but by Richard and Lester when Lester accompanied Richard and myself into your office september 27, 2022 at 1030 am. Also im very curious why at the discovery hearing when james serine testified and richard did not agree with his testimony and not only verbally but wrote down Mr. Serine was in fact lying and asked you to let him testify for himself to bring out this missing evidence everyone including you seemed to be ignoring. I'm also curious why you felt that withholding all the documented proof of Richard's innocence that I attempted to give you was better kept quiet from the revocation hearing, I believe your words were "save that for the trial". When in fact had you actually defended your client the day of April 17, 2023, there's absolute proof you could have shown the Judge that she did not have all the facts correct and ask for the hearing to be dismissed altogether. After Lester's testimony everyone in that courtroom knew there was missing exculpatory evidence. I'm also curious what was discussed in Judge Gores chambers after Lester's testimony and before recess. Judge Gore specifically called you and Kyle Long into her chambers to discuss what I can only assume was Lester's testimony and definite indication there is a day missing from video evidence.  I'm curious whose idea was it exactly to proceed as if Lester never testified? I'm curious why you didnt call a Brady violation when it was found that Mayes co sheriff's office received a police report with more than Richard's name listed as well as TWO days of video surveillance. Oh that's right, you never questioned mayes county Sheriff's office, rae corporation or kyle Long as to where this evidence is, this lead man of Richard's, Lester Swearengin is speaking of. You knew Lester's witness statement to you Sept 27, 2022 and the hearing wasn't until  April 17, 2023. So I must ask you, do you truly believe you actually defended your client from day 1? I would like to see the documented proof where you raised this issue to the prosecution. I already have the documented proof you didn't raise this issue with the judge during the April 17th hearing. You gently let her know you felt this was unfair and an error in judgement for Mr Long's case. However there is even a notation in transcripts that you did not seem to have a problem with this ruling against your client that you stated you felt was an error in judgment and wrong. You let Mr Long down tremendously in this case and at that hearing and it all stemmed from you being disappointed over money and  you didn't believe you would receive any more money. But you did, didn't you sir? The morning of April 17th 2023, I stopped and withdrew the cash Richard agreed with you he would bring to keep good standing with you. However even with your excuse for your behavior in the hearing being you were not paid enough money, exactly what is your excuse for not following up on discovery about missing evidence back in September 2022?

I told you the week he was railroaded by his own lawyer during a revocation hearing, I would get the truth and I would find justice for my husband. If you're so upset over money I have a great job now and I own my own stuff, get me an itemized list of debits and credits on Richard's defense account. I would be glad to see where exactly we owed you for anything. I mean after all Richard is really only setting in Clara waters because you didn't get paid enough so I guess maybe if I pay you more he will get out? hmmmmm doubtful...i can't say richard always kept his word to pay you but i absolutely can say i did. You refused to discuss anything with me even after Richard stated to you , you could. You never answered the many emails I sent you explaining where and how you can get the proof we need to clear him in this matter, The way i see it and apparently a few other people too, you had no intentions to defend Richard Long at all, you simply took his payments and let "Mayes county do what Mayes county wanted to do"

[Quoted text hidden]

(EXOSCN)

# OKLAHOMA
## State Courts Network

The information on this page is NOT an official record. Do not rely on the correctness or completeness of this information. Verify all information with the official record keeper. The information contained in this report is provided in compliance with the Oklahoma Open Records Act, 51 O.S. 24A.1. Use of this information is governed by this act, as well as other applicable state and federal laws.

## IN THE DISTRICT COURT IN AND FOR MAYES COUNTY, OKLAHOMA

|  |  |
|---|---|
| STATE OF OKLAHOMA VS. LONG, RICHARD WILLIAM | **No. CF-2016-00251**<br>**(Criminal Felony)**<br><br>Filed: 06/21/2016<br><br><br>Judge: Unassigned |

# PARTIES

LONG, RICHARD WILLIAM, Defendant
BALLARD, MATTHEW J, DISTRICT ATTORNEY
FISHER, THOMAS, ARRESTING OFFICER
CHOUTEAU POLICE DEPARTMENT, ARRESTING AGENCY

# ATTORNEYS

None

# EVENTS

| Event | Party | Docket | Reporter |
|---|---|---|---|
| Tuesday, June 21, 2016 at 13:30:00.000 CDT<br>  INITIAL APPEARANCE | | | |
| Thursday, August 25, 2016 at 09:30:00.000 CDT<br>  PRELIMINARY HEARING SOUNDING DOCKET | | | |
| Thursday, November 3, 2016 at 14:00:00.000 CDT<br>  PRELIMINARY HEARING - G | | | |
| Wednesday, January 11, 2017 at 13:35:00.000 CST<br>  DISTRICT COURT ARRAIGNMENT | | | |
| Monday, February 13, 2017 at 09:30:00.000 CST<br>  DISPOSITION DOCKET - MC | | | |
| Wednesday, March 8, 2017 at 13:01:00.000 CST<br>  COMMUNITY SENTENCING - STAFFING | | | |
| Tuesday, March 21, 2017 at 13:30:00.000 CDT<br>  DISPOSITION DOCKET - MC | | | |

| Event | Party | Docket | Reporter |
|---|---|---|---|

Wednesday, April 12, 2017 at 13:35:00.000 CDT
  FELONY MOTION DOCKET

Tuesday, May 9, 2017
  GUILTY PLEA

Tuesday, May 9, 2017
  RFAR - INTERNAL CODE CA/AR

Tuesday, May 9, 2017
  RULE 8 PAYMENT PLAN

Tuesday, May 9, 2017 at 13:35:00.000 CDT
  DISPOSITION DOCKET - MC

Tuesday, May 9, 2017 at 13:35:00.000 CDT
  COMMUNITY SENTENCING - STAFFING

Thursday, May 25, 2017
  LW - BALANCE CHECKED

Tuesday, May 30, 2017
  AS - J&S GIVEN TO DEPUTY CLERK

Thursday, December 12, 2019
  TAX INTERCEPT ADD

Tuesday, March 23, 2021
  TAX INTERCEPT ADD

Wednesday, December 29, 2021
  APPLICATION TO REVOKE

Wednesday, December 29, 2021
  ISSUE WARRANT OF ARREST/APP TO REVOKE

Thursday, February 10, 2022 at 09:30:00.000 CST
  TRAILING FELONY

Thursday, February 10, 2022 at 09:30:00.000 CST
  PRELIMINARY HEARING SOUNDING DOCKET

Thursday, February 10, 2022 at 09:30:00.000 CST
  APP TO REVOKE HEARING

Thursday, April 14, 2022 at 14:00:00.000 CDT
  PRELIMINARY HEARING - S

Thursday, April 14, 2022 at 14:00:00.000 CDT
  APP TO REVOKE HEARING

Thursday, April 14, 2022 at 14:00:00.000 CDT
  TRAILING FELONY

Thursday, May 12, 2022 at 09:30:00.000 CDT
  PRELIMINARY HEARING SOUNDING DOCKET

Thursday, May 12, 2022 at 09:30:00.000 CDT
  APP TO REVOKE HEARING

Thursday, May 12, 2022 at 09:30:00.000 CDT
  TRAILING FELONY

Thursday, June 16, 2022 at 09:30:00.000 CDT
  PRELIMINARY HEARING SOUNDING DOCKET

**Event** ·                                                             **Party**     **Docket**     **Reporter**

Thursday, June 16, 2022 at 09:30:00.000 CDT
  APP TO REVOKE HEARING

Thursday, June 16, 2022 at 09:30:00.000 CDT
  TRAILING FELONY

Monday, August 8, 2022
  TAX INTERCEPT ADD

Friday, August 26, 2022 at 14:00:00.000 CDT
  PRELIMINARY HEARING - S

Friday, August 26, 2022 at 14:00:00.000 CDT
  APP TO REVOKE HEARING

Friday, August 26, 2022 at 14:00:00.000 CDT
  TRAILING FELONY

Friday, September 30, 2022 at 14:00:00.000 CDT
  COURT'S RULING ON PRELIMINARY HEARING

Friday, September 30, 2022 at 14:00:00.000 CDT
  TRAILING FELONY

Friday, September 30, 2022 at 14:00:00.000 CDT
  APP TO REVOKE HEARING

Wednesday, November 2, 2022 at 10:35:00.000 CDT
  DISTRICT COURT ARRAIGNMENT

Wednesday, November 2, 2022 at 10:35:00.000 CDT
  TRAILING FELONY

Wednesday, November 2, 2022 at 10:35:00.000 CDT
  APP TO REVOKE HEARING

Monday, March 6, 2023 at 13:30:00.000 CST
  FELONY JURY SOUNDING DOCKET

Monday, March 6, 2023 at 13:30:00.000 CST
  APP TO REVOKE HEARING

Monday, March 6, 2023 at 13:30:00.000 CST
  TRAILING FELONY

Monday, April 17, 2023
  GUILTY PLEA

Monday, April 17, 2023 at 09:30:00.000 CDT
  APP TO REVOKE HEARING

Friday, April 21, 2023
  BG - BALANCE CHECKED

Monday, April 24, 2023
  BG - J&S GIVEN TO DEPUTY CLERK

Friday, October 13, 2023
  TAX INTERCEPT ADD

Friday, April 5, 2024
  TRANSCRIPT RETURNED

# COUNTS

1. DOMESTIC ASSAULT & BATTERY BY STRANGULATION OR ATTEMPTED (AFCF)
2. DOMESTIC ASSAULT & BATTERY IN PRESENCE OF MINOR/CHILD
3. KIDNAPPING - AFCF

# DOCKET

| Date | Code | Description | |
|---|---|---|---|
| 06/21/2016 | [ TEXT ] | | $ 103.00 |
| | | FILE, ENTER AND RECORD INFORMATION CT1 | |
| | | Pursuant to 12 O.S. § 39, Document Available at Court Clerk's Office | |
| | | *FIRST AMENDED INFO FILED 8-25-16* | $ 5.00 |
| | | LAW LIBRARY | $ 6.00 |
| | | CLEET | $ 9.00 |
| | | 10% OF CLT9 | $ 0.90 |
| | | AFS1 | $ 5.00 |
| | | 10% OF AFS1 | $ 0.50 |
| | | STATE TREASURER FORENSIC FEE | $ 5.00 |
| | | 10% OF FORE | $ 0.50 |
| | | MEDICAL EXPENSE LIABILITY REVOLVING FUND | $ 10.00 |
| | | 10% OF MERF | $ 1.00 |
| | | DISTRICT ATTORNEYS REVOLVING FUND - DACF-EFF. 11-01-03 | $ 25.00 |
| | | 10% OF DARF | $ 2.50 |
| | | OKLAHOMA COURT INFORMATION SYSTEM FEE - EFF. 07-01-04 | $ 25.00 |
| | | SHERIFF SERVICE FEE-COURTHOUSE SECURITY SUB ACCOUNT | $ 10.00 |
| | | 10% OF COURTHOUSE SECURITY FEE | $ 1.00 |
| | | MINIMUM VCA | $ 50.00 |
| | | 10% VCAF | $ 5.00 |
| | | ATTORNEY GENERAL VICTIM SERVICES UNIT | $ 3.00 |
| | | 10% OF AG VICTIM SERVICES FEE | $ 0.30 |
| | | CHILD ABUSE MULTIDISCIPLINARY ACCOUNT | $ 3.00 |
| | | 10% OF CAMA FEE | $ 0.30 |
| | | COURT REPORTER FEE | $ 20.00 |
| | | OCIS FOR COURT REPORTER FEE | $ 25.00 |
| 06/21/2016 | [ TEXT ] | | $ 83.00 |
| | | FILE, ENTER, RECORD INFORMATION CT2 | |
| | | LAW LIBRARY | $ 6.00 |
| | | DA COUNCIL PROSECUTION ASSESSMENT | $ 15.00 |
| | | 10% OF DACM | $ 1.50 |

| | |
|---|---|
| OCIS REVOLVING FUND | $ 25.00 |
| SHERIFF SERVICE FEE FOR COURTHOUSE SECURITY | $ 10.00 |
| 10% OF CHS | $ 1.00 |
| AG VICTIM'S SERVICES UNIT | $ 3.00 |
| 10% OF AG | $ 0.30 |
| CHILD ABUSE MULTIDISCIPLINARY ACCOUNT | $ 3.00 |
| 10% OF CAMA/DHS | $ 0.30 |
| TRAUMA CARE ASSESSMENT | $ 10.00 |
| 10% OF TCRF | $ 1.00 |
| SHERIFF SERVICE FEE ON ARRESTS | $ 5.00 |
| CLEET ASSESSMENT | $ 9.00 |
| 10% OF CLT9 | $ 0.90 |
| AFIS FEE | $ 5.00 |
| 10% OF AFS5 | $ 0.50 |
| FORENSIC SCIENCE IMPROVEMENT ASSESSMENT | $ 5.00 |
| 10% OF FORE | $ 0.50 |
| MEDICAL EXPENSE LIABILITY REVOLVING FUND | $ 10.00 |
| 10% OF MERF | $ 1.00 |
| MINIMUM VCA | $ 30.00 |
| 10% OF VCAM | $ 3.00 |

**06/21/2016 [ TEXT ]**

CM DH (GORE) CSR SLOAN; ADA WALTERS; DEFENDANT PRESENT
Pursuant to 12 O.S. § 39, Document Available at Court Clerk's Office

PRO SE. CASE COMES ON FOR AN INITIAL APPEARANCE.

DEFENDANT ACKNOWLEDGES RECEIPT OF INFORMATION. ON

BEHALF OF THE DEFENDANT COURT ENTERS A PLEA OF NOT

GUILTY ON THE MISDEMEANOR COUNTS. COURT ORDERS CASE SET

ON 8-25-16 @ 9:30 A.M. FOR THE PRELIMINARY HEARING

SOUNDING DCOKET. DEFENDANT IS ORDERED TO REAPPEAR ON

ABOVE DATE WITH AN ATTORNEY. DEFENDANT IS ADVISED NOT

TO WAIT UNTIL THAT DATE TO RETAIN AN ATTORNEY. BOND IS

SET IN THE AMOUNT OF $50,000.00 WITH THE CONDITION OF

ABSOLUTELY NO CONTACT WITH THE VICTIM OR THE MINOR

CHILDREN IN THE CASE. DEFENDANT IS REMANDED TO THE

MAYES COUNTY JAIL UNTIL BOND IS POSTED.

**07/07/2016 [ TEXT ]** $ 40.00

APPLICATION FOR APPOINTED COUNSEL/APPROVED/DEFERRED
Pursuant to 12 O.S. § 39, Document Available at Court Clerk's Office

**07/07/2016  [ TEXT ]** $ 250.00

NOTICE OF APPOINTMENT OF ATTORNEY/FELONY/PLEA/STIPULATIO
Pursuant to 12 O.S. § 39, Document Available at Court Clerk's Office

TO REVOCATION/

10% OF OIDS TO COURT CLERK REVOLVING FUND $ 25.00

15% TO DISTRICT COURT REVOLVING FUND $ 3.75

**07/08/2016  [ TEXT ]**

ASSERTION OF DEFENDANT'S RIGHT TO SPEEDY TRIAL
Pursuant to 12 O.S. § 39, Document Available at Court Clerk's Office

**07/08/2016  [ TEXT ]**

FIRST REQUEST FOR DISCOVERY
Pursuant to 12 O.S. § 39, Document Available at Court Clerk's Office

**07/11/2016  [ TEXT ]**

ENTRY OF APPEARANCE (GLEN DRESBACK)
Pursuant to 12 O.S. § 39, Document Available at Court Clerk's Office

**07/11/2016  [ TEXT ]**

DEFENDANT'S MOTION FOR DISCOVERY
Pursuant to 12 O.S. § 39, Document Available at Court Clerk's Office

**08/03/2016  [ TEXT ]** $ 33.75

COSTS FOR 7-7-16

**08/25/2016  [ TEXT ]**

*FIRST AMENDED INFO FILED*
Pursuant to 12 O.S. § 39, Document Available at Court Clerk's Office

**08/25/2016  [ TEXT ]** $ 103.00

###FILE, ENTER AND RECORD INFORMATION CT3

(Entry with fee only) $ 5.00

LAW LIBRARY $ 6.00

CLEET $ 9.00

10% OF CLT9 $ 0.90

AFS1 $ 5.00

10% OF AFS1 $ 0.50

STATE TREASURER FORENSIC FEE $ 5.00

10% OF FORE $ 0.50

MEDICAL EXPENSE LIABILITY REVOLVING FUND $ 10.00

10% OF MERF $ 1.00

DISTRICT ATTORNEYS REVOLVING FUND - DACF-EFF. 11-01-03 $ 50.00

10% OF DARF $ 5.00

OKLAHOMA COURT INFORMATION SYSTEM FEE - EFF. 07-01-04 $ 25.00

SHERIFF SERVICE FEE-COURTHOUSE SECURITY SUB ACCOUNT $ 10.00

10% OF COURTHOUSE SECURITY FEE $ 1.00

MINIMUM VCA $ 50.00

| | |
|---|---|
| 10% VCAF | $ 5.00 |
| ATTORNEY GENERAL VICTIM SERVICES UNIT | $ 3.00 |
| 10% OF AG VICTIM SERVICES FEE | $ 0.30 |
| CHILD ABUSE MULTIDISCIPLINARY ACCOUNT | $ 3.00 |
| 10% OF CAMA FEE | $ 0.30 |
| COURT REPORTER FEE | $ 20.00 |
| OCIS FOR COURT REPORTER FEE | $ 25.00 |

**08/25/2016  [ TEXT ]**

CM\AC (GORE) CSR:C.SLOAN. ADA:M.WALTERS. DEFENDANT
Pursuant to 12 O.S. § 39, Document Available at Court Clerk's Office

APPEARS WITH ATTORNEY GLEN DRESBACK. CASE COMES ON FOR

THE PRELIMINARY HEARING SOUNDING DOCKET. DEFENDANT

ACKNOWLEDGES RECEIPT OF 1ST AMENDED INFORMATION. COURT

ORDERS CASE AMENDED BY INTERLINEATION TO SHOW THE

DEFENDANT'S CORRECT ADDRESS AS "127 QUAIL DRIVE PRYOR

OK, 74361." DEFENDANT ENTERS PLEA OF NOT GUILTY. COURT

ORDERS CASE SET ON 11-3-16 @ 2:00 P.M. FOR PRELIMINARY

HEARING. DEFENDANT IS TO REAPPEAR ON THE ABOVE DATE

WITH ATTORNEY. DEFENDANT IS REMANDED TO THE MAYES

COUNTY JAIL UNTIL BOND IS POSTED.

**10/11/2016  [ TEXT ]** $ 675.00

COST OF INCARCERATION TOTAL CLAIMED $2477.00
Pursuant to 12 O.S. § 39, Document Available at Court Clerk's Office

| | |
|---|---|
| EXCEEDS MAXIMUM ALLOWED PER MI-2010-10-MAXIMUM ENTERED | $ 75.00 |
| (Entry with fee only) | $ 75.00 |
| 15% TO DISTRICT COURT REVOLVING FUND | $ 112.50 |

**10/11/2016  [ TEXT ]** $ 35.00

APPEARANCE/APPROVING BOND
Pursuant to 12 O.S. § 39, Document Available at Court Clerk's Office

BONDSMANS NAME: BOB TAYLOR

BOND AMOUNT: $50,000.00

POWER NUMBER ON BOND: BT 602

**10/11/2016  [ TEXT ]**

ISSUE RELEASE (MCSO)

**10/14/2016  [ TEXT ]**

RETURN RELEASE (MCSO)
Pursuant to 12 O.S. § 39, Document Available at Court Clerk's Office

**10/18/2016  [ TEXT ]**

MOTION/ORDER TO ENDORSE ADDITIONAL WITNESS(ES)
Pursuant to 12 O.S. § 39, Document Available at Court Clerk's Office

| | |
|---|---|
| 10/25/2016  [ TEXT ] | $ 50.00 |

RETURN SUBPOENA (MCSO)
Pursuant to 12 O.S. § 39, Document Available at Court Clerk's Office

| | |
|---|---|
| (Entry with fee only) | $ 25.00 |

| | |
|---|---|
| 11/03/2016  [ TEXT ] | $ 50.00 |

RETURN SUBPOENA (MCSO)
Pursuant to 12 O.S. § 39, Document Available at Court Clerk's Office

| | |
|---|---|
| (Entry with fee only) | $ 25.00 |

| | |
|---|---|
| 11/03/2016  [ TEXT ] | $ 50.00 |

RETURN SUBPOENA (MCSO)
Pursuant to 12 O.S. § 39, Document Available at Court Clerk's Office

| | |
|---|---|
| (Entry with fee only) | $ 25.00 |

| | |
|---|---|
| 11/03/2016  [ TEXT ] | $ 50.00 |

RETURN SUBPOENA (MCSO)
Pursuant to 12 O.S. § 39, Document Available at Court Clerk's Office

| | |
|---|---|
| (Entry with fee only) | $ 25.00 |

| | |
|---|---|
| 11/03/2016  [ TEXT ] | $ 50.00 |

RETURN SUBPOENA (MCSO)
Pursuant to 12 O.S. § 39, Document Available at Court Clerk's Office

| | |
|---|---|
| (Entry with fee only) | $ 25.00 |

**11/03/2016  [ TEXT ]**

CM:LM (GORE) CSR: C. SLOAN; ADA: M. WALTERS.
Pursuant to 12 O.S. § 39, Document Available at Court Clerk's Office

DEFENDANT APPEARS WITH ATTORNEY, GLEN DRESBACK. CASE
COMES ON FOR PRELIMINARY HEARING. DEFENDANT IS SWORN
AND ADVISED OF RIGHTS AND THE RIGHT TO A PRELIMINARY
HEARING. DEFENDANT WAIVES PRELIMINARY HEARING. COURT
FINDS DEFENDANT'S WAIVER TO BE ENTERED FREELY AND
VOLUNTARILY AND ACCEPTS WAIVER. DEFENDANT WAIVES 30
DAYS FOR DISTRICT COURT ARRAIGNMENT. CASE IS SET 1/11/17
AT 1:30 PM FOR DISTRICT COURT ARRAIGNMENT. DEFENDANT IS
TO APPEAR ON ABOVE DATE WITH AN ATTORNEY. DEFENDANT IS
TO REMAIN ON CURRENT BOND.

**01/11/2017  [ TEXT ]**

CM;DM FOR AS (MCBRIDE) CSR RUIZ; ADA SURBER;
Pursuant to 12 O.S. § 39, Document Available at Court Clerk's Office

DEFENDANT PRESENT WITH ATTORNEY CHARLES RAMSEY STANDING
IN FOR ATTORNEY MISTY FIELDS. CASE COMES ON FOR
DISTRCIT COURT ARRAIGNMENT. DEFENDANT ADVISED OF
RIGHTS. DEFENDANT ACKNOWLEDGES RECEIPT OF INFORMATION
AND WAIVES FORMAL READING. DEFENDANT ENTERS A PLEA OF

NOT GUILTY. DEFENDANT WAIVES RIGHT TO JURY TRIAL. COURT

FINDS THE DEFENDANT IS MENTALLY COMPETENT. COURT FINDS

THE DEFENDANT HAS KNOWINGLY AND VOLUNTARILY ENTERED

WAIVER. COURT ORDERS CASE SET ON 2-13-17 @ 9:30 A.M.

FOR DISPOSITION. DEFENDANT IS ORDERED TO REAPPEAR ON

ABOVE DATE WITH ATTORNEY. DEFENDANT IS ALLOWED TO REMAIN

FREE ON CURRENT BOND.

**02/13/2017  [ TEXT ]**

CM:LM (MCBRIDE) CSR: L. RUIZ; ADA: K. LONG
Pursuant to 12 O.S. § 39, Document Available at Court Clerk's Office

DEFENDANT APPEARS WITH ATTORNEY M. FIELDS. CASE COMES

ON FOR DISPOSITION. UPON MOTION OF THE DEFENSE CASE IS

CONTINUED TO 3/21/17 AT 1:30 PM FOR DISPOSITION.

DEFENDANT IS ORDERED TO APPEAR ON ABOVE DATE WITH AN

ATTORNEY. COURT ORDERS LSI ASSESSMENT. ATTORNEY TO

SUBMIT THE ORDER FOR A SIGNATURE.

**02/23/2017  [ TEXT ]**

ORDER TO CONDUCT LSI-R
Pursuant to 12 O.S. § 39, Document Available at Court Clerk's Office

**03/08/2017  [ TEXT ]**

CM: LM (MCBRIDE) NO CSR; ADA: K. LONG. ATTORNEY, MISTY
Pursuant to 12 O.S. § 39, Document Available at Court Clerk's Office

FIELDS APPEARS ON BEHALF OF DEFENDANT. CASE COMES ON

FOR C.S. STAFFING. STAFF IS IN RECEIPT OF DEFENDANT'S

LSI-R ASSESSMENT. UPON AGREEMENT OF STAFF, DEFENDANT IS

APPROVED INTO THE MAYES COUNTY C.S. PROGRAM. THIS CASE

HAS PREVIOUSLY BEEN SET FOR PLEA ON 3/21/17 AT 1:30 PM.

**03/21/2017  [ TEXT ]**

CM DM (MCBRIDE) CSR RUIZ; ADA; MCCLAREN; DEFENDANT
Pursuant to 12 O.S. § 39, Document Available at Court Clerk's Office

PRESENT WITH ATTORNEY MISTY FIELDS. CASE COMES ON FOR

DISPOSITION. DEFENDANT SWORN. DEFENDANT ADVISED OF

RIGHTS. DEFENDANT ENTERS A PLEA OF GUILTY. PLEA OF

GUILTY IS WITHDRAWN. COURT ORDERS CASE SET ON 4-12-17 @

1:30 P.M. ON THE FELONY MOTION DOCKET. DEFENDANT IS

ORDERED TO REAPPEAR ON ABOVE DATE WITH ATTORNEY.

DEFENDANT IS ALLOWED TO REMAIN FREE ON CURRENT BOND.

**04/12/2017  [ TEXT ]**

CM;DM (MCBRIDE) CSR RUIZ; ADA LONG; DEFENDANT PRESENT
Pursuant to 12 O.S. § 39, Document Available at Court Clerk's Office

WITH ATTORNEY MISTY FIELDS. CASE COMES ON FOR THE

FELONY MOTION DOCKET. COURT ORDERS CASE SET ON 5-9-17 @

1:30 P.M. FOR DISPOSITION INTO C.S. DEFENDANT IS

ORDERED TO REAPPEAR ON ABOVE DATE WITH ATTORNEY.

DEFENDANT IS ALLOWED TO REMAIN FREE ON CURRENT BOND.

**05/09/2017 [ TEXT ]**

PLEA OF GUILTY / SUMMARY OF FACTS
Pursuant to 12 O.S. § 39, Document Available at Court Clerk's Office

**05/09/2017 [ TEXT ]**

ADDENDUM A
Pursuant to 12 O.S. § 39, Document Available at Court Clerk's Office

**05/09/2017 [ TEXT ]**

FORM 13.8(A) ADDITIONAL FINDINGS AT TIME OF SENTENCING
Pursuant to 12 O.S. § 39, Document Available at Court Clerk's Office

**05/09/2017 [ TEXT ]**

FORM 08-651, PADILLA V. KENTUCKY
Pursuant to 12 O.S. § 39, Document Available at Court Clerk's Office

**05/09/2017 [ TEXT ]**

ASSET DISCLOSURE INFORMATION / AFFIDAVIT
Pursuant to 12 O.S. § 39, Document Available at Court Clerk's Office

**05/09/2017 [ TEXT ]**

CONSENT FOR THE RELEASE OF CONFIDENTIAL INFORMATION IN
Pursuant to 12 O.S. § 39, Document Available at Court Clerk's Office

CRIMINAL PROCEEDINGS.

**05/09/2017 [ TEXT ]**

CM/LM (MCBRIDE) CSR: L. RUIZ; ADA: K. LONG
Pursuant to 12 O.S. § 39, Document Available at Court Clerk's Office

CASE COMES ON FOR PLEA INTO THE C.S. PROGRAM

UPON MOTION OF THE STATE CT 3 IS DISMISSED COSTS TO

THE STATE.

SUCCESSFUL:

CT 1: 10 YEARS DEPARTMENT OF CORRECTIONS ALL SUSPENDED,

$500.00 FINE, $250.00 VCA AND COSTS

CT 2: 1 YEAR IN THE MAYES COUNTY JAIL ALL SUSPENDED,

$250.00 FINE, $75.00 VCA AND COSTS.

COUNTS 1 & 2 TO RUN CONCURRENT WITH E/OTHER.

UNSUCCESSFUL:

CT 1: 10 YEARS TO BE SERVED IN THE DEPARTMENT OF

CORRECTIONS, $500.00 FINE, $250.00 VCA AND COSTS.

CT 2: 1 YEAR TO BE SERVED IN THE MAYES COUNTY JAIL.

$250.00 FINE, $75 VCA AND COSTS.

COUNTS 1 & 2 TO RUN CONCURRENT WITH E/OTHER

(SEE FULL MINUTE)

---

**05/10/2017  [ TEXT ]**

ORDER TO APPEAR

Pursuant to 12 O.S. § 39, Document Available at Court Clerk's Office

---

**05/11/2017  [ TEXT ]**

RULE 8 HEARING ORDER (SEE DATES BOX)

Pursuant to 12 O.S. § 39, Document Available at Court Clerk's Office

---

**05/17/2017  [ TEXT ]**

JUDGMENT AND SENTENCE

Pursuant to 12 O.S. § 39, Document Available at Court Clerk's Office

---

**05/25/2017  [ TEXT ]**                                              $ -3.75

COSTS FOR 7-7-16, 8-3-16, 10-11-16, 5-9-17

| Description | Amount |
|---|---|
| (Entry with fee only) | $ -33.75 |
| (Entry with fee only) | $ -112.50 |
| (Entry with fee only) | $ 500.00 |
| (Entry with fee only) | $ 200.00 |
| (Entry with fee only) | $ 20.00 |
| (Entry with fee only) | $ 250.00 |
| (Entry with fee only) | $ 45.00 |
| (Entry with fee only) | $ 4.50 |
| CT3 | $ -103.00 |
| (Entry with fee only) | $ -5.00 |
| LAW LIBRARY | $ -6.00 |
| CLEET | $ -9.00 |
| 10% OF CLT9 | $ -0.90 |
| AFS1 | $ -5.00 |
| 10% OF AFS1 | $ -0.50 |
| STATE TREASURER FORENSIC FEE | $ -5.00 |
| 10% OF FORE | $ -0.50 |
| MEDICAL EXPENSE LIABILITY REVOLVING FUND | $ -10.00 |
| 10% OF MERF | $ -1.00 |
| DISTRICT ATTORNEYS REVOLVING FUND - DACF-EFF. 11-01-03 | $ -50.00 |
| 10% OF DARF | $ -5.00 |
| OKLAHOMA COURT INFORMATION SYSTEM FEE - EFF. 07-01-04 | $ -25.00 |
| SHERIFF SERVICE FEE-COURTHOUSE SECURITY SUB ACCOUNT | $ -10.00 |
| 10% OF COURTHOUSE SECURITY FEE | $ -1.00 |
| MINIMUM VCA | $ -50.00 |
| 10% VCAF | $ -5.00 |
| ATTORNEY GENERAL VICTIM SERVICES UNIT | $ -3.00 |

| | |
|---|---|
| 10% OF AG VICTIM SERVICES FEE | $ -0.30 |
| CHILD ABUSE MULTIDISCIPLINARY ACCOUNT | $ -3.00 |
| 10% OF CAMA FEE | $ -0.30 |
| COURT REPORTER FEE | $ -20.00 |
| OCIS FOR COURT REPORTER FEE | $ -25.00 |
| **12/04/2017  [ TEXT ]** | $ -1.00 |
| AJE: MONIES DUE THE FOLLOWING AGENCY(IES) REDUCED | |
| AJE: COST DUE TO CARD ALLOCATION FEE | $ 1.00 |
| **01/12/2018  [ TEXT ]** | $ -0.03 |
| AJE: MONIES DUE THE FOLLOWING AGENCY(IES) REDUCED | |
| (Entry with fee only) | $ -0.97 |
| AJE: COST DUE TO CARD ALLOCATION FEE | $ 1.00 |
| **03/14/2018  [ TEXT ]** | $ -1.00 |
| AJE: MONIES DUE THE FOLLOWING AGENCY(IES) REDUCED | |
| AJE: COST DUE TO CARD ALLOCATION FEE | $ 1.00 |
| **04/18/2018  [ TEXT ]** | $ -2.69 |
| AJE: MONIES DUE THE FOLLOWING AGENCY(IES) REDUCED | |
| (Entry with fee only) | $ -0.31 |
| AJE: COST DUE TO CARD ALLOCATION FEE | $ 3.00 |
| **06/06/2018  [ TEXT ]** | |
| CM:LM (MCBRIDE) NO CSR; ADA: K. LONG. CASE COMES ON | |
| Pursuant to 12 O.S. § 39, Document Available at Court Clerk's Office | |
| FOR C.S. STAFFING. DEFENDANT HAS SUCCESSFULLY COMPLETED | |
| THE C.S. PROGRAM AND UPON AGREEMENT OF STAFF IS | |
| APPROVED TO GRADUATE. | |
| **06/06/2018  [ TEXT ]** | |
| COMMUNITY SENTENCING GRADUATION | |
| Pursuant to 12 O.S. § 39, Document Available at Court Clerk's Office | |
| **08/10/2018  [ TEXT ]** | $ -1.00 |
| AJE: MONIES DUE THE FOLLOWING AGENCY(IES) REDUCED | |
| AJE: COST DUE TO CARD ALLOCATION FEE | $ 1.00 |
| **12/10/2018  [ TEXT ]** | $ -0.69 |
| AJE: MONIES DUE THE FOLLOWING AGENCY(IES) REDUCED | |
| (Entry with fee only) | $ -0.30 |
| (Entry with fee only) | $ -0.01 |
| AJE: COST DUE TO CARD ALLOCATION FEE | $ 1.00 |
| **07/15/2019  [ TEXT ]** | $ -3.00 |
| AJE: MONIES DUE THE FOLLOWING AGENCY(IES) REDUCED | |
| AJE: COST DUE TO CARD ALLOCATION FEE | $ 3.00 |

**09/16/2019  [ TEXT ]**                                                          $ -1.00

    AJE: MONIES DUE THE FOLLOWING AGENCY(IES) REDUCED

    AJE: COST DUE TO CARD ALLOCATION FEE                         $ 1.00

**12/12/2019  [ TEXT ]**                                                          $ 10.00

    TAX INTERCEPT CASE ADD LIST TO OTC

**02/05/2020  [ TEXT ]**                                                          $ -0.25

    AJE: MONIES DUE THE FOLLOWING AGENCY(IES) REDUCED

    (Entry with fee only)                                       $ -2.75

    AJE: COST DUE TO CARD ALLOCATION FEE                         $ 3.00

**03/23/2021  [ TEXT ]**                                                          $ 10.00

    TAX INTERCEPT CASE ADD LIST TO OTC

**12/29/2021  [ TEXT ]**

    MOTION TO REVOKE SUSPENDED SENTENCE
    Pursuant to 12 O.S. § 39, Document Available at Court Clerk's Office

**12/29/2021  [ TEXT ]**

    ORDER FOR REVOCATION HEARING AND FOR WARRANT OF ARREST
    Pursuant to 12 O.S. § 39, Document Available at Court Clerk's Office

    COURT REPORTER FEE                                           $ 20.00

    (Entry with fee only)                                       $ 25.00

**12/29/2021  [ TEXT ]**                                                          $ 50.00

    ISSUE WARRANT OF ARREST (MCSO) $10,000.00

    (Entry with fee only)                                       $ 25.00

**12/30/2021  [ TEXT ]**                                                          $ 35.00

    PERSONAL RECOGNIZANCE BOND
    Pursuant to 12 O.S. § 39, Document Available at Court Clerk's Office

**12/30/2021  [ TEXT ]**

    PROOF OF RECALL (MCSO)
    Pursuant to 12 O.S. § 39, Document Available at Court Clerk's Office

**12/30/2021  [ TEXT ]**

    CM;BG (STOUT) NO CSR. ADA: WATERS; DEFENDANT APPEARS
    Pursuant to 12 O.S. § 39, Document Available at Court Clerk's Office

    WITH ATTORNEY NOAH SEARS MAKING HIS ENTRY OF APPEARANCE.

    CASE COMES ON INSTANTER FOR INITIAL APPEARANCE ON A

    MOTION TO REVOKE. DEFENDANT ACKNOWLEDGES RECEIPT OF

    INFORMATION AND ADVISED OF RIGHTS. COURT ORDERS WARRANT

    OF ARREST RECALLED. COURT ORDERS CASE SET TO TRAIL

    CF-21-212 ON 2-10-22 AT 9:30 P.M. FOR A MOTION TO

    REVOKE HEARING. DEFENDANT ORDERED TO REAPPEAR ON THE

    ABOVE DATE WITH ATTORNEY. DEFENDANT SIGNS A PERSONAL

    RECOGNIZANCE BOND. DEFENDANT ALLOWED TO REMAIN FREE ON

    CURRENT BOND.

**01/05/2022  [ TEXT ]**

RETURN WARRANT OF ARREST (MCSO)MTN TO REV
Pursuant to 12 O.S. § 39, Document Available at Court Clerk's Office

RECALLED 12-30-2021

---

**02/10/2022  [ TEXT ]**

CM;CNP (STOUT) CSR:NONE; ADA:K.HUNTER; DEFENDANT
Pursuant to 12 O.S. § 39, Document Available at Court Clerk's Office

APPEARS. ATTORNEY NOAH SEARS MAKING HIS ENTRY OF

APPEARANCE. CASE COMES ON TRAILING CF-21-212. AT

DEFENDANT'S REQUEST WITH NO OBJECTION FROM THE STATE,

COURT ORDERS CASE TO CONTINUE TO TRAIL ON 4-14-22 @

2:00 P.M. DEFENDANT ORDERED TO REAPPEAR ON THE ABOVE

DATE WITH ATTORNEY. DEFENDANT ALLOWED TO REMAIN FREE ON

CURRENT BOND.

---

**04/12/2022  [ TEXT ]**                                           $ -0.38

AJE: MONIES DUE THE FOLLOWING AGENCY(IES) REDUCED

(Entry with fee only)                                              $ -0.87

AJE: COST DUE TO CARD ALLOCATION FEE                              $ 1.25

---

**04/14/2022  [ TEXT ]**

CM CNP (STOUT) CSR:D.MARTIN; ADA:K.HUNTER; DEFENDANT
Pursuant to 12 O.S. § 39, Document Available at Court Clerk's Office

APPEARS. ATTORNEY NOAH SEARS APPEARS NOT. CASE COMES

ON TRAILING CF-21-212. AT STATE'S REQUEST WITH NO

OBJECTION FROM THE DEFENDANT, COURT ORDERS CASE TO

CONTINUE TO TRAIL ON 5-12-22 @ 9:30 A.M. DEFENDANT

ORDERED TO REAPPEAR ON THE ABOVE DATE WITH ATTORNEY.

DEFENDANT ALLOWED TO REMAIN FREE ON CURRENT BOND.

---

**05/09/2022  [ TEXT ]**                                           $ -2.50

AJE: MONIES DUE THE FOLLOWING AGENCY(IES) REDUCED

AJE: COST DUE TO CARD ALLOCATION FEE                              $ 2.50

---

**05/12/2022  [ TEXT ]**

CM\CL (STOUT) NO CSR. ADA:Z.CABELL/K.HUNTER. DEFENDANT
Pursuant to 12 O.S. § 39, Document Available at Court Clerk's Office

APPEARS OUT OF CUSTODY WITH ATTORNEY JEFFREY PRICE

APPEARING ON BEHALF OF ATTORNEY NOAH SEARS. CASE COMES

TRAILING CF-21-212. COURT ORDERS CASE TO CONTINUE TO

TRAIL ON 6-16-22 AT 9:30 A.M. DEFENDANT IS ORDERED TO

REAPPEAR ON THE ABOVE DATE WITH ATTORNEY. DEFENDANT

ALLOWED TO REMAIN ON CURRENT BOND.

**06/16/2022  [ TEXT ]**

CM;CNP (STOUT) CSR:NONE; ADA:K.HUNTER; DEFENDANT
Pursuant to 12 O.S. § 39, Document Available at Court Clerk's Office
APPEARS WITH ATTORNEY JEFFREY PRICE. CASE COMES ON
TRAILING CF-20-211. AT DEFENDANT'S REQUEST, COURT
ORDERS CASE TO CONTINUE TO TRAIL ON 8-26-22 @ 2:00
P.M. DEFENDANT ORDERED TO REAPPEAR ON THE ABOVE DATE
WITH ATTORNEY. DEFENDANT ALLOWED TO REMAIN FREE ON
CURRENT BOND.

---

**08/08/2022  [ TEXT ]**                                              $ 10.00

TAX INTERCEPT CASE ADD LIST TO OTC

---

**08/26/2022  [ TEXT ]**

CM\CL (STOUT) CSR:D.MARTIN. ADA:K.LONG. DEFENDANT
Pursuant to 12 O.S. § 39, Document Available at Court Clerk's Office
APPEARS OUT OF CUSTODY WITH ATTORNEY JEFFREY PRICE.
CASE COMES ON TRAILING CF-20-211. COURT ORDERS CASE TO
CONTINUE TO TRAIL ON 9-30-22 AT 2:00 P.M. DEFENDANT IS
ORDERED TO REAPPEAR ON THE ABOVE DATE WITH ATTORNEY.
DEFENDANT ALLOWED TO REMAIN ON CURRENT BOND.

*[handwritten: Richard W. Long was never allowed to speak, he asked Jeff, Jeff refused Twice.]*

---

**08/29/2022  [ TEXT ]**                                             $ -0.25

AJE: MONIES DUE THE FOLLOWING AGENCY(IES) REDUCED

(Entry with fee only)                                                $ -1.75

AJE: COST DUE TO CARD ALLOCATION FEE                                 $ 2.00

---

**09/30/2022  [ TEXT ]**

CM CNP (STOUT) CSR:D.MARTIN; ADA:Z.CABELL/
Pursuant to 12 O.S. § 39, Document Available at Court Clerk's Office
K.HUNTER/K.LONG; DEFENDANT APPEARS. ATTORNEY JEFF
PRICE APPEARS FOR ATTORNEY NOAH SEARS. CASE COMES ON
TRAILING CF-21-212. AT DEFENDANT'S REQUEST, COURT
ORDERS CASE TO CONTINUE TO TRAIL ON 11-2-22 @ 10:30 A.M.
DEFENDANT ORDERED TO REAPPEAR ON THE ABOVE DATE WITH
ATTORNEY. DEFENDANT ALLOWED TO REMAIN FREE ON CURRENT
BOND.

---

**11/02/2022  [ TEXT ]**

CM;CNP (GORE) CSR:B.DEGARMO; ADA:K.HUNTER; DEFENDANT
Pursuant to 12 O.S. § 39, Document Available at Court Clerk's Office
APPEARS WITH ATTORNEY JEFFREY PRICE. CASE COMES ON
TRAILING CF-20-212. AT DEFENDANT'S REQUEST WITH NO
OBJECTION FROM THE STATE, COURT ORDERS CASE TO
CONTINUE TO TRAIL ON 3-6-23 @ 1:30 P.M. DEFENDANT

ORDERED TO REAPPEAR ON THE ABOVE DATE WITH ATTORNEY.

DEFENDANT ALLOWED TO REMAIN FREE ON CURRENT BOND.

---

**03/02/2023** **[ TEXT ]**                                                          $ -1.86

    AJE: MONIES DUE THE FOLLOWING AGENCY(IES) REDUCED

    (Entry with fee only)                                             $ -0.64

    AJE: COST DUE TO CARD ALLOCATION FEE                              $ 2.50

---

**03/06/2023** **[ TEXT ]**

    CM\CL (GORE) CSR:B.DEGARMO. ADA:K.LONG. DEFENDANT
Pursuant to 12 O.S. § 39, Document Available at Court Clerk's Office

    APPEARS OUT OF CUSTODY WITH ATTORNEY JEFFREY PRICE.

    CASE COMES ON TRAILING CF-21-212. COURT ORDERS CASE SET

    ON 4-17-23 AT 9:30 A.M. FOR A MOTION TO REVOKE HEARING.

    DEFENDANT ORDERED TO REAPPEAR ON THE ABOVE DATE WITH

    ATTORNEY. DEFENDANT ALLOWED TO REMAIN ON CURRENT BOND.

*(handwritten annotation: Richard was still refused by Jeff Price to be able to speak for himself he never got to speak to anyone not even to myes co Inv steven Brown)*

---

**03/16/2023** **[ TEXT ]**

    MOTION TO ENDORSE ADDITIONAL WITNESS(ES) / ORDER
Pursuant to 12 O.S. § 39, Document Available at Court Clerk's Office

---

**03/20/2023** **[ TEXT ]**                                                          $ 50.00

    ISSUE SUBPOENA TO MCSO (1)

    OKLAHOMA COURT INFORMATION SYSTEM FEE                             $ 25.00

---

**03/20/2023** **[ TEXT ]**                                                          $ 50.00

    ISSUE SUBPOENA TO MCSO (1)

    OKLAHOMA COURT INFORMATION SYSTEM FEE                             $ 25.00

---

**03/20/2023** **[ TEXT ]**                                                          $ 50.00

    ISSUE SUBPOENA TO MCSO (1)

    OKLAHOMA COURT INFORMATION SYSTEM FEE                             $ 25.00

---

**03/20/2023** **[ TEXT ]**                                                          $ 50.00

    ISSUE SUBPOENA TO MCSO (1)

    OKLAHOMA COURT INFORMATION SYSTEM FEE                             $ 25.00

---

**03/20/2023** **[ TEXT ]**                                                          $ 50.00

    ISSUE SUBPOENA TO MCSO (1)

    OKLAHOMA COURT INFORMATION SYSTEM FEE                             $ 25.00

*(handwritten annotation: These are State Subpoena's stated By Jeff as he NEVER as Price his motion to withdrawl)*

---

**03/21/2023** **[ TEXT ]**

    RETURN SUBPOENA (MCSO)
Pursuant to 12 O.S. § 39, Document Available at Court Clerk's Office

---

**03/21/2023** **[ TEXT ]**

    RETURN SUBPOENA (MCSO)
Pursuant to 12 O.S. § 39, Document Available at Court Clerk's Office

---

**03/21/2023** **[ TEXT ]**

    RETURN SUBPOENA (MCSO)
Pursuant to 12 O.S. § 39, Document Available at Court Clerk's Office

03/21/2023 [ TEXT ]

RETURN SUBPOENA (MCSO)
Pursuant to 12 O.S. § 39, Document Available at Court Clerk's Office

03/21/2023 [ TEXT ]

RETURN SUBPOENA (MCSO)
Pursuant to 12 O.S. § 39, Document Available at Court Clerk's Office

04/13/2023 [ TEXT ]

NOTICE OF FILING- TRANSCRIPT OF PROCEEDINGS HAD ON
Pursuant to 12 O.S. § 39, Document Available at Court Clerk's Office
SEPTEMBER 30, 2022 BEFORE THE HONORABLE JUDGE
JACQUELINE STOUT. (1 ORIGINAL, 2 COPIES)

04/13/2023 [ TEXT ]

NOTICE OF FILING- TRANSCRIPT OF PROCEEDINGS HAD ON
Pursuant to 12 O.S. § 39, Document Available at Court Clerk's Office
AUGUST 26, 2022 BEFORE THE HONORABLE JUDGE JACQUELINE
STOUT (1 ORIGINAL, 2 COPIES)

04/17/2023 [ TEXT ]

MOTION FOR CONTINUANCE
Pursuant to 12 O.S. § 39, Document Available at Court Clerk's Office

04/17/2023 [ TEXT ]

MOTION FOR WITHDRAW
Pursuant to 12 O.S. § 39, Document Available at Court Clerk's Office

04/17/2023 [ TEXT ]

CM/CL (GORE) CSR:B.DEGARMO. ADA:K.LONG. DEFENDANT
Pursuant to 12 O.S. § 39, Document Available at Court Clerk's Office
APPEARS OUT OF CUSTODY WITH ATTORNEY JEFFREY PRICE.
CASE COMES ON FOR A MOTION TO REVOKE HEARING. STATE'S
EXHIBIT'S A, B AND 1 ARE RECEIVED AS EVIDENCE, WITH NO
OBJECTION BY THE DEFENDANT. STATE RESTS. DEFENDANT'S
EXHIBIT'S 1A, 1B, 1C, 1D, 2 AND 3 ARE RECEIVED AS
EVIDENCE, WITH NO OBJECTION BY THE STATE. DEFENDANT'S
WITNESSES SWORN AND TESTIMONY HEARD. DEFENDANT RESTS.
COURT'S IN RECESS. COURT IS BACK IN SESSION. CLOSING
ARGUMENTS FROM THE DEFENDANT IS HEARD. STATE'S RESPONSE
TO THE DEFENDANT'S CLOSING ARGUMENT IS THAT THE STATE
STANDS ON THE EVIDENCE PROVIDED. AFTER REVIEWING ALL
THE EVIDENCE PROVIDED BY THE STATE AND THE DEFENDANT,
COURT FINDS THAT THE STATE HAS MET ITS BURDEN AND THAT
THE DEFENDANT HAS VIOLATED THE RULES AND CONDITIONS OF
PROBATION AND HAS PICKED UP A NEW CHARGE OF GRAND
LARCENY IN MAYES COUNTY CASE CF-2021-212 FOR THE PURPOSE

OF THE MOTION TO REVOKE HEARING. COURT DOES TAKE UNDER

CONSIDERATION THAT THE DEFENDANT HAS NOT VIOLATED ANY

OTHER RULES AND CONDITIONS OF PROBATION, BUT THE

DEFENDANT DOES HAVE PRIOR FELONIES IN WHICH SOME CASES

THE DEFENDANT HAS SERVED TIME IN THE DEPARTMENT OF

CORRECTIONS. THEREFORE THE COURT WILL IN FACT REVOKE

THE DEFENDANT FOR A PERIOD OF 5 YEARS IN THE DEPARTMENT

OF CORRECTIONS. THE DEFENDANT IS ORDERED TO PAY ALL

FINES AND COSTS AS PREVIOUSLY ORDERED AND THE COST OF

THE ACTION. THE DEFENDANT REQUEST TO REMAIN IN THE

MAYES COUNTY JAIL UP TO 10 DAYS. COURT ORDERS THE

DEFENDANT REMANDED INTO CUSTODY OF THE MAYES COUNTY

JAIL AND TO AWAIT TRANSPORT TO THE DEPARTMENT OF

CORRECTIONS.

**04/21/2023  [ TEXT ]**

JUDGMENT AND SENTENCE ON MOTION TO REVOKE SUSPENDED
Pursuant to 12 O.S. § 39, Document Available at Court Clerk's Office

SENTENCE

**04/24/2023  [ TEXT ]**                                                                 $ 249.56

TRANSPORT FEE (381 MILES)

OKLAHOMA COURT INFORMATION SYSTEM FEE                              $ 25.00

**08/01/2023  [ TEXT ]**

NOTICE OF FILING- TRANSCRIPT OF PROCEEDING HAD ON THE
Pursuant to 12 O.S. § 39, Document Available at Court Clerk's Office

17TH DAY OF APRIL, 2023 BEFORE THE HONORABLE JUDGE

REBECCA J. GORE (1 ORIGINAL, 2 COPIES)

**10/13/2023  [ TEXT ]**                                                                 $ 10.00

TAX INTERCEPT CASE ADD LIST TO OTC

**04/04/2024  [ TEXT ]**

CHECKOUT OF TRANSCRIPT (CRIMINAL DIVISION) (RETURNED)
Pursuant to 12 O.S. § 39, Document Available at Court Clerk's Office

IN THE DISTRICT COURT OF THE TWELFTH JUDICIAL DISTRICT OF THE STATE OF
OKLAHOMA SITTING IN AND FOR MAYES COUNTY

THE STATE OF OKLAHOMA,                    )
                                          )
            Plaintiff,                    )
                                          )
vs.                                       )        Case No.  CF-2021-212
                                          )
RICHARD WILLIAM LONG                      )        FILED IN THE DISTRICT COURT
                                          )        MAYES CO., OKLAHOMA
Last four digits of SSN:   ***-**-1188    )
DOB:  February, 1970                      )        APR 2 1 2023
Place of Birth:                           )
                                          )        JENIFER CLINTON, COURT CLERK
DOC#:                                     )        BY_____ DEPUTY
Last four digits of DL#: ****7150         )
State of Issuance:                        )
                                          )
            Defendant(s).                 )

### JUDGMENT AND SENTENCE

Now, on this 18th day of April, 2023, this matter comes on before the undersigned Judge for
sentencing and the Defendant, RICHARD WILLIAM LONG, appears personally and by his attorney,
Jeffrey A Price, the State of Oklahoma represented by Kyle E Long, and the Defendant, having ~~FOUND
GUILTY~~ to/of the crime(s) of:

COUNT 1:  GRAND LARCENY, a FELONY, 21 O.S. § 1705 AFTER FORMER CONVICTION OF TWO
OR MORE FELONIES, committed on or about the 10th day of October, 2021 and 12th day of
October, 2021.

(X)    IT IS THEREFORE ORDERED, ADJUDGED AND DECREED by the Court that the
Defendant, RICHARD WILLIAM LONG, is guilty of the above described offenses and is
sentenced as follows:

### TERM OF IMPRISONMENT

Count 1:    Sentenced to a term of 5 years in the Oklahoma Department of Corrections; to run concurrent
With CF-16-251 and receive Credit for time served

Under the custody and control of:
(X)    Oklahoma Department of Corrections.

✱ IT IS FURTHER ORDERED, ADJUDGED AND DECREED BY THE COURT that in addition
to the preceding terms, the Defendant is also sentenced to:

### FINE

(X)  The defendant shall pay a fine of:

COUNT 1 - $100.00

(X)  The defendant shall report to the District Court within 30 days of release for a hearing.

*[Handwritten annotations, partly legible:]*
*very screwed up*
*this obvious I have given you today Jeff + Gore nor K. Long believed Richard would Play. By the evidence I believe this*
*Entered a Plea of Nolo contendere  Judge Gore made it clear he would be found Guilty in the 4-17-23 hearing, officer comes in with Doc papers at recess. I believe this was planned*
*Richard wasn't at coop Rae after 3pm oct 12 2021  wrong date totally by pros witness + Judge ?*

*Total Fines, Court Costs & VCA as of 4-18-23*
*$1,407.00*

## COSTS, VCA AND RESTITUTION

**COUNT 1:**

Victim Compensation Assessment $50.00

## SPECIAL RULES AND CONDITIONS OF PROBATION

IT IS FURTHER ORDERED that judgment is hereby entered against the Defendant as to the fines, costs, and assessments set forth above.

The Court further advised the Defendant of his rights and procedure to appeal to the Court of Criminal Appeals of the State of Oklahoma, and of the necessary steps to be taken by him to perfect such appeal, and that if he desired to appeal and was unable to afford counsel and a transcript of the proceedings, that the same would be furnished by the State subject to reimbursement of the cost or representation in accordance with Title 22 O.S. § 1355.14. The Court further advised the Defendant that, in the event the above sentence is for a crime involving domestic violence where the Defendant is or was a spouse, intimate partner, parent, or guardian of the victim, or is or was involved in another similar relationship with the victim, it may be unlawful for him or her to possess, purchase, receive, transport or ship a firearm including a rifle, pistol or revolver or ammunition pursuant to federal law under Title 18 U.S.C. § 992(g)(8) or (9), or state law or both.

In the event the above sentence is for incarceration in the Department of Corrections, the Sheriff of Mayes County, Oklahoma is ordered and directed to deliver the Defendant to the Lexington Assessment and Reception Center at Lexington, Oklahoma, and leave therewith a copy of this Judgment and Sentence to serve as warrant authority of the Sheriff for the transportation and the imprisonment of the Defendant as herein before provided. The Sheriff to make due return to the clerk of this Court, with his proceedings endorsed thereon.

## COURT CLERK'S DUTY

[TRIAL JUDGE TO COMPLETE THIS SECTION]

**IT IS FURTHER ORDERED** that the Clerk of this Court shall register or report the following circumstances in accordance with the applicable statutory authority:

(X) As to Count(s) _____1_____, the defendant is ineligible to register to vote pursuant to Section 4-101 of Title 26.

( ) Pursuant to Section 985.1 of Title 22, the Court departed from the mandatory minimum sentence of imprisonment as to Count(s) _____.

( ) As to Count(s) _____, the defendant is subject to the Methamphetamine Offender Registry requirements as set forth in Section 2-701 of Title 63.

( ) As to Count(s) _____, the defendant is subject to the Mary Rippy Violent Crime Offenders Registration Act requirements as set forth in Section 594 of Title 57.

( ) Defendant is a lawyer and certified copies of this document shall be transmitted to the Chief Justice of the Supreme Court and the General Counsel of the Bar Association within five (5) days as set forth in Rule 7.2 of the Oklahoma Rules of Professional Conduct, 5 O.S.Supp.2014, ch. 1, app. 1-A.

WITNESS my hand the day and year first above mentioned.

Rebecca J Gore
Judge of the District Court

(SEAL)
ATTEST:   Jenifer Clinton, Court Clerk

Deputy Clerk

## CLERK'S CERTIFICATION OF COPIES

I, Jenifer Clinton, Clerk of the District Court of Mayes County, State of Oklahoma, do hereby certify the foregoing to be a true, correct, full and complete copy of the original Judgment and Sentence in the case of Oklahoma v. RICHARD WILLIAM LONG as the same appears of record in my office.

WITNESS my hand and official seal this _____ day of _____, _____.

Jenifer Clinton, Court Clerk

By:   _____
Deputy Clerk

(SEAL)

## SHERIFF'S RETURN

I received this Judgment and Sentence the _____ day of _____, _____, and executed it by delivering the Defendant to the Oklahoma Department of Corrections at Lexington Assessment and Reception Center, on the _____ day of _____, _____.

I also certify the above prisoner has served _____ days in the County Jail on the present charge or charges.

Mike Reed, Sheriff

_____
Deputy Sheriff

IN THE DISTRICT COURT OF MAYES COUNTY
STATE OF OKLAHOMA

STATE OF OKLAHOMA,  )
             Plaintiff,  )
vs.  )
                     )  CASE NUMBER: CF-21-00212
**LONG, RICHARD WILLIAM**  )
             Defendant.  )

DOB: FEBRUARY, 1970

## ATTACHMENT A

The Defendant, LONG, RICHARD WILLIAM, is ordered by the attached Judgment and Sentence to repay the Court Fund of Mayes County the following dollar amounts representing fines, costs and assessments resulting from his/her conviction. Monies collected shall be applied to the balance due in the order of priority listed on this attachment. All fines, costs and assessments are due and owing from the date of sentencing and must be paid in full <u>hearing within 30 days of release</u> or the Defendant must reappear in this Court for further proceedings. Costs, such as appellate proceedings, transportation costs and incarceration costs may continue to accrue after judgment and sentence. Additional costs may be certified by the Court Clerk as they accrue.

### SCHEDULE OF REIMBURSEMENT

| | | |
|---|---|---|
| 1. | Court Costs | $ 689 31 |
| 2. | Fines | $ 100 00 |
| 3. | CLEET | $ 20 00 |
| 4. | County Sheriff | $ 638 29 |
| 5. | Victim's Compensation | $ 50 00 |
| 6. | OSBI Lab Fees | $ — |
| 7. | Attorney Fees | $ — |
| 8. | *District Attorney's Drug Fund* | $ — |
| 9. | *Restitution* | $ — |
| 10. | *Pre-Sentence Investigation Fee* | $ — |
| 11. | Previous Costs | $ — |
| 12. | _____ | $ — |
| | **TOTAL** | $ 1497 60 |

_____
Judge of the District Court

I certify that the foregoing figures are true and accurate to the best of my knowledge as of the date of sentencing.

JENIFER CLINTON, Court Clerk

By: _____
                     Deputy

Date: 4-24-23

Form 13.8(A) Additional Findings at Time of Sentencing

CF-21-212

[At the time of formal sentencing the sentencing judge, on the record, shall either complete the additional findings or review a form 13.8(A) which has been completed by the parties to ensure its accuracy. Upon completion of the form it shall be ordered filed of record and be attached as Exhibit 1 to the Uniform Judgment and Sentence filed in the case. In accordance with House Concurrent Resolution No. 1001, dated June 19, 1998, references to a sentence matrix refer to the Oklahoma Truth in Sentencing Act.]

EXHIBIT 1: Additional Findings of the Court to Case No. _____

In the District Court of Mayes County

FILED IN THE DISTRICT COURT
MAYES CO., OKLAHOMA

APR 18 2023

JENIFER CLINTON, COURT CLERK
BY_____ DEPUTY

### I. Original Charges
(a copy of the Information may be attached instead)
Please list any additional charges on a separate attached sheet

| Offense | Statute Citation |
|---------|------------------|
| Grand Larceny Value $1000 to $2500 | 21 O.S. § 1705 |
| AFC 2+ Previous Felonies | 21 O.S. § 51.1 |

### II. Prior Felony Convictions Used For Enhancement
Please list any additional convictions on a separate attached sheet

| Offense | Date | Statute Citation |
|---------|------|------------------|
| DUI | 12/7/9 | 47 O.S. § 11-902 |
| DUI | 6/25/12 | " |
| DUI | 5/16/6 | " |
| DUI | 9/10/04 | " |
| Dm A+B by Strangulation | 3/9/17 | 21 O.S. § 644(c)? |

### III. Prior Charge(s) For Which Order Deferring Sentence Was Entered
Please list any additional charges on a separate attached sheet

| Offense | Date | Statute Citation |
|---------|------|------------------|
| | | |
| | | |
| | | |
| | | |
| | | |

**IV. Prior Felony Convictions Not Used For Enhancement**
Please list any additional convictions on a separate attached sheet

| Offense | Date | Statute Citation |
|---------|------|------------------|
| See Question /Part II | | |

**V.**

Circle

If the defendant is pleading guilty to multiple counts, did the offense(s) arise from the same transaction?    Yes  No

**VI. Other Enhancers Used to Determine Placement on Matrix**

Circle

1. Did the offender commit the current offense with the use of a firearm within the immediate possession and control of the offender?    Yes  (No)

2. Was the victim of the offense over 62 years of age, under 12 years of age, or disabled by reason of mental or physical illness to such an extent that the victim lacked the ability to effectively protect his or her property or person?    Yes  (No)

3. Did the offender in the commission of the offense maim or torture the victim?    Yes  (No)

4. Did the offender commit a Schedule N-2 or N-3 drug offense in, on, or within 1,000 feet of real property comprising of a public or private elementary or secondary school; public or private college, university, or other institution of higher education; recreation or public park (including state facilities); public housing project; or in the presence of any child under 12 years of age?    Yes  (No)

5. Did the offender commit a Schedule N-2 or N-3 drug offense by using or soliciting the services of a person less than 18 years of age, providing the offender was at least 18 years of age at the time of the offense?    Yes  (No)

6. If the controlling offense was a property or drug offense, what was the total amount involved in that offense (e.g., the value of the property involved; the amount of money stolen, embezzled, or obtained by fraud; or the amount of drug proceeds utilized)?    $ Unknown value

7. If the controlling offense was a drug offense, what was the predominant drug and what was the amount of that drug (specify, grams, ounces, etc)?    Drug: U/A

Quantity:_____
(oz, grams, etc)

**VII. Offender Characteristics**

(A copy of the pre-sentence investigation may be attached instead.)

Gender (Circle)                    Race (Circle)

Male  Female                 White  Black  Hispanic  Asian  Native Am.

**This Exhibit shall not be admitted into evidence in any future prosecutions.**

Certified this __18__ day of __Apl__, 20__23__

_____
Attorney for State

_____
Attorney for Defendant

_____
Judge of the District Court

## CLERK'S CERTIFICATION OF COPIES

I, JENIFER CLINTON, Clerk of the District Court of Mayes County, State of Oklahoma, do hereby certify the foregoing to be a true, correct, full and complete copy of the original Judgment and Sentence in the case of the State of Oklahoma vs. LONG, RICHARD WILLIAM; the same as appears of record in my office.

Witness my hand and official seal this _____ day of _____, 2023___.

CLERK
(SEAL)

JENIFER CLINTON, COURT

By: _____
                                  Deputy

## SHERIFF'S RETURN

I received this Judgment and Sentence on the _____ day of _____,
20_____ and executed the same by delivering the defendant to the Warden of the Lexington Assessment and Reception Center at Lexington, Oklahoma on the _____ day of _____, 20_____. I also certify the above prisoner has served _____ days in the Mayes County Jail on the present charge and/or charges.

MIKE REED, SHERIFF

By: _____
                                  Deputy